IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LISA JACKSON | § | |
| *Plaintiff*, | § | |
| | § | |
| VS. | § | CAUSE NO. 5:23-CV-00784-XR |
| | § | |
| ALLSTATE FIRE AND CASUALTY | § | |
| INSURANCE COMPANY | § | |
| *Defendant*. | § | |

---

## PLAINTIFF LISA JACKSON'S FIRST AMENDED PETITION

---

**NOW COMES** LISA JACKSON, named Plaintiff in the above-titled and numbered cause, and file this, her Plaintiff's First Amended Petition, and for cause of action would show as follows:

### DISCOVERY CONTROL PLAN

1.  Discovery in this case is intended to be conducted pursuant to *Tex.R.Civ.P. 190.3 (Level 2)*.

### PARTIES

2.  Plaintiff, LISA JACKSON, ("Plaintiff") is an individual residing in Bexar County, Texas.

3.  Defendant, ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY ("Allstate or Defendant"), is a Foreign insurance company engaged in the business of insurance in the State of Texas. **Service of process has been effectuated.**

**CLAIMS FOR RELIEF**

4.      This Statement is made in compliance with *Tex.R.Civ.P. 47*, plaintiff seeks monetary relief over $250,000 but not more than $1,000,000.00.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over the parties and the subject matter of this action. Defendant is an insurance company which has purposefully availed itself to the jurisdiction of the State of Texas by engaging in the business of insurance in the State of Texas, and Plaintiff's causes of action arise out of this Defendant's business activities in the State of Texas. The amount in controversy is within the jurisdictional limits of the Court.

6.      Venue of this action lies in Bexar County, Texas, because the insured property subject to this suit is situated in Bexar County, Texas. TEX.CIV.PRAC. & REM. CODE §15.032.

**FACTS**

7.      Plaintiff purchased a policy from Defendant, insuring Plaintiff's property against certain losses, on May 17, 2019. The Policy number was 844909761 (hereinafter referred to as "the Policy")

8.      Plaintiff maintains an insurable interest in the insured property, which is located at 2818 BARREL OAK ST, SAN ANTONIO, TX 78231, (hereinafter referred to as "the Property").

9.      On or about 05/12/2021, The Property sustained serious structural damage as a result of a covered loss under The Policy (the "Covered Loss Event"). Specifically, the Property was damaged as a result of severe hail, rain, wind and storm damage. Shortly thereafter on May 29, 2021, Plaintiff made a claim and demand for payment on Defendant for damages to the

Property and other damages covered by the terms of the Policy (the "Claim"). The subject claim number is 0627894751. *See Exhibit A.*

10.    Subsequent to Plaintiff making the Claim, Defendant assigned a local adjuster, Nick Beckwith, to adjust the claim (the "Adjuster"). The adjuster failed to adequately adjust Plaintiff's claim. The adjuster performed only a cursory inspection of Plaintiff's reported damages and failed to adjust for proper construction materials and methods verified by appraisers and engineers who evaluated the damages. The adjuster made incorrect coverage determinations and misrepresented the scope of Plaintiff's damages to Plaintiff, thereby vastly underpaying Plaintiff's legitimate claim for covered losses.

11.    I requested from Allstate at the time of purchase of my coverage an HO5 Full Replacement Cost Coverage without Depreciation for the value of $350,000. I made sure I had all properly insured with added values for Jewelry Coverage up to $20,000 Replacement Cost Coverage. I made sure I had highest value for my personal property and furniture and contents. I also requested glass Coverage and water backup and all Perils to be covered. I started my new Policy for my Home and Auto with an Allstate Agent that takes all calls. I was assigned M&J Family Insurance, Megan Felder and her partner Jesse (name unknown). They called me to confirm my coverage. I found that the first Agent on the phone had not set my Policy up correctly. Jesse helped me and made sure that my Policy was valued at $350,000 for Full Replacement Cost Coverage HO5 Endorsement without Depreciation.

12.    I added the above-mentioned Coverages for Extended Jewelry Coverage and for Glass Breakage and water back up and broken plumbing lines in my home. Jesse got all these items properly added to my Policy. I had requested him to please send me my Hard Copy of my new policies in the mail. He said he would send it. He told me about their online portal to access

my Policy and information. I was never able to get access to the Allstate online portal. I had called on several occasions asking for a copy of my Policies but Allstate and my Agent never sent them to me. I kept telling them that I was not able to gain access on the Allstate portal.

13.    On or about April 13, 2023 I called my Allstate Agent Michael Morales to request a copy of my Policy that I had with Allstate. His associate Elizabeth told me she couldn't get access to my Original Policy. She further told me that my Policy had been changed twice (2 times) without me requesting any changes and without me knowing that Allstate had changed my Coverage. Elizabeth said that my Policy was 1st Changed on June 5, 2020 and then 2nd Change was made on November 4, 2021. Elizabeth told me my Policy Coverage on April 13, 2023 was $252,759. The cost of this lower covered amount was much higher than my Original Policy at $350,000.

14.    Mr. Mark Roy represented to me in his email to me on or about April 15, 2023, that my Policy Coverage was $243,822. *See Exhibit A.*

15.    On April 6, 2023 Allstate presented another Policy for approximately $243,822.00, signed and notarized by a Shubhankar Haikare. The Policy Documents did not have my Account Number that they always have printed on every page at the top left corner. At this same time Elizabeth at Allstate Agents office represented my Policy was showing $252,759.00. *See Exhibit A.*

16.    On or about November 1, 2021 Nick Beckwith was the adjuster assigned to my Hail Damage Claim, which he originally had misfiled as a Windstorm Claim. I requested that he properly file this claim as a Hail Storm Claim. Nick Beckwith first Denied my Hail Damage Claim falsely and without proper cause despite numerous pictures and evidence to the contrary being presented. I had to call his supervisor to give her the Pictures of all the evidence of my Major Hail

Damage to my roof and exterior and interior. She confirmed with me that Allstate was going to accept this claim. *See Exhibit A*.

17.     From November 1, 2021 through February 20, 2023 I made several calls to Nick Beckwith trying to get him to properly cover my Roof and Hail Damages to my Home. Nick underestimated the proper size of my roof despite evidence I had presented as to its factual size and he failed to cover all the required components on my Roof that were on my Roof before the Hail Storm Damages. This repeated behavior of Nick Beckwith changing dimensions and materials of my affected roof in order to decrease my claim was done in an effort to deprive me out of what my Policy would cover. I reminded him that their outside Adjuster that came to see all my Damages and got on my Roof with my Roofing Engineer had both personally witnessed all the claimed damages as well as gathered evidence on behalf of Allstate and that said Adjuster took many photos. That Adjuster told me and my Roofing Engineer that my home has sustained Major Hail Damage and Heavy Rains and Windstorm Rains. He told us that my Damaged Exterior wood siding and trim and my windows and paint and Entire Cedar Fencing all had sustained major Hail damage and heavy wind blown rains. He also confirmed that all my exterior patio furniture and Gas Grill and all interior water Damages were to be covered under my Policy. Allstate told me that they don't have to accept what these outside Adjuster Recommend, but Allstate did have a duty to review the evidence presented and act as a reasonably prudent insurance company to settle my claim in good faith, which they repeatedly refused and failed to do. *See Exhibit A*.

18.     On or about February 21, 2022 a new Allstate Adjuster was assigned to my Claim. Adjuster Kimberly Brooks. I had emailed Kimberly Brooks and requested that she properly cover all my Damages at Full Replacement Cost Coverage without Depreciation. She and all the Allstate

Adjusters told me that my Policy is a Full Replacement Cost Coverage at the $350,000.00 that I always had requested and was paying for this coverage. *See Exhibit A.*

19.     On or about February 23, 2022, Kimberly had continued to not properly cover all my Damages from this Hail Storm Claim. I had reminded her that Nick Beckwith had agreed that all these items I had Damages from the Hail all would be covered. He also confirmed that my Estimates that I had sent him for the Cedar Fencing and Exterior Wood Siding and Trim and Paint and windows and all my interior water Damages were going to be covered by Allstate. Nick had sent me a Partial payment of about $4420.73. I called Nick and told him this amount won't allow me to get my roof replaced. Nick told me he was going to send me seperate payments for my Roof Replacement Cost Coverage and he agreed to pay for my Cedar Fencing Bid that I got from Rollins & Co, LLC for $30,200.00 *See Exhibit A.*

20.     On or about February 23, 2022, Kimberly Brooks called me and requested me to get an Electricians Technical Report to examine my Water Damaged Heavy Duty Screw Driven Garage Door Opener.  The heavy rains and Hail Damages caused my ceilings to fall in my Garage. On February 26, 2022 I sent Kimberly Brooks the Report from the electrical engineer Evenflow Home and Commercial Services. It confirmed that my Garage Door Opener Mother Board Shorted out from the water damage from the roof leaks. I also sent her the Estimate to replace my Garage Door Opener for $416.76. *See Exhibit A.*

21.     On February 26, 2022 Kimberly Brooks called me and tried to claim my Damages I had from the Hail Damage Claim were related to a separate water damage claim made previously through my homeowners policy. I had advised her that she was incorrect and that my Hail Damage Claim Damages were separate and apart from any previous damages.

22.     On March 16, 2022 I sent a Demand Letter to Kimberly Brooks and Nick Beckwith to properly cover my Hail Damage Claim. I called my Allstate Agent office and they confirmed that all the items that I have Hail Damage to were covered under my Policy. They confirmed all items were covered under my Policy that was showing my $350,000. Full Replacement Cost Coverage without Depreciation. I sent them copies of all the photos for my Proof of Damages. *See Exhibit A*. On March 24, 2022 I sent my email to Allstate confirming that Nick Beckwith had already represented to me that Allstate was going to pay me for all these above forementioned Damages. I sent them the Cedar Fencing estimate that Nick Beckwith agreed Allstate was going to send me a partial payment for the fencing Estimate for $30,200.00 from Rollins & Co. LLC dated March 22, 2023. *See Exhibit A*.

23.     On April 1, 2022 I sent Allstate Adjuster Kimberly Brooks the (3) Paid Invoices that I had paid to Replace my Roof with the Same Like and Kind Class 4 Architectural Shingle and repair cost of $17,500.00 for my Roof. Kimberly Brooks said she confirmed that was the Correct Amount for my Roof and she was going to send me a check for this and all the 3 Paid Invoices. I also submitted $4510.52 invoice to Replace Hail Damaged Wood Siding and Trim and Paint, a $2880.00 invoice for Carpenter to replace the damaged trim around the windows and Caulk and Paint the Exterior Wood Siding and Trim. *See Exhibit A*.

24.     I reiterated that Kimberly had not paid me for any of these major damages and that I have more major damages in my interior from all the water leaks around my doors and windows and ceilings and down the inside walls from the roof leaks from the Hail and Heavy driven Rain Storms. *See Exhibit A*.

25.     Plaintiff requested that Defendant cover the cost of repairs to the Property pursuant to the Policy, including but not limited to, repair and/or replacement of the damaged structures,

the roof, windows, garage door, fencing, and contents located on or around the exterior of the property as well as those within the interior. Upon complaint to Defendant about Mr. Beckwith, Lindsey Barnette (the "Subsequent Adjuster") proceeded to further delay and deny justified damages that are covered under the Claim. *See Exhibit A.*

26.     Defendant has wrongfully delayed and denied payment of the balance due to Plaintiff for the Claim. Based upon information and belief, and as a basis for this delay and denial, Defendant has relied upon an inadequate and under-scoped adjustment which claims that the cost of repair for damages to Plaintiff's property were substantially less than the actual cost of repairs.

27.     Pleading in the alternative, Plaintiff's actual covered damage and losses to the Property as a result of the Covered Loss Event, including the costs of temporary repairs and alternative living expenses, have caused other consequential damages to be sustained by Plaintiff herein. Defendant is liable for these consequential damages due to its failure to promptly and sufficiently pay the claim.

28.     Pleading in the alternative and based upon information and belief, the Adjuster and Subsequent Adjuster were compensated for each claim the Adjuster and Subsequent Adjuster were adjusted on behalf of Defendant and/or other combination of compensation tied to the quantity of claims adjusted. So long as the Adjuster and Subsequent Adjuster were adjusted claims favorably for Defendant, the Adjuster and Subsequent Adjuster were would continue receiving additional assignments, thereby creating a pecuniary interest for the Adjuster and Subsequent Adjuster were to minimize the scope and pricing of damages identified during a property inspection.

29.     Pleading further and in the alternative if necessary, the Adjuster and Subsequent Adjuster were negligent, reckless, and/or acted intentionally knowingly, fraudulently, and with

malice in violating Defendant's written policies as they relate to claims handling practices by failing to fully investigate and document all damage to the Property and by failing to fully investigate and evaluate the Plaintiff's insured losses based upon local replacement and/or repair costs for each item of damage. Alternatively, Defendant's own written claims handling policies were designed to defraud policyholders such as Plaintiff.

30.    The Adjuster and Subsequent Adjuster were, on behalf of Defendant, intentionally, knowingly and fraudulently, with malice, engaged in the following specified acts and practices, among others stated herein, in violation of and in breach of the Adjuster and Subsequent Adjuster's moral, ethical and legal duties to Plaintiff as licensed claims adjusters. Such acts and omissions were producing and proximate causes of the damages and losses sustained herein by Plaintiff resulting in the denial and/or underpayment of Plaintiff's claim; to wit:

a)   The Adjuster and Subsequent Adjuster failed to properly investigate and inspect the Property during repair of the property which would have revealed other damages arising out of the Covered Loss Event;

b)   The Adjuster and Subsequent Adjuster failed to and/or refused to properly interview Plaintiff to ascertain other damages that were not readily apparent or would not be readily apparent to an individual unfamiliar with the property's pre-loss condition;

c)   The Adjuster and Subsequent Adjuster refused to and did not inspect for hidden or latent damage resulting to Plaintiff's Property that is customarily found to exist in Property that has undergone the type of damage of the severity that Plaintiff's Property sustained;

d)   The Adjuster and Subsequent Adjuster failed and refused to include the usual and customary charges for costs of materials, supplies, labor and contractor's overhead and

profit charged by local contractors for the repair, replacement and restoration of the Plaintiff's Property due to the Covered Loss Event damage;

e)    The Adjuster and Subsequent Adjuster performed only a cursory inspection of the exterior and interior of the insured Property, spending insufficient time at the Property to properly assess all items of damage; and failed to properly assess, estimate and include covered damage to the property in the report and adjustment of loss to Defendant for the damages resulting from the Covered Loss Event and/or note other damages existing to the Property at the time of inspection such as plumbing, appliances, ceilings and walls that sustained damage as a result of the Covered Loss Event;

f)    Pleading in the alternative, the Adjuster and Subsequent Adjuster, during the investigation of the Plaintiff's claim, made coverage decisions, which the Adjuster and Subsequent Adjuster were not qualified and/or authorized to perform, by failing to include all damages sustained to the Property, thus submitting an inaccurate and false report of Plaintiff's Covered Loss Event claim and its losses to Defendant;

g)    Defendant fraudulently represented to Plaintiff verbally and by conduct, insisted that the majority of the damages to the Property were not related to the Covered Loss Event made basis of this suit; and that most, if not all, of the covered damages found to exist upon observation of Plaintiff property, were not covered by the Policy, but were due to normal wear and tear or the result of other causes, when in fact such damage was related and should have been included in the Adjuster's and Subsequent Adjuster's reports to Defendant. Based upon information and belief, Defendant's acts and omissions as they pertain to the mishandling of Plaintiff's claim were largely dependent and proximately caused by its reliance on the report/adjustment produced by the Adjuster and Subsequent

Adjuster, whom it knew, or reasonably should have known, was biased and hence, under-scoped the damages.

31.    Based upon information and belief, Defendant failed to thoroughly review the fraudulent and inaccurate assessment of the Claim as produced by the Adjuster and Subsequent Adjuster and ultimately approved the Adjuster's and Subsequent Adjuster's inaccurate reports of the damages to the Property.

32.    The mishandling of Plaintiff's claim has also caused a delay and hardship in the ability to fully repair the Property, which has resulted in additional damages in terms of the loss of use of the Plaintiff's Property and mental anguish as a result thereof. In spite of Plaintiff's good faith efforts and/or intent to mitigate damages as required under the terms of the policy, Defendant's bad faith and unlawful claims adjusting practices has left Plaintiff in a vulnerable financial state without adequate resources to repair and/or replace damaged structures, thereby causing additional damages.

33.    In the alternative, without waiving the foregoing, and based upon information and belief, Defendant instructed the Adjuster and Subsequent Adjuster to follow their claims processing guidelines of in connection with the claims handling process for Plaintiff's claim. Defendant was responsible for training, overseeing, and supervising its claim representatives and adjusters handling claims like Plaintiff's claim. Defendant was responsible for – and had a legal duty – to hire and retain competent, qualified and ethical licensed adjusters and claims representatives who would deal fairly, honestly and in good faith with its policy holders in the practice of insurance claims handling. Defendant breached such duties in connection with the Claim by failing to properly train, direct and oversee the claims handling practices employed by the Adjuster and Subsequent Adjuster.

34.     At all times material herein, Defendant had a non-delegable contractual legal duty to timely, fairly and in good faith investigate, process, adjust, timely pay, and re-adjust claims for all covered losses sustained by its policyholders, such as Plaintiff. Defendant represented that it would do so in advertising mediums throughout the State of Texas and specifically in writing to its policyholders as an inducement for them to purchase and continue to renew homeowners and property insurance policies. Due to a lack of knowledge and understanding of the insurance claims handling process, knowledge of construction costs and insurance policy coverage issues relating to property losses, Plaintiff relied on such misrepresentations to Plaintiff's detriment, and hence (1.) purchased the Policy from Defendant, and (2.) accepted the estimate of damages from Defendant Adjuster and Subsequent Adjuster which, unknown to Plaintiff, included denial and underpayment of covered losses and damages sustained. Defendant made such representations knowing they were false and with the intent that Plaintiff rely on such representations.

35.     Upon information and belief, Defendant, having breached its legal duty to timely, fairly and in good faith investigate, process, adjust and pay for all covered losses sustained by Plaintiff herein by assigning the Adjuster and Subsequent Adjuster to adjust and handle Plaintiff's claim, is responsible for the acts of omission and commission set forth herein and above in connection with the Adjuster's and Subsequent Adjuster's investigation and claims handling practices employed to deny and/or underpay the covered losses and damages sustained by Plaintiff as set forth herein.

36.     Defendant failed to perform its contractual duties to adequately compensate Plaintiff under the terms of the Policy. Specifically, it refused to pay the full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property, and all conditions precedent to recovery upon the Policy had been carried

out and accomplished by Plaintiff. Defendant's conduct constitutes a breach of the insurance contract between Defendant and Plaintiff.

37.    From and after the time Plaintiff's claim was presented to Defendant, the liability of Defendant to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, Defendant has refused to pay Plaintiff in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny the full payment. Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing.

38.    Pleading in the alternative, Defendant knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiff.

39.    Based upon information and belief, Plaintiff's experience is not an isolated case. The acts and omissions of Defendant committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Defendant with regard to the handling of these types of claims. Defendant's entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholders.

40.    Lastly, Defendant on numerous occasions fraudulently misrepresented the value of Plaintiff's policy, claiming various changes made at Plaintiff's request as to the values of coverage for her primary dwelling, other structures, various personal property categories, and living expenses as well as the costs for deductibles which have no basis in fact. These changes were not requested nor assented to by Plaintiff at any point and the resulting modifications to coverage amount to a fraud perpetrated upon Plaintiff by Defendant.

## CAUSES OF ACTION

## A.    NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE

41.    Plaintiff repleads all of the material allegations above set forth in Paragraphs 7 - 25 and incorporate the same herein by this reference as if here set forth in full.

42.    Defendant misrepresented to Plaintiff that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence. Defendant's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §§541.060(a)(1).

43.    Defendant failed to make an attempt to settle Plaintiff's claim in a fair manner, although it was aware of its liability to Plaintiff under the Policy.  Defendant's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(2)(A).

44.    Defendant failed to explain to Plaintiff the reasons for an inadequate settlement. Furthermore, Defendant did not communicate that any future settlements of payments would be forthcoming to pay for the entire losses covered under the Policy, nor did it provide any explanation for the failure to adequately settle Plaintiff's claim. Defendant's conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices, TEX. INS. CODE §541.060(a)(3).

45.    Defendant failed to affirm or deny coverage of Plaintiff's claim within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Defendant. Defendant's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(4).

46.    Defendant refused to fully compensate Plaintiff, under the terms of the Policy, even though Defendant failed to conduct a reasonable investigation. Defendant's conduct constitutes a

violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(7).

47.     Defendant failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's claim, beginning an investigation of Plaintiff's claim, and requesting all information reasonably necessary to investigate Plaintiff's claim, within the statutorily mandated time of receiving notice of Plaintiff's claim. Defendant's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.055.

48.     Defendant failed to accept or deny Plaintiff's full and entire claim within the statutorily mandated time of receiving all necessary information. Defendant's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.056.

49.     Defendant failed to meet its obligations under the Texas Insurance Code regarding payment of claim without delay. Specifically, it has delayed full payment of Plaintiff's claim longer than allowed and, to date Plaintiff has not received full payment for the claim. Defendant's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.058.

**B.     DTPA VIOLATIONS**

50.     Plaintiff repleads all of the material allegations above set forth in Paragraphs 7 - 25 and incorporate the same herein by this reference as if here set forth in full.

51.     Plaintiff is a consumer entitled to relief under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"). By its conduct outlined above, Allstate has engaged in DTPA violations which, together and separately, have been a producing cause of Plaintiff's damages.

52.     Allstate's agents made false representations about Plaintiff's rights and remedies under the policy at issue which includes, inter alia, that it would pay and did pay the full amount

of any covered losses, which it did not, and that it would fully investigate any losses, which it did not. These statements were a misrepresentation of the insurance policy and its benefits in violation of §§17.46(b)(5), (7), (12) and (14), Texas Business & Commerce Code. Defendant further made a false representation through its agent Nick Beckwith that certain roof damages were not covered based on his faulty evaluation, and that Plaintiff was not to be paid nearly enough to replace the roof, even though Plaintiff's property had extensive damage resulting from the storm. Defendant further made a false representation through its agent Lindsey Barnette that certain roof, fence, siding, wood trim, and contents damages were not covered because she did refused to consider ample photo evidence and numerous electrician, engineer, and other professional reports which verified the damages, instead insisting that Plaintiff was to be paid far less than any reasonable estimate of the incurred damages, even though Plaintiff's property had extensive damage resulting from the storm, totaling far greater than any amounts proposed by Defendant. Allstate's actions constitute an unconscionable course of conduct entitling Plaintiff to relief under §17.50(a)(l), (2), (3), and (4) of the Texas Business & Commerce Code. Allstate additionally represented it would pay Plaintiff the full amount that she may be owed for any covered damages, and to date, Plaintiff has yet to be paid the full amount she is owed on the claim, even after Defendant has had the opportunity to inspect the premises.

## C.    FRAUD

53.    Plaintiff repleads all of the material allegations above set forth in Paragraphs 7 - 25 and incorporate the same herein by this reference as if here set forth in full.

54.    Defendant is liable to Plaintiff for common law fraud.

55.    Defendant represented in its policy that damages resulting from a covered loss such as this claim would be insured. Plaintiff, to Plaintiff's detriment, purchased Defendant's

policy in exchange for a benefit Defendant knew the Plaintiff would not receive. Plaintiff further relied to Plaintiff's detriment upon the false, fraudulent, and deceptive acts and practices employed by Defendant, in performing an inspection, investigation and evaluation of Plaintiff's claim. Plaintiff was not knowledgeable in the manner and scope required to investigate such a loss, nor knowledgeable in insurance loss coverage issues and were not aware of the deceptive, fraudulent practices which required that they hire an independent adjuster after the delays and failure to provide the promises adjusting services were discovered. Defendant, based upon its experience, special knowledge of structural loss issues resulting from covered losses such as this one and insurance coverage issues were able to deceive Plaintiff into believing that the property damage loss would be competently investigated by a qualified, ethical and experienced adjuster and that the loss would be properly, fairly and in good faith evaluated and assessed and the claim paid.

56.    Plaintiff was unaware that all such representations and conduct relating to the investigation and handling of the claim were performed with the intent and purpose to defraud, take advantage of and deny and/or undervalue the property losses sustained by Plaintiff. Plaintiff was unaware that all such representations and conduct relating to the investigation and handling of the claim were performed with the intent and purpose to defraud, take advantage of and deny and/or undervalue the property losses sustained by Plaintiff. Plaintiff relied to its detriment on such actions and representations resulting in the losses and damages complained of herein. Plaintiff sought representation of the undersigned counsel in an attempt to expedite the resolution of this claim dispute without unnecessary litigation. However, Defendant has recalcitrantly failed to pay funds which are owed on this claim in which Defendant's liability to pay is clear. This

undue expense and delay was solely incurred due to the acts of Defendant in failing to perform the duties what it was required to perform Texas Insurance Code and the contract of insurance

57.    The conduct of Defendant has prolonged Plaintiff's hardship of restoring the damaged home and increased the expense of relocation and alternative living arrangements. Defendant knew at the time the misrepresentations and fraudulent conduct occurred (as described above) that the representations contained in the estimate of loss were untrue and communicated those representations to Plaintiff which were false. Each and every one of the representations and deceptive acts and practices, as described above, and those stated in this paragraph, concerned representations and falsehoods relating to material facts for the reason that absent such representations, Plaintiff would not have acted as Plaintiff did, and which Defendant knew were false or made recklessly without any knowledge of their truth as a positive assertion.

58.    Defendant on numerous occasions perpetrated fraud on Plaintiff insofar as they misrepresented the value of Plaintiff's policy, claiming various changes made at Plaintiff's request as to the values of coverage for her primary dwelling, other structures, various personal property categories, and living expenses as well as the costs for deductibles which have no basis in fact. Such changes were not requested nor assented to by Plaintiff at any point and the resulting modifications to coverage amount and deductibles owed amount to a fraud perpetrated upon Plaintiff by Defendant.

59.    Defendant made statements and performed actions with the intention to manipulate Plaintiff to act as Plaintiff did, thereby causing Plaintiff to suffer injury and constituting common law fraud.

**D.    CONSPIRACY TO COMMIT FRAUD**

60.     Plaintiff repleads all of the material allegations above set forth in Paragraphs 7 - 25 and incorporate the same herein by this reference as if here set forth in full.

61.     Defendant is liable to Plaintiff for conspiracy to commit fraud. Defendant, through its relationships with adjusters, and/or third party claims adjusters, was a member of a combination of two or more persons whose object was to accomplish an unlawful purpose or a lawful purpose by unlawful means. In reaching a meeting of the minds regarding the course of action to be taken against Plaintiff, Defendant committed an unlawful, overt act to further the object or course of action. Plaintiff suffered injury as a proximate result. Plaintiff does not seek damages from conspirators other than Defendant at this time, but reserves the right to amend this pleading.

**E.     BREACH OF CONTRACT/DUTY OF GOOD FAITH AND FAIR DEALING**

62.     Plaintiff repleads all of the material allegations above set forth in Paragraphs 7 - 25 and incorporate the same herein by this reference as if here set forth in full.

63.     Defendant is liable to Plaintiff for intentional breach of contract, and intentional breach of the common law duty of good faith and fair dealing.

64.     Defendant's conduct constitutes a breach of the insurance contract made between Defendant and Plaintiff.

65.     Defendant's failure and/or refusal, as described above, to pay the adequate and just compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of Defendant's insurance contract with Plaintiff.

66.     Defendant's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although, at that time, Defendant knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

**F.      RESPONSIBILITY FOR ACTS OF AGENTS AND RATIFICATION OF ACTS**

67.      The Adjuster and Subsequent Adjuster, whose conduct is referenced herein and above, were acting as agents of Defendant at all material times made the basis of Plaintiff's Claims and such acts of commission and omission in the handling of Plaintiff's claim, including inspections, adjustments, and aiding in the adjustment of the loss were committed for or on behalf of Defendant, the insurer. TEX.INS.CODE §4001.051.

68.      Separately, and/or in the alternative, as referenced and described above, Defendant ratified the actions and conduct of Adjuster and Subsequent Adjuster including the manner in which they discharged or failed to properly discharge their duties under the common law and applicable statutory laws and regulations.

## AGENCY AND RESPONDEAT SUPERIOR

69.      Whenever in this petition it is alleged that the Defendant did any act or omission, it is meant that Defendant themselves or their agents, officers, servants, employees, or representatives did such act or omission, and it was done with the full authorization or ratification of Defendant or done in normal routine, course and scope of the agency or employment of Defendant or its agents, officers, servants, employees, or representatives.

## SUBSTANTIAL COMPLIANCE AND ESTOPPEL

70.      Plaintiff alleges that as to any terms, conditions, notices, or requests under the insurance contracts, Plaintiff has substantially complied and/or are excused. In the alternative, Plaintiff makes the allegation of waiver and/or estoppel as to every defense or exclusion plead by Defendant. As to any exclusion, condition, or defense pled, Plaintiff would show that:

1.      The clear and unambiguous language of the policies provides coverage for properties damage caused by hail, windstorm and water damage, including the cost of access to

fix the damaged areas. Any other construction of the language of the policies is void as against public policy;

2.      Any other construction and its use by Allstate violate section 541 and 542 of the Texas Insurance Code and are void as against public policy;

3.      Any other construction violates Art. 17.50 of the Texas Business and Commerce Code, is unconscionable, was procured by fraudulent inducement, and is void as against public policy;

4.      Any other construction is otherwise void as against public policy, illegal, and volatiles state law and administrative rule and regulation;

5.      The adoption of any other construction constitutes wrongful or bad faith cancellation and/or refusal to renew a portion of Plaintiff's predecessor policy with Allstate. In this regard, Plaintiff would show that his insurance policies were renewed uninterrupted for many years; and

6.      The adoption of any other construction constitutes conduct in violation of the laws of this state; including section 541 and 542 of Texas Insurance Code is void as against public policy.

If this Court finds any ambiguity in the policies, the rules of construction of such policy mandate the construction and interpretation urged by Plaintiff. In the alternative, Allstate are judicially, administratively, or equitably estopped from denying Plaintiff's construction of the policies coverage at issue. To the extent that the wording of such policies does not reflect the true intent of all parties thereto, Plaintiff pleads the doctrine of mutual mistake requiring reformation.

**KNOWLEDGE AND INTENT**

45.    Each of the acts described above, together and singularly, was done "knowingly," and "intentionally" as those terms are used in the Texas Insurance Code, and was a producing cause of Plaintiff's damages described herein.

## RESERVATION OF RIGHTS

46.    Plaintiff reserves the right to prove the amount of damages at trial. Plaintiff reserves the right to amend this petition to add additional counts upon further discovery as the investigation continues.

## NOTICE OF ACTION

47.    Pursuant to Section 541.154 of the Texas Insurance Code and Business and Commerce Code section 17.505(a), notice was not required as giving notice is rendered impracticable because the action must be filed to prevent the statute of limitations from expiring.

## DAMAGES, EXEMPLARY DAMAGES AND INTEREST

48.    The above acts and practices of Defendant have caused loss and actual damages to Plaintiff for which compensation is sought. Plaintiff also seeks recovery of both pre- and post-judgment interest, exemplary damages, and costs/expenses as provided by law.

49.    Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

50.    As previously stated, the damages caused by the Covered Loss Event were not fully paid by Defendant and have not been properly addressed in the time since the covered loss event, causing further damages to Plaintiff financially in terms of paying for covered losses when such obligation was that of Defendant, which has caused undue hardship and burden to Plaintiff. These damages are a direct result of Defendant's mishandling of Plaintiff's claim in violation of the laws set forth above.

51.    For breach of contract, Plaintiff is entitled to regain the benefit of Plaintiff's bargain, which is the amount of Plaintiff's claim losses and expenses.

52.    For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, mental anguish, and court costs. For knowing conduct of the acts described above, Plaintiff asks for three times Plaintiff's actual damages. TEX. INS. CODE §541.152.

53.    For noncompliance with the Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of Plaintiff's claim, as well as ten percent (10%) interest per annum on the amount of such claim as damages. TEX. INS. CODE §542.060.

54.    For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from Defendant's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages, and damages for emotional distress.

55.    For fraud, Plaintiff is entitled to recover actual damages and exemplary damages for knowingly fraudulent and malicious representations, interest, and court costs.

## CONDITIONS PRECEDENT

56.    Pursuant to Rule 54 of the Texas Rules of Civil Procedure, all conditions precedent to plaintiff's right to full recovery against Defendant on the causes of action asserted herein have been performed or have occurred.

## JURY DEMAND

57.     Plaintiff hereby requests that all causes of action alleged herein be tried before a jury consisting of citizens residing in BEXAR County, Texas. Plaintiff will tender the appropriate jury fee prior to the deadline set forth in the Texas Rules of Civil Procedure.

### PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that upon trial hereof, said Plaintiff have and recover such sums as would reasonably and justly compensate Plaintiff in accordance with the rules of law and procedure, as to actual damages, treble damages under the Texas Insurance Code, and all punitive and exemplary damages as may be found. In addition, Plaintiff requests all costs of Court on Plaintiff's behalf expended, for pre-judgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which Plaintiff may show Plaintiff is entitled to.

Respectfully Submitted,

BY: *Lisa Jackson*

Lisa Jackson
Pro-Se Plaintiff
lisajackson7117@gmail.com
2818 Barrel Oak St
San Antonio TX 78231
(210) 771-7701

# Exhibit A

# Emails, Documents, and Photos in Support of Claims

 **Gmail**

**Fwd: CLAIM NO 0627894751 Fwd: LISA JACKSON SIDING AND PAINT JOB**
1 message

Mon, Sep 4, 2023 at 7:47 PM

---------- Forwarded message ---------
From: **Lisa Jackson** <lisajackson7117@gmail.com>
Date: Wed, Jun 1, 2022, 3:53 PM
Subject: Fwd: CLAIM NO 0627894751 Fwd: LISA JACKSON SIDING AND PAINT JOB
To: Lisa Jackson <lisajackson7117@gmail.com>

---------- Forwarded message ---------
From: **Lisa Jackson** <lisajackson7117@gmail.com>
Date: Fri, Feb 4, 2022, 4:06 PM
Subject: CLAIM NO 0627894751 Fwd: LISA JACKSON SIDING AND PAINT JOB
To: <claims@claims.allstate.com>

Dear Claims Adjuster,

Attached herewith you will find the Final Paid Invoice for my Heavily Hail Damaged Exterior Paint Job and Wood Siding and Trim boards.

Nick failed to include this in his estimates for all the Heavy Hail Damage that my Entire Home Exterior Paint Job and Wood Siding and Trim boards that is to be properly Covered by my Insurance Policy.

Samson and my Engineer who saw all this Damage. Did disclose all this in his estimates to Nicholas Beckwith of Allstate.

As I have previous stated in my other mails to you. Both Samson the Allstate Adjuster and my Engineer and myself have submitted all the photos and proof of all this Heavy Hail Damage to my Entire Home.

Please note that my Window Screens and 2 Sliding Glass Door Window screens were all destroyed by the Hail. I was in my home when it came down and it sounded like the windows and sliding glass doors were being broken. It did damage many of my window Seals that do need proper Exterior Caulking to seal the windows properly. The Hail Storm Damaged all these items.

You do have photos of all these same items that were submitted by Samson and my Engineer and myself.

Please make all the necessary adjustments in your final payment for all the Hail Damage Repairs. This will not include the Packing Up and Moving and Storage nor does it cover the proper price to do the rest of the Interior work in all my interior damages that I disclosed to you in my previous mail to you.

I will need to get a New Professional Contractor to give me the Current Proper Replacement Costs to do all this work. Including needing to get a proper replacement estimate for the replacement of my damaged drapes.

Thank you for your prompt attention to this matter.

I expect the Proper Reimbursement for this Exterior Work that I had to get done to prevent any further damages to my interior of my home.

Please make sure you add the proper costs of (2) Sliding Glass Door Screens, and the other (7) Window screens that were destroyed by the Hail.

Please send me the Full Replacement Cost Coverage for all these aforementioned items. Please send it to me this next week.

Respectfully submitted,

Lisa Jackson
2818 Barrel Oak St
San Antonio TX 78231
210-771-7701

Attachment

---------- Forwarded message ---------
From: **Orlando Ventura** <venturaorlando444@gmail.com>
Date: Sun, Jan 30, 2022, 3:29 PM
Subject: Fwd: LISA JACKSON SIDING AND PAINT JOB
To: <lisajackson7117@gmail.com>

---------- Forwarded message ---------
From: **Orlando Ventura** <orlandoventura14@icloud.com>
Date: Sun, 30 Jan 2022 at 15:28
Subject: LISA JACKSON SIDING AND PAINT JOB
To: <venturaorlando444@gmail.com>

---

📄 MANSORYInvoice - Copy WORD.pdf
2579K

# VENTURA ROOFING

214 COUNTY ROAD 6846
LYTLE TX, 78052
Cell (210) 430-0275

**INVOICE**

INVOICE SUBMITTED TO:
**Lisa Jackson**
**2818 Barrel Oak St.**
**San Antonio Tx, 78231**

To Whom It May Concern:

## Claim No: 0627894751 ON THE EXTERIOR HAIL DAMAGE CLAIM TO REPLACE AND REPAIR THE HEAVILY HAIL DAMAGE TO MY PAINT AND WOOD SIDING AND TRIM BOARDS

**ORIGINAL INSPECTION:**

**Upon our inspection of the above residence, we found extensive hail damage to the entire home. The exterior paint had hail strikes that pitted and chipped the exterior paint and siding and trim. We had to replace damaged wood and trim boards that were damaged from major hailstorm that recently hit many areas in San Antonio TX.**

1. **WE REMOVED AND REPLACED HEAVILY HAIL DAMAGED WOOD SIDING**
2. **WE REMOVED AND REPLACED HEAVILY HAIL DAMAGED 1X2 & 1X4 TRIM FROM THE WINDOWS**
3. **WE CAULKED WHERE IT WAS NEEDED**
4. **WE SCRAPPED AND CLEANED THE WALLS OF THE HOUSE, BEFORE PAINTING, WHERE NEEDED**
5. **WE PAINTED THE WHOLE HOUSE**

**TOTAL COSTS FOR THIS REPAIR PROJECT ARE AS FOLLOWS:**

1) **Paint that is the same brand that was used on last paint job. Beher Ultra-Premium**
   a. **Cost- $1,147.98**
2) **Total cost of Lumber and Wood siding $362.54**
3) **Labor $3,000**

**TOTAL JOB COSTS: $4,510.52**

*Orlando Ventura*

**ORLANDO VENTURA**
**214 COUNTY ROAD 6846**
**LYTLE, TX 78052**
ACCEPTANCE OF INVOICE:

**SIGNATURE:**

*Lisa Jackson*

---------- Forwarded message ----------
From: **Lisa Jackson** <lisajackson7117@gmail.com>
Date: Mon, Mar 27, 2023, 9:35 PM
Subject: Re: [External] Re: Allstate Claim 0627894751 & Claim for AC Water Damage
To: <claims@claims.allstate.com>

Mr. Roy,

I hereby request the Name of Your Allstate Attorney of Counsel with their name, address and contact phone number.

I also hereby request Full Hard Copies of all your Files on Both my AC Water Damage Claim that has not been properly settled and my Hail Damage Claim.

To include all your notes to the Files and copies of all correspondence in both Allstate Files. Send all the complete Hard Copies of the Files to me in the next 3 days.

Send All Files to my address at 2818 Barret Oak St. San Antonio TX 78231.

Respectfully submitted,

Lisa Jackson
2818 Barret Oak St
San Antonio TX 78231
210-771-7701

cc: Attorneys,

Governor Abbott,
Attorney General,
TX Department of
Insurance

On Mon, Mar 27, 2023, 5:52 PM Allstate Insurance <allstate@service01.email.allstate.com> wrote:

Claim 0627894751



Ms. Jackson,

I've received your email and noted your concerns.

Respectfully,

MARK ROY
Allstate Vehicle and Property Insurance Company
Phone: (877) 224-4583 x1226878
Fax: (877) 292-9527
claims@claims.allstate.com

CONFIDENTIALITY/PRIVACY NOTICE: This e-mail, including any attachments, may contain personal, private and confidential information intended solely for use by the individual to whom it is addressed. If you are not the intended addressee, please be aware that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you received this message in error, please notify the sender immediately by e-mail and delete from your system.

**** Please do not delete your unique Conversation ID ****

*** Conversation ID: FR3973e9dc4d574e ***

---------------------------------------------

From: lisajackson7117@gmail.com
Sent: Monday, March 27, 2023 5:33 PM
To: claims@claims.allstate.com
Subject: Re: [External] Re: Allstate Claim 0627894751

Mr. Roy,

You and Allstate Insurance are to properly cover all my Damages to my Home both interior that was approved by your First 2 Representatives.

In fact the first partial payment of appropriately $6,000. Was noted it was to cover my interior ceiling Damages in my Garage that fell in due to the water damage. It was also stated it was to cover the replacement cost of my Roof!

Your Adjuster was properly notified that he had totally misrepresented the cost of both! The evidence is in on all your files. Nick also confirmed and represented to me on recorded calls, that my entire exterior damages to my Cedar Fencing and Exterior Hail Damaged Wooden Siding and all that I have properly advised you in my detailed letters to you!

When Ms Brooks took over she was more blatant to try to continue to Defraud me in trying to reverse what was already approved by pervious Adjuster!

Further, she would make demands that she needed the proof from Electrical Engineer for my Garage Door Opener that was destroyed by the water damage from the roof leaks in my Garage.
I complied and sent her this Evidence that proved my Garage Door Opener's Mother Board was destroyed by the water damage! She still failed to properly cover this damage!

Further, she kept representing to me that my exterior damage to my home and windows and window screens all would be covered including my fencing.

I apprised her that the only check sent to me did not cover my Roof Replacement! I sent her my Paid Invoice for my Like and Kind Proper Roof Replacement Cost. She again said she would approve that amount and that she was going to pay that and then she said she would cover 1 Side of my Cedar Fencing that was destroyed on all 4 sides! Photos of all these damages on all 4 sides are in your file!

She also admitted that my Cedar Fencing was to be covered for full replacement cost coverage. I apprised her that the interior damages in my home and Garage have not been properly settled on my Hail Damage Claim! I gave her the Estimates to get all these damages covered and she failed to properly cover all these items. After she had already Formally represented to me would be covered. Including the damaged windows and window screens. You have all these photos in your file.

After my delays, I called her and requested her proper settlement for my Hail Damage Claim!

All of Allstate's Adjusters have wrongfully Assigned this Claim as a Major Hail Damage Claim!
I kept requesting they change the Claim to properly cover it as my Hail Damage Claim!

On my last Call to Ms. Brooks, I requested my proper settlement in my Claim. She represented to me that she was going to properly reimburse me for my Roof Replacement that I had paid $17,500. She confirmed she was going to pay that and then she said she would cover 1 Side of my Cedar Fencing that was destroyed on all 4 sides! Photos of all these damages on all 4 sides are in your file!

Then she said she was going to cover my damaged window screens. I told her that I still have the damaged Garage Ceilings and all my other interior ceilings and walls and drapes and flooring that were all damaged from this Hail Storm with Heavy Rains with Drifting Winds.

I supplied her with all these estimates and all the Contractors stated they could not do this interior work in all my damaged areas including my Garage, without all of my Contents being proper Packed Up by a Licensed and Bonded Moving Company. All these contents will need to be stored in an AC Storage Facility.

I will also have to be placed in a Temporary Housing one story home with a fenced back yard for my safety and my puppys safety.

On my Last Discussion with Ms. Brooks, she first said she had good news for

me and was going to cover all these Damages. Then, she proceeded to
misrepresent the costs of all. She did say she has all the proper evidence
and iTel Report and all photos of my Roof being ripped off showing all the
proper components that had to be replaced! She confirmed the Cost I paid of
$17,500. for my Proper Roof Replacement.

Then, she started to try to play, (Let's Make A Deal)! She started to
misrepresent all my other costs of all my Claim. I corrected her on her
misrepresented costs and she hung up on me 3 times during our trying to
discuss line by line items to be covered!

I asked for her Supervisor to call me. No call was returned to me! I called
again, and the Supervisor told me that Ms. Brooks has already paid me and
closed my File! I told her that I was never paid for all my Claim!
It was clear that another Fraud was Comitted in the Processing of my Claim!

Now you, Mr. Roy are also Comitting Fraud and Deceptive Trade Practices
Act, Breach of Contract, and Willful Intentional Abuse of Disabled Elder by
continuing to cause Major Health Damages and Stress and Anxiety of my
Insured!

You have 9 days from today to make your Proper Settlementsm both my Cadee!

Respectfully submitted,

Lisa Jackson
2818 Barrel Oak St
San Antonio TX 78231
210-771-7701

cc: Attorneys,
Governor Abbott,
TX Attorney
General Paxton,
TX Dept. of
Insurance

On Mon, Mar 27, 2023, 4:00 PM Allstate Insurance <
allstate@service01.email-allstate.com> wrote:

> Log in to review.
>
> Claim "0627894751"
> [image: Allstate]
> My
> apologies Ms. Jackson, I had your prior claims representative Kimberley
> Brooks on my mind when I wrote to you.
>
> I have noted your demands, but unfortunately i will not be able to meet
> them.
>
> Respectfully,
>
> MARK, ROY
> Allstate Vehicle and Property Insurance Company
> Phone: (877) 224-4583 x1226878
> Fax: (877) 292-9527
> claims@claims.allstate.com
>
>
> CONFIDENTIALITY/PRIVACY NOTICE: This e-mail, including any attachments,
> may contain personal, private and confidential information intended solely
> for use by the individual to whom it is addressed. If you are not the
> intended addressee, please be aware that any dissemination, distribution or
> copying of this e-mail is strictly prohibited. If you received this message
> in error, please notify the sender immediately by e-mail and delete from
> your system.
>
> **** Please do not delete your unique Conversation ID ****
>
> *** Conversation ID: FR3973e9Idc4d57Ae ***
>
> _____
>
> From:  lisajackson7117@gmail.com
> Sent: Monday, Mar 27, 2023 3:39 PM
> To: claims@claims.allstate.com
> Subject: [External] Re: Allstate Claim 0627894751
>
> I'm out Mrs. BROOKS!
>
> MY DEMAND LETTER is not negotiable! It's all the damages that your precious
> Adjusters acknowledged were to be covered.
>
> Your Allstate Agents all represented that all these damages were to be
> covered under my Policy for Full Replacement Cost Coverage.
>
> I have full recordings of all conversations from all your representative
> and Adjusters. Including the rude and very inappropriate messages from your
> last Adjuster that tried to totally reverse all that was damaged and is
> covered under My Policy!
>
> Your continued Intentional Fraud, and Deceptive Trade Practices, and Breach
> of Contracts, and Willful Intention to cause me bodily harm, and undue
> stress and anxiety of a Disabled Elder. With Allstate not properly covering
> the proper abatement of all microbial growth and total damages to my home.
>
> I will Seek All Remedies Under The Law Including you and Allstate's Fraud,
> Breach of Contract and Deceptive Trade Practices, with Treble Damages and
> Punitive Damages and All Remedies Under The Law. Including Attorneys Fees
> and Court Costs.
>
> You have been all Proper Notices Under The Law!
>
> You have 10 Days from this Day to Deliver Allstate's Proper Payment Under
> The Law! You have All the Receipts that I have Paid for Replacement of my
> Roof that exceeded what your Adjusters tried to pay! You have All My other
> Paid Receipts for my Damaged Exterior that you have not properly paid for!
> You have all the other Photos and Evidence from me and your First Engineer
> that came and willed all these damages with me and my Property Engineer
> who showed him all the Hail Storm Damage.
>
> All the Evidence is in and proves The Intentional Fraud and Deceptive Trade
> Practices and Breach of Contract that Allstate has comitted in all my
> claims.
>
> All this Evidence and Documentation will be forwarded to my Governor and
> The Department of Insurance and Attorney General. I have had every
> Contractor and other Insureds with Allstate all confirm that Allstate has
> comitted these Bad Faith and other above Acts with their Insurance
> Practices. I will be seeking all these Remedies and you and Allstate will
> be responsible for these steps to be taken for my proper remedy.
>
> You have 10 Days to Deliver me my Full Payment for my Hail Damage Claim and
> 20 Days to Get me all my Damages and Losses under my First Claim.
>
> Respectfully submitted,
>
> Lisa Jackson
> 2818 Barrel Oak St
> San Antonio TX 78231
> 210-771-7701
>
> cc: Attorney's,
> Governor Abbott,
> TX Department of Insurance,
> Attorney General
>
> On Mon, Mar 27, 2023, 9:50 AM Allstate Insurance <
> allstate@service01.email-allstate.com> wrote:
>
> > Log in to review.
> >
> >
> > Claim "0627894751"
> > [image: Allstate]
> > Ms.
> > Brooks,
> >

> > I have completed a review of this claims file and the materials have
> > submitted. Thank you for allowing me the time to do so.
> >
> > At this time, I am unable to satisfy your demand for $354,000.00 in
> > settlement of your claim.
> >
> > Respectfully,
> >
> > MARK ROY
> > Allstate Vehicle and Property Insurance Company
> > Phone: (877) 224-4583 x1226878
> > Fax: (877) 292-0527
> > claims@claims.allstate.com
> >
> >
> > CONFIDENTIALITY/PRIVACY NOTICE: This e-mail, including any attachments,
> > may contain personal, private and confidential information intended
> solely
> > for use by the individual to whom it is addressed. If you are not the
> > intended addressee, please be aware that any dissemination, distribution
> or
> > copying of this e-mail is strictly prohibited. If you received this
> message
> > in error, please notify the sender immediately by e-mail and delete from
> > your system.
> >
> > **** Please do not delete your unique Conversation ID ****
> >
> > *** Conversation ID: FR39753e9dc4d574e ***
> >
> > Did you find this email useful?
> >
> >
> > [image: Allstate]
> >
> > MyClaim
> >
> > | Tools & Resources
> >
> > | Allstate.com
> >
> > This email was sent to you at LISAJACKSON7117@GMAIL.COM
> > 2023 Allstate Insurance Company. All rights reserved. Privacy Statement
> >
> > | Contact Us
> >
> > Allstate Insurance Company, PO Box 661039, Dallas, TX 75266
> >
> > P_CLAIMS_EOB7B_FREEFORMTEXT_T
> > EMAIL_TO:claims@claims.allstate.com
> >
>
>
> Did you find this email useful?
>
>
> [image: Allstate]
>
> MyClaim
>
> | Tools & Resources
>
> | Allstate.com
>
> This email was sent to you at lisajackson7117@gmail.com
> 2023 Allstate Insurance Company. All rights reserved. Privacy Statement
>
> | Contact Us
>
> Allstate Insurance Company, PO Box 661039, Dallas, TX 75266
>
> P_CLAIMS_EOB7B_FREEFORMTEXT_T
> EMAIL_TO:claims@claims.allstate.com
>

Did you find this email useful?

 

Allstate.

MyClaim  |  Tools & Resources  |  Allstate.com

This email was sent to you at lisajackson7117@gmail.com
© 2023 Allstate Insurance Company. All rights reserved. Privacy Statement  |  Contact Us
Allstate Insurance Company, PO Box 661039, Dallas, TX 75266

P_CLAIMS_EOB7B_FREEFORMTEXT_T

EMAIL_TO:claims@claims.allstate.com



**Fwd: [External] CASE 0627894751 Hail Damage to My Entir**
1 message

Mon, Sep 4, 2023 at 10:44 PM

Hi Brent,

Here is the Proof of The Itel Report that I sent in for Nick Beckwith's to properly pay me for all my Roofing components and Best Shingles I had on my home. Nick verified it is a Class 4 Highest Rated Architectural Shingle.
But, Nick and Allstate failed to pay me for my Roof Replacement Cost. They didn't pay any of my Paid Invoices that had to be done to prevent my home from having more damage.
Allstate has continued to Comit Fraud and Deceptive Trade Practices and Breach of Contract.

---------- Forwarded message ---------
From: **Lisa Jackson** <lisajackson7117@gmail.com>
Date: Fri, Dec 3, 2021, 1:59 PM
Subject: Re: [External] CASE 0627894751 Hail Damage to My Entir
To: <claims@claims.allstate.com>

Nick,

You said Allstate will be paying for this test! I can't send it to them directly if you haven't sent them an authorization for you to pay for the Report!

Please notify them that you are responsible for this Itel Report.

Respectfully submitted,

Lisa Jackson
2818 Barrel Oak St
San Antonio TX 78231
210-771-7701

On Fri, Dec 3, 2021, 7:20 AM Allstate Insurance <allstate@service01.email-allstate.com> wrote:
Hello Mrs. Jackson,

6676 Corporate Center Parkway Suite 107, Jacksonville, FL 32216

This is the address to send a sample estimate to ITEL Laboratory for a report. This is not an Allstate address, this is the ITEL laboratory address, where they perform the report. If you ask your contractor he should be willing to do it for you.

Thank you,

Nicholas Beckwith
Allstate Vehicle and Property Insurance Company
Phone: (877) 224-4583 x1226864
Fax: (877) 292-9527
claims@claims.allstate.com

CONFIDENTIALITY/PRIVACY NOTICE: This e-mail, including any attachments, may contain personal, private and confidential information intended solely for use by the individual to whom it is addressed. If you are not the intended addressee, please be aware that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you received this message in error, please notify the sender immediately by e-mail and delete from your system.

**** Please do not delete your unique Conversation ID ****

*** Conversation ID: FRfc1e5c93e4f14a ***

-------------------------------------------------------------------------------------------------

From: lisajackson7117@gmail.com
Sent: Thursday, Dec 02, 2021 8:47 PM
To: claims@claims.allstate.com
Subject: [External] CASE 0627894751 Hail Damage to My Entire Home.

Hello Nick,

I had requested you, to send my proper address, for me to send to you my roofing shingle for your ITEL Report.

I will be sending you a shingle from my roof, to prove I had a good 30 year Architectural Heavy Duty shingle. You will be responsible to you can send it to ITEL and pay for the report.

Nick, I have been helping people design and build their Custom.Homes. I have personally overseeing every piece of proper components that are on my roof. I do not cut corners, nor do I use inferior components for my roof and home.

Nic, I will be sending you more pictures of the roof leaks on the interior of my home. All of these items will need to be amended on your Estimate, in order for me to get this work done properly. I am entitled to full replacement cost coverage for every components in my home.

I do want to get all this work done as soon as possible.

Respectfully submitted,

Lisa Jackson
2818 Barrel Oak St.
San Antonio TX 78231
210-771-7701

cc: Attorneys

P_CLAIMS_EOB7B_FREEFORMTEXT_T

 Gmail

**Fwd: [External] Re: Allstate Claim:0627894751**
1 message

Mon, Sep 4, 2023 at 11:13 PM

Hi Brent,

This is the evidence of Nick Beckwith's attempts to comit Fraud and not properly cover all my Roof Components and he failed to Measure the Proper Amount of Squares my Roof had. I did submit all the photos of my Roof being removed showing the synthetic Underlayment and my metal Valleys and Roof Jack's and metal edging and ridge vents and all my Components. Allstate replaced Nick and his Supervisor Did see my photos and agreed my Roof had all the components and that Nick had grossly mis-measured my roof size in Squares. That Adjuster said she agreed with my Paid Invoice and was going to reimburse me for my Total Cost of my Roof for $17,500.00. They got the Itel Report and confirmed my Roof was Architectural Shingle Class 4 Rated being a 30 year Roof.

Allstate never paid me anything but the $4420.73. All these actions proves Allstate's Continued Fraud and Deceptive Trade Practices and Breach of Contract. They are supposed to pay me Replacement Cost Coverage! That's what my Policy was for $350,000.00.

Thank you Brent. I think The Judge Expects all these facts in our Amended Petition.

You can see the dates on each and the names of each that handled my Claim.

Thank you,

Lisa Jackson

---------- Forwarded message ---------
From: **Lisa Jackson** <lisajackson7117@gmail.com>
Date: Wed, Nov 3, 2021, 2:57 PM
Subject: Re: [External] Re: Allstate Claim:0627894751
To: <claims@allstate.com>

Nick,

Your estimate are way off and Not Acceptable! I have extensive hail damage to my entire home. The Exterior and all including the fencing have all been hail damaged. I have sent you proper pictures that show the hail damage to all. Allstate hired Samson as your Adjuster to properly document all my Hail Damage Claim. He is licensed and has submitted his Estimates to you. You are to follow his inspection and his recommendations. This is always the Proper Process for your Insurance Coverage and for All insurance coverage.

I will need the garage contents and interior contents to be moved out and put into storage.  My Policy covers all of this.

I have asked you for the proper address for me to send the roof shingle to get your Itel report.

You are given this as my Last Formal Demand to properly settle my Hail Damage Claim. This will include the exterior paint and interior ceilings repaired and retextured and painted. Also to include the replacement of my cedar fencing and for the removal of all damaged materials to be placed into a proper Garbage Container for all the debris.

I have water damage leaks in my Master bedroom and bathroom, Formal Dining Room and in my Family room, and kitchen and utility room and Garage. All the interior contents in all these rooms will have to be packed up and placed into storage.

You have now been given this as my Last Formal Notice for you to get all of my Hail Damage Claim properly settled. If you fail to properly settle my claim. I will seek further Damages to include Treble Damages for Deceptive Trade Practices, that you are committing. Including my Attorneys Fees and all further remedies under the law. I'm a Disabled Elder and your attempt to defraud me will not be tolerated. You have been given this as My Formal Last Demand. I will submit the pictures of my exterior paint that is under my front porch that wasn't hit by hail. It will prove that my exposed paint does have hail damage. When hail hits all over my home. My insurance policy covers all these damages. My entire exterior wood will all need to be painted to properly match.

You have 30 days from today to properly settle my Hail Damage Claim.

Give me the Address for the shingle to be sent for the Itel Report. As for the little wood that needs replaced to do the roof right, it's cost is $200 for this part. I will pay for that.

Respectfully submitted,

Lisa Jackson
2818 Barrel Oak St.
San Antonio TX 78231
210-771-7701

cc: Attorneys

On Wed, Nov 3, 2021, 7:34 AM Allstate Insurance <allstate@service01.email-allstate.com> wrote:
Hello Mrs. Jackson,

As I have said before, as well as my previous manager Candace Brown, Samson does not have any say on what is damaged by hail and what is covered under your insurance policy. Please disregard all information Samson (your INSPECTOR, not ADJUSTER) spoke to you about your damages, he does not determine what happens in this claim. Do you understand? Samson does not make the decisions. It does not matter if Samson agrees that there is hail on your property.

The damages you have shown us of the exterior are not consistent with hail damages. The photos you sent us show text book paint chipping. So the same decision stands, there will be no coverage on the exterior of the home. I previously noted in our file the last time we spoke that the damage to the screen doors was also not consistent with hail and is damaged by old age and deterioration.

The underlayment cannot be paid for as synthetic unless photo documentation is shown that it is currently present on your roof. If not, the upgrade from paper felt to synthetic felt will be an expense you incur as insurance does not cover upgrades, but it covers current conditions. That is nice that synthetic felt is used for nailing and sealing problems, unfortunately Allstate cannot pay for the upgrade from paper to synthetic. The same as valley metal, once we have documentation on file that shows it is present, we can include it on your estimate. Until then, nothing will change. As for the shingles, your contractor will complete it, as he takes a sample and sends it to ITEL Laboratory, not us. If you would like, I can speak with him to give him the green light to do it. As I have explained in the previous estimate, no changes can be made to the roofing estimate. There is also depreciation withheld from everything we replace, as your policy demands.

Unfortunately, Allstate cannot pay for a storage unit. This decision is final, along with all the other decisions in this email. I will be giving you a call later today to go over these items. Please expect that call from an 877 number.

We still have not seen any of the interior leaks you are speaking about. Please kindly send over your interior leaks for Allstate to review.

Once we have the documentation needed we can review changes. At this time, there will be no changes.

Thank you,

Nicholas Beckwith
Allstate Vehicle and Property Insurance Company
Phone: (877) 224-4583 x1226864
Fax: (877) 292-9527
claims@claims.allstate.com

CONFIDENTIALITY/PRIVACY NOTICE: This e-mail, including any attachments, may contain personal, private and confidential information intended solely for use by the individual to whom it is addressed. If you are not the intended addressee, please be aware that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you received this message in error, please notify the sender immediately by e-mail and delete this message from your system.

**** Please do not delete your unique Conversation ID ****

*** Conversation ID: FR50a96cd384854e ***

-----------------------------------------------------------------------------------------------------------------

From: lisajackson7117@gmail.com
Sent: Tuesday, Nov 02, 2021 9:45 PM
To: claims@claims.allstate.com
Subject: [External] Re: Allstate Claim:0627894751

Dear Nick,

My home sustained major hail damage to all of my home. The Exterior Paint Job is damaged from Hail. Samson and all the others who have seen my home all agree that my exterior paint is damaged and is to be covered by this hail claim. Just as you have noted that my fencing is hail damaged. So is my exterior.

As to the Underlayment. Felt is not used by the professionals. My

Underlayment is the synthetic. Your estimate was way off on all the components and not on your estimate. There are several vent pipes that have boot jacks covering them. They will all need to be replaced. The costs for labor is not properly included on your estimate. Your roof Estimate is way off on the squares that all have to be torn off and replaced. It should be the same footage. There is drip edge and proper valley metals that have to be torn off and replaced.

As for the Garage Contents, it will all have to be moved into storage. There is no space in my home for it to be placed. It will all have to be packed up and moved into storage and returned after the garage work is completed. This is proper and on my insurance coverage for this and all work that has to be done in my home.

I will be sending you the shingle to you for your report. Please give me the right address where I should send it.

You were given the pictures of the damaged grill. I will get you the other bids for the interior roof leaks that are in my Master bedroom and bathroom and kitchen and utility room.

The garage opener is shorted out and will have to be replaced. I sent you picture of that too. My garage contents can not be set outside for this work to be done.

You need to properly adjust your wrong roof estimates and all of your estimates for all The Hail Damage that my home has sustained.

I do expect you to properly adjust your estimates. The roof bid is correct. All your other roofing contractors support this same bid.
You have not properly adjusted the roof and all claims.

I expect your prompt attention to this matter. Last, Samson is your Licensed Adjuster with many more years experience than you.

In fact, you tried to falsely deny my hail claim. You have not properly reported it as a hail damage claim. Hail hit it all and tore up my screen doors too. You were sent the photos of them too. You have falsely tried to deny that you didn't see their damages.

I am strongly demanding proper settlement on my claim to cover full replacement cost value. There is to be NO DEPRECIATION applied to any of my claim.

The shingle that gets torn off will be sent. Last, all roofers and shingles demand the synthetic unlayment to give proper protection for nails to seal right.

Please get your proper estimate adjusted right away. I do not want anymore delays in getting all this work done.

Respectfully submitted,

Lisa Jackson
2818 Barrel Oak St.
San Antonio, TX 78231

cc: Attorneys

The Garage

On Tue, Nov 2, 2021, 10:23 AM Allstate Insurance <
allstate@service01.email-allstate.com> wrote:

> Hello Mrs. Jackson,
>
> I have reviewed the following items and have some feedback for you
> concerning your claim. The following items were found to have no consistent
> hail related damages and cannot be covered under this claim:
>
> 1. The siding and painting of the exterior of the home.
> 2. The umbrella and the stand.
>
> The following items are items we spoke about that you haven't submitted
> pictures properly showing damage. These items are:
>
> 1. The gas grill, your picture shows the grill covered by the cloth.
> Please remove the cover so that we can see the damage by hail you are
> trying to show us.
> 2. Lounge chair, we do not have a photo showing a chair damaged by hail
> yet. Please send us a photo for us to review.
>
> For the roof, we have updated the price listing and I am working on
> getting a payment over to you for the difference in materials. This update
> does change the pricing of the shingles and other materials by a little
> amount, but if you would like to inquire about the certain type of shingle
> that you are saying is on your roof, speak with your contractor about
> filing an ITEL Laboratory report. What we will be doing right now in terms
> of your roof is updating the month's price listing since the job has not
> started yet. There are no other changes that can be made to your roof
> estimate at this time. Your contractor's estimate is higher because of
> three reasons. One, it has your specialty shingles listed, in order for us
> to match the ITEL report is needed. Two, your contractor is including a
> charge for synthetic felt underlayment. Since the documentation we have on
> file shows that it is regular felt and not synthetic, in order to make
> those changes we would need your contractor to show us the synthetic felt
> that is present on your roof right now. If it is not present, funding will
> be for paper felt (what is on your roof right now) and not for synthetic.
> Third, your contractor is including a charge for "REPLACE PIECES OF SIDING,
> FASCIA, AND SOFFIT WHERE IT'S NEEDED." Based on our documentation, there is
> no consistent storm related damages by hail to those materials. There will
> not be coverage for that line item until your contractor can show us some
> hail related damages. These are the only changes we can make to your roof
> estimate at this time.
>
> I am going to revise the fencing total and get that situated for you, as
> well as revising the inside of the garage repairs. The key thing in the
> garage is that Allstate will not be paying to move your personal contents
> into a storage unit. We have a charge for content manipulation for an extra
> large room to move your contents around so that they remain undamaged.
> There will be no storage unit involved in this loss.
>
> Your policy has replacement cost value coverage. However, it states that
> we have the right to pay you the actual cash value up front and then the
> remaining depreciation when the work is completed, up to the contractor's
> invoice. We are not going to pay you everything up front, but will in the
> end based on your policy language. If you would like a copy I can get in
> touch with your agency and send it right over.
>
> Please understand that the inspector that was at your property, Samson,
> when he made a virtual call to our adjuster does not have any say,
> authority, or decision making on the estimating and coverage determination
> in this claim. That authority lies completely on me, your licensed
> insurance adjuster. This is what my licensing specializes in.
>
>

> I will be calling you later today to go over this information and to
> answer any questions you may have. As always thank you for being an
> Allstate customer.
>
> Nicholas Beckwith
> Allstate Vehicle and Property Insurance Company
> Phone: (877) 224-4583 x1226864
> Fax: (877) 292-9527
> claims@claims.allstate.com
>
>
> CONFIDENTIALITY/PRIVACY NOTICE: This e-mail, including any attachments,
> may contain personal, private and confidential information intended solely
> for use by the individual to whom it is addressed. If you are not the
> intended addressee, please be aware that any dissemination, distribution or
> copying of this e-mail is strictly prohibited. If you received this message
> in error, please notify the sender immediately by e-mail and delete from
> your system.
>
> **** Please do not delete your unique Conversation ID ****
>
> *** Conversation ID: FR50a96cd384854e ***
>
> P_CLAIMS_EOB7B_FREEFORMTEXT_T
>
> EMAIL_TO:claims@claims.allstate.com:
>

P_CLAIMS_EOB7B_FREEFORMTEXT_T

EMAIL_TO:claims@claims.allstate.com

M Gmail

**Fwd: [External] Re: Allstate Claim:0627894751 DEMAND LETTER**
2 messages

Fri, Mar 24, 2023 at 1:48 PM

--------- Forwarded message ---------
From: **Lisa Jackson** <lisajackson7117@gmail.com>
Date: Fri, Mar 24, 2023, 1:33 PM
Subject: Re: [External] Re: Allstate Claim:0627894751 DEMAND LETTER
To: <claims@claims.allstate.com>

Mr. Roy,

You have been given all the proper evidence that shows the extensive damages to my property.

I have made it Clear that your Fraudulent Mishandling of my Claims are Not Acceptable! You need to review all the Proper Evidence that I have submitted to you and your Appraisers submitted Photos of all the extensive damages to my home and property.

You're continued intent to try to Defraud me, and your Breach of our Contract, under Your Policy, will result in Treble Damages and Punitive Damages, and all further relief under The Deceptive Trade Practices Act and under The Law.

You are to properly pay for all my Damages for this claim and my previous Claim that has not been properly settled!

You are hereby Formally Notified that this is my Final Demand Letter to you and Allstate Insurance to properly Cover all my Damages to my Home and Property inside and outside, including all that is listed in my previous Demand Letter to you.

Any further attempt to try to continue to Defraud me will result in Legal Action and you and Allstate. My friend our Dear Governor will proceed to making sure that Allstate Insurance will no longer be allowed to do your Fraudulent Insurance Business in Texas!

Send me the proper settlement check for this claim for $354,100.

You are also Requested to Properly Cover my First Claim that has not been properly settled! You have previous Contractors Estimates and Billing from Crown Restoration for their packing up and storage of my personal property that is still in their storage that has not been paid and the amount due to them has continued to go up!

You are hereby Properly Notified of all the Proper Major Damages and the Contractor's Bids to get these repairs done are needing to be updated with the higher costs of repairs at today's prices, including you are to properly pay for all my destroyed personal property that was ruined in this AC Water Damage Claim.
The furnishings in the Living Room will have to be packed up and moved for the work to be done in this Claim!

Both Claims are under the Statutes of Limitations and for Fraud it extends these limitations for Four Years!

You are Hereby Notified that your failure to properly settle my Claims for the Amount I submitted to you for my Hail Damage Claim. Your Adjusters failed to properly Cover it as Hail Damage! Allstate was Notified on several occasions that this 2nd Claim is a Major Hail Damage Claim! This is the other Proof of Allstate's Intent to Defraud me as the
Insured!You are to hereby send me my Proper Settlement Check for My Hail Damage Claim in the Amount of $354,100. This proper Settlement Check for $354,100 is to be received by me No Later than 30 Days from this FINAL DEMAND!

Failure to Comply will result in Further Legal Action Under The Deceptive Trade Practices Act, and for Fraud, and Intentional Torches Harm to a Disabled Elder Widow, and All Further Action for Treble Damages and Punitive Damages, Legal Fees and Court Costs, and All Further Remedies Under The Law!

Respectfully submitted,

Lisa Jackson
2816 Barrel Oak St
San Antonio TX 78231
210-771-7701

cc: Attorneys

To the File

On Fri, Mar 24, 2023, 11:16 AM Allstate Insurance <allstate@service01.email.allstate.com> wrote:

Claim **0627894751**



Ms. Jackson,

I am able to assist you with your claim numbered 0627894751, with date of loss 5/11/2021, on your property at 2816 Barrel Oak St, San Antonio, TX 78231 involving wind damage to your residence. Allstate has offered to make payment in the amount of $7,761.36 in settlement of your claim, but the information available in your claims file indicates that you have refused that payment. If you wish for me to issue that payment I would be pleased to do so. Please advise me of your wishes.

Sincerely,

MARK ROY
Allstate Vehicle and Property Insurance Company
Phone: (877) 224-4563 x1226878
Fax: (877) 292-0527
claims@claims.allstate.com

CONFIDENTIALITY/PRIVACY NOTICE: This e-mail, including any attachments, may contain personal, private and confidential information intended solely for use by the individual to whom it is addressed. If you are not the intended addressee, please be aware that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you received this message in error, please notify the sender immediately by e-mail and delete from your system.

**** Please do not delete your unique Conversation ID *****

*** Conversation ID: FRed2a9f5d1ee94d ***

--------------------------------------------------

From: lisajackson7117@gmail.com
Sent: Friday, March 24, 2023 11:44 AM
To: claims@claims.allstate.com
Subject: [External] Re: Allstate Claim:0627894751 DEMAND LETTER!

Attn: Mark Roy,

This Letter Serves As My Formal Demand Letter To You and Allstate Insurance. I have left you 4 messages on your voice mail. I have apprised you that Allstate has not properly covered my Two (2) Claims on my Policy No. 000844909761. The first claim has still not been properly settled for all my Damages to my Home and many valuable personal property that was destroyed by the water damage. Your Adjuster had come to my home and tracked through the water soaked carpeting and tracked it into my family room from the wet shoes. It brought Mold and Mildue into my Living room Carpeting from your Adjusters shoes! He failed to properly cover all of my Damaged Property to include the heavily water damaged Air Ducts. The Jon Wayne Service Heating and Air inspector found that all my ducts were water damaged and had microbial growth and badly damaged and needed to be replaced.

I have submitted all this to Allstate. I have not been able to get these proper repairs done due to Allstate's Breach of Contract, Fraud, and Deceptive Trade Practices. I met with your Adjusters, and showed them their failure to properly cover my Destroyed Custom Drapes and all my Valuable Personal property including Computers, 3 laptops and 3 printers. Complete Limited Edition PS3 Beetles Complete Set with 2 Guitar Heros and Drum set, Microphone and Mic with Stand. I had very valuable Bridal Gowns and Formal Gowns and expensive Custom Leather Outfits Coats, Dresses, Skirts, Boots, Purses and Belts. I had many expensive electronics and 2 iRobots with advanced system to keep it in certain areas. I also had valuable Winter Leather Coats and Long Custom Suede Winter Coat with heavy wool fur lining. I also had experience Valuable Purses and Beauty Gift Sets and Expensive Train Cases filled with Lancome and Estee Lauder Makeup Sets. Also had several Expensive Perfume and Makeup Sets all in their New Packaging never been used. I had other Designer Clothing and Custom Gowns and my One of a kind Hand Made Selmer Alto Saxophone, very valuable. I have all these items that Crown Restoration has not properly itemized nor have they done proper cleaning of any of my property. I had 3 expensive Vaccums and 2 Carpet Cleaners deep shampooing and Steam cleaners that were all damaged from the AC leaks. I also had all my Christmas and Holiday Decorations and clothing that got destroyed in this claim! My Coat closet and the entry that is part of the area that had major water damage went on into my dining room carpet that wasn't properly covered including the hallway that continues into my entry walls that all needed the ceilings and walls textured and painted to match. My Dress Coats and Full Length Silver Fox Coat and other Limited Edition Leather Coats and Heavy Winter Camo Coat and Browning Shooting Vest and Expensive Cowboy Boots and Harley Boots and Dress Boots were in the Coat Closet. Your 2nd and 3rd Ajusters who came to see what was missed by the first Adjuster both verified it all needed to be added to my Claim. Yet, Allstate failed to properly add these damages to my Claim.

My expensive King Size Temperpedic Bed and toppers were ruined by the water that poured out of the air duct that was right over the bed on the first bedroom.

Crown Restoration has held all my property in their storage and they need to be paid for their long term storage and packing it all back and moving it back in and setting it all back. I dont know their final costs for this. I'm sure its probably over $15K to $20K. This First Claim has not been properly settled and Allstate has comitted Fraud and Deceptive Trade Practices and have caused me and my Puppy extensive damage to our health by not properly covering the needed repairs and extended need for abatement of the microbial growth, and their delays in properly handling my claims have caused me extensive Monetary Damages both Physical and Punitive Damages and Treble Damages can be awarded to me.

My Hail Damage Claim has extensive damages to my Home. I explained all this to you in my detailed Messages to you.

I have had to use all my money to make the Major Needed Repairs from all the Big Hail and Heavy Rain and Wind Storm Damage. The Hail made big holes in my wood siding and all over the siding and Paint, and wood trim around my windows that all had Rain coming into my interior my Home. The rain came in around my interior of my Master Bedroom Ceiling and around the windows and in my Master Bath around the roof into the interior walls and around the windows. Getting all my carpeting and flooring wet. It came in behind the walls in my shower and around the wood trim that has caused damage to my shower and shower pan and interior walls. It came on around my sliding glass doors and it's came in onto my flooring in my Family Room carpeting and into my Kitchen around the big picture window and ruined the wood stained grade trim and window ledge and has ruined the wall paper and flooring, and there's microbial growth in all these areas that are causing me and my Puppy major health issues.

All these items were verified by my First Appraiser, who came to see all this Damage with my Engineer that showed him all the Hail Damage to my roof and all of my home, interior and exterior including damage to my windows and sliding glass doors hit so hard they leaked and the damaged Patio furniture and Gas Grill and all my Cedar Fencing all the way around was so badly destroyed and has broken main posts that were blown over and broken, and Hail Damaged Splitting the wood all over. The Appraiser saw the Garage Ceiling had gotten water damaged and the Garage Door Opener had been shorted out in The Mother Board. He said my interior of my Garage had a complete nice finish out textured ceiling and Paint and all would be covered under My Policy with Allstate. Your Appraiser did confirm to me and my Roof Engineer, that all these damages to my home interior and exterior, paint and ceilings, texture and flooring, including replacing the Hail Damage Wood Siding and Trim and Paint Job, leaking windows an, sliding glass doors that were heavily damaged would all be replaced, that my entire exterior of my home were to be covered and paid for at Replacement Cost Coverage under my Policy! He further represented to us that Allstate would need to pack up all my interior furniture and my Garage Contents and Antiques and Piano would be properly packed up and moved into Air Conditioned Storage so all the needed repairs can be done! He also confirmed that I would be placed into Temporary Housing one story home with a fence for me and my puppy to be safe while the work would be done. He estimated about 3 months or more due to delays with so many claims and contractors schedules. The photos of the damages of my Roof and Siding and Entire Cedar Fencing and Patio Furniture and Gas Grill, and even the photos of the window screens were sent to Nick Beckwith.

Nick Beckwith, tried to Deny my Hail Claim. It was a blatantly, intentional Fraud, to try to deny my Hail and Storm Damage Claim. Roofix sent him their report and all the photos and apprised him of the Outside Appraisers Verified All the Major Hail Damage to my roof and my home interior ceilings and walls needed new texture and paint and wall paper and the exterior siding, windows, sliding glass doors, trim and Paint Job all around trim and all wood was to be covered by Allstate and all exterior damaged Patio Furniture and Gas Grill and Entire Cedar Fencing was all heavily Hail and Storm and Wind Damaged property.

I sent in photos of all this Damage that shows the water damage from the roof leaks and water damage from the damaged siding and wood trim damaged around the windows. And all my Paint Job was destroyed by the heavy hail storm. It was such a Heavy Hail Storm with some Orange Size Hail and some larger and smaller. It sounded like it was breaking my windows! It did damage my windows and the seals in the windows and the sliding glass doors seals damaged and leaked from the Hail and Heavy Rain and Wind Storm caused all this Storm Damage!

Further, it caused my major roof leaks and ceiling damage in every room in my home and the ceiling in my Garage got wet and fell in. The water damaged my Garage Door Opener, by shorting out The Mother Board. I had to get an expert Electrician to test my Garage Door Opener and he Verified the Water Damage Shorted out The Mother Board. I sent this verified Report to your previous Adjusters.

Nick Beckwith now confirmed my Hail Claim and he represented to me and my Engineer that Allstate was going to Approve and Pay for my Hail Claim in Full! He had approved my Bid for replacement of my Cedar Fencing at $23,200. And I was waiting to get paid by Nick. He told me all of my Damages Interior and Exterior and all the Items mentioned above would all be covered under my Policy at Replacement Cost Coverage!

I had to put on my New Roof even though I had not been paid Right. Nick sent in a low estimate that did not cover my Roof Replacement. I contacted him that this wasn't what he had represented to me and this would not cover the cost to replace my Roof! I let him know that I'm a Builder and that I had personally put on 2 Best Quality Roofs before this Claim. I told Nick the components to my roof cost much more than he tried to send me. I told him he was comitting fraud and needed to get his measurements right! We was way off on squares and omitted vital components to my roof that were on my roof that needs replacing! He said he'd check it out and he did verify he was going to send me the check for the Cedar Fence Bid.

I had called to speak to his Supervisor and she told me she was sorry that Nick got the amount wrong. She said she would check into my claim.

Then, I was given your last Last Adjuster, Lindsey Barnette who was blatant about comitting Fraud and misrepresented what my Roof Costs and she tried to go against what was already approved by Nick with my Fencing and all the other major damage to my Home and property!

I sent her all the photos and verified evidence off my damages. I got the ITell Report and photos of the components of my Roof and my paid Invoice for my Roof that I had to replace as soon as I could to prevent further Damages to my Home. I paid a Licensed Electrician and Engineer to verify that my Heavy Duty Screw Driven Garage Door Opener had water damage to The Mother Board and it shorted out the Mother Board that is separate to the light that is attached at the other end of the opener. I gave other proof of My having to replace all the Hail Damaged Wood Siding and Trim wood all around my sliding glass doors and windows that were Hail Damaged and leaking!

She still continued to comit fraud by not properly covering all of my Damage to my Home from this Hail and Storm Damage and High Winds. She ignored Nick Beckwith confirmed that my Entire Cedar Fencing and exterior Damages to my home and siding and interior and exterior were all to be covered under My Policy.

I had to replace the Hail Damaged Siding and Wood Trim around my Windows and Sliding Glass Doors and Framing around my Windows in my Master Bedroom Exterior Windows. The Siding all needed to be replaced due to the hail damage. It had to be properly caulked and the entire exterior wood damage to my Siding and Trim and hail Damaged Wooden Garage Door all needed to be removed, replaced and Painted! I submitted Photos that showed all this damage. I showed photos that proved my Paint and Wood exterior was in good condition before this Claim.

Your First Appraiser who came to inspect all this Hail and Storm damage and Heavy Wind damaged did confirm with me and my Roofix Engineer that all my home, interior and exterior, and entire Cedar Fencing and patio furniture and Gas Grill all sustained Major Hail Damage and all was to be Covered Under My Policy! Entire Cedar Fencing was destroyed from the hail and high winds and rain storms that went on for many days. Your First Adjuster Nick Beckwith Did Agree and Told me, that he was approving my Full Fencing to be replaced and stained like my fence was. He confirmed to me that my Siding and all my damaged Patio Furniture and Gas Grill and wood siding and trim all and complete Paint Job and all my interior damage would be covered. He approved my Estimates I submitted to him to be paid to me to get my property repaired and replaced. The Cedar Fencing bid then was $27K and now will be higher due to major cost increases.

Your Adjusters have comitted Fraud, Deceptive Trade Practices and Failure to Perform under The Contract, in failing to properly settle my Two (2) Claims.

My Hail Claim estimate for all I have Paid to Build Back my New Roof and Me properly remediating any further water damages to my home through the exterior siding Hail Holes and Damages to Siding, Trim, and Exterior Caulk and seal and Paint all the Wood siding and trim. I've sent in Paid Invoice for my Roof Replacement at $17,500. I paid over $8,000.00 to replace the Hail Damaged Siding and Wood Trim and Caulk and Seal and Paint the same.

The other Estimates I have been given that are a year old by now are Estimated to Cover all the Repairs and Replacement of interior damages and Temporary Housing that Allstate has Failed to cover. Including Packing Up by Approved Mover with excellent service in Packing up and Moving Antiques and Pianos and Air Conditioned Storage Facility and Temporary Housing is all Estimated at a Total of $354,100.

This $354,100 Estimate may be low with the increases in Housing for Rentals and Increases in Building Costs. Also, the Cost of Moving and

Storage Facility may be low!

I hereby Formally Request that you comply with this Demand Letter and Help me Get both my Claims Property Settled. Further, This Does Not Include The Costs Needed for My First Claim for AC Leak and Water Damage. This Seperate Claim Must Be Addressed with all The Proper Items mentioned above that All Must Be Property Covered Under The Law and Under my Policy that is to Cover all my Losses at Full Replacement Cost Coverage for Both Claims!

I expect a proper Settlement in both these Matters in 30 Days from this Demand Letter. Failure to Property Settle Both These Claims will hereby Formally Inform you that I Will Be Able to Seek Treble Damages Under The Deceptive Trade Practices Act! And further Compensatory and Punitive Damages and Attorney's Fees and Court Costs.

Respectfully submitted,

Lisa Jackson
2818 Barret Oak St
San Antonio TX 78231
210-771-7701

cc: To The File
Attorneys

On Mon, Mar 20, 2023, 11:51 AM Allstate Insurance <
allstate@service01 email-allstate.com> wrote:

> Log in to review.
>
> Claim *0627894751*
> [image: Allstate]
>
> %%OPS::SIMPLEX
>
>
>
>
>
>
>
>
>
>
>
>
>
> Allstate Vehicle and Property Insurance Company
> P.O. BOX 672041
> DALLAS TX 75267
>
>
>
>
>
> INSURED: LISA JACKSON
> PHONE NUMBER: 877-224-4583
> DATE OF LOSS: May 11, 2021
> FAX NUMBER: 877-292-9527
> CLAIM NUMBER: 0627894751 PBW
>
> Re: Please Contact Us About Your Claim
>
> Dear LISA JACKSON:,
>
> I ve been trying to reach you to discuss the claim listed above but I
> haven t been able to connect with you. We need some information so we can
> keep the claim moving along.
>
> Please call me from 07:00 a.m. to 06:00 p.m. central standard time at
> 877-224-4583 Ext. 1226878 as soon as possible. If I m not available when
> you call, please leave a message with:
> Your phone number (or email address)
> The best time to reach you, and
> Your claim number.
>
> I ll get back to you as soon as possible. If we have already spoken since
> the date of this letter, March 20, 2023, please disregard this request.
>
> It s my goal for your claims experience to be fast, fair and hassle-free.
>
> Please contact me as soon as possible in order for your claim to be
> resolved. If I receive no response within 10 days of the date of this
> letter, your file will be closed. Once you are ready to pursue the claim,
> please contact me and your file can then be re-opened.
>
> Sincerely,
>
>
>
> MARK ROY
> Allstate Vehicle and Property Insurance Company
> Phone: (877) 224-4583 x1226878
> Fax: (877) 292-9527
> claims@claims.allstate.com
>
> CONFIDENTIALITY/PRIVACY NOTICE: This e-mail, including any attachments,
> may contain personal, private and confidential information intended solely
> for use by the individual to whom it is addressed. If you are not the
> intended addressee, please be aware that any dissemination, distribution or
> copying of this e-mail is strictly prohibited. If you received this message
> in error, please notify the sender immediately by e-mail and delete from
> your system.
>
> **** Please do not delete your unique Conversation ID ****
>
> *** Conversation ID: FRec0a9f5d1ee94d ***
>
> Did you find this email useful?
>
>
> [image: Allstate]
>
> MyClaim
>
> | Tools & Resources
>
> | Allstate.com
>
> This email was sent to you at LISAJACKSON7117@GMAIL.COM
> 2023 Allstate Insurance Company. All rights reserved. Privacy Statement
>
> | Contact Us
>
> Allstate Insurance Company, PO Box 661039, Dallas, TX 75266
>
> P_CLAIMS_EOB7B_FREEFORMTEXT_T
> EMAIL_TO:claims@claims.allstate.com
>

Did you find this email useful?



**Allstate**

MyClaim  |  Tools & Resources  |  Allstate.com

This email was sent to you at freephone71111@gmail.com

© 2023 Allstate Insurance Company. All rights reserved. Privacy Statement  |  Contact Us

Allstate Insurance Company, PO Box 981000, Dallas, TX 75398

U_current_claim_ClaimCenter21_7

claims_15115wrap@www.allstate.com

Mon, Sep 4, 2023 at 7:10 PM



**Gmail**

**Fwd: [External] Re: Allstate Claim:0627894751**
1 message

Mon, Sep 4, 2023 at 7:06 PM

---------- Forwarded message ----------
From: **Allstate Insurance** <allstate@service01.email.allstate.com>
Date: Mon, Mar 27, 2023, 5:52 PM
Subject: Re: [External] Re: Allstate Claim:0627894751
To: lisajackson7117@gmail.com <lisajackson7117@gmail.com>

Claim **0627894751**



Ms. Jackson,

I've received your email and noted your concerns.

Respectfully,

MARK ROY
Allstate Vehicle and Property Insurance Company
Phone: (877) 224-4583 x1226878
Fax: (877) 292-9527
claims@claims.allstate.com

CONFIDENTIALITY/PRIVACY NOTICE: This e-mail, including any attachments, may
contain personal, private and confidential information intended solely for use by the
individual to whom it is addressed. If you are not the intended addressee, please be aware
that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you
received this message in error, please notify the sender immediately by e-mail and delete
from your system.

**** Please do not delete your unique Conversation ID ****

*** Conversation ID: FR3973e9dc6d574e ***

_____

From: lisajackson7117@gmail.com
Sent: Monday, Mar 27, 2023 5:33 PM
To: claims@claims.allstate.com
Subject: Re: [External] Re: Allstate Claim:0627894751

Mr. Roy,

You and Allstate Insurance are to properly cover all my Damages to my Home
both interior that was approved by your First 2 Representatives.

In fact the first partial payment of appropriately $8,000. Was noted it was
to cover my interior ceiling Damages in my Garage that fell in due to the
water damage. It was also stated it was to cover the replacement cost of my
Roof!

Your Adjuster was properly notified that he had totally misrepresented the
cost of both! The evidence is in on all your files. Nick also confirmed and
represented to me on recorded calls, that my entire exterior damages to my
Cedar Fencing and Exterior Hail Damaged Wooden Siding and all that I have
properly advised you in my detailed letters to you!

When Ms Brooks took over she was more blatant to try to continue to Defraud
me in trying to reverse what was already approved by pervious Adjuster!

Further, she would make demands that she needed the proof from Electrical
Engineer for my Garage Door Opener that was destroyed by the water damage
from the roof leaks in my Garage.
I complied and sent her this Evidence that proved my Garage Door Opener's
Mother Board was destroyed by the water damage! She still failed to
properly cover this damage!

Further, she kept representing to me that my exterior damage to my home and
windows and window screens all would be covered including my fencing.

I approved her that the only check sent to me did not cover my Roof
Replacement! I sent her my Paid Invoice for my Like and Kind Proper Roof
Replacement Cost. She again said she would approve that amount and that she
was going to add that to my Claim for me to get proper reimbursement for
these damages that I paid for out of pocket!

She also admitted that my Cedar Fencing was to be covered for full
replacement cost coverage. I approved her that the interior damages in my
home and Garage have not been properly settled on my Hail Damage Claim! I
gave her the Estimates to get all these damages covered and she failed to
properly cover all these items. After she had already Formally represented
to me would be covered. Including the damaged windows and window screens.
You have all these photos in your file.

After her delays, I called her and requested her proper settlement for my
Hail Damage Claim!

All of Allstate's Adjusters have wrongfully Assigned this Claim as a Major
Hail Damage Claim!
I kept requesting they change the Claim to properly cover it as my Hail
Damage Claim!

On my last Call to Ms. Brooks, I requested my proper settlement in my
Claim. She represented to me that she was going to properly reimburse me
for my Roof Replacement that I had paid $17,500. She confirmed she was
going to pay that and then she said she would cover 1 Side of my Cedar
Fencing that was destroyed on all 4 sides! Photos of all these damages on
all 4 sides are in my file!

Then she said she was going to cover my damaged window screens. I told her
that I still have the damaged Garage Ceilings and all my other interior
ceilings and walls and drapes and flooring that were all damaged from this
Hail Storm with Heavy Rains with Driving Winds.

I supplied her with all these estimates and all my damaged areas including my
Garage, without all of my Contents being proper Packed Up by a Licensed and
Bonded Moving Company. All these contents will need to be stored in an AC
Storage Facility.

I will also have to be placed in a Temporary Housing one story home with a
fenced back yard for my safety and my puppys safety.

On my Last Discussion with Ms. Brooks, she first said she had good news for
me and was going to cover all these Damages. Then, she proceeded to
misrepresent the costs of all. She did say she has all the proper evidence
and iTell Report and all photos of my Roof being ripped off showing all the
proper components that had to be replaced! She confirmed the Cost I paid of
$17,500. for my Proper Roof Replacement.

Then, she started to try to play, (Let's Make A Deal)! She stated to
misrepresent all my other costs of all my Claim. I corrected her on her
misrepresented costs and she hung up on me 3 times during our trying to
discuss line by line items to be covered!

I asked her for her Supervisor to call me. No call was returned to me! I called
again, and the Supervisor told me that Ms. Brooks has already paid me and
closed my File! I told her that I was never paid for all my Claim!
It was clear that another Fraud was Comitted in the Processing of my Claim!

Now you, Mr. Roy are also Comitting Fraud and Deceptive Trade Practices
Act, Breach of Contract, and Willful Intentional Abuse of Disabled Elder by
continuing to cause Major Health Problems and Stress and Anxiety of your
Insured!

You have 9 days from today to make your Proper Settlementsin both my Cades!

Respectfully submitted,

Lisa Jackson
2818 Barrel Oak St
San Antonio TX 78231
210-771-7701

cc. Attorneys,
Governor Abbott,
TX Attorney
General Paxton,
TX Dept. of
Insurance

On Mon, Mar 27, 2023, 4:00 PM Allstate Insurance <
allstate@service01.email-allstate.com> wrote:

> Log in to review.
>
> Claim *0627894751*
> [image: Allstate]
> My
> apologies Ms. Jackson, I had your prior claims representative Kimberley
> Brooks on my mind when I wrote to you.
>
> I have noted your demands, but unfortunately i will not be able to meet
> them.
>
> Respectfully,
>
>
> MARK ROY
> Allstate Vehicle and Property Insurance Company
> Phone: (877) 224-4583 x1226878
> Fax: (877) 292-9527
> claims@claims.allstate.com
>
>
>
> CONFIDENTIALITY/PRIVACY NOTICE: This e-mail, including any attachments,
> may contain personal, private and confidential information intended solely
> for use by the individual to whom it is addressed. If you are not the
> intended addressee, please be aware that any dissemination, distribution or
> copying of this e-mail is strictly prohibited. If you received this message
> in error, please notify the sender immediately by e-mail and delete from
> your system.
>
> **** Please do not delete your unique Conversation ID ****
>
> *** Conversation ID: FR3973e9dc4d574e ***
>
> _____
>
>
> From: lisajackson7117@gmail.com
> Sent: Monday, Mar 27, 2023 3:39 PM
> To: claims@claims.allstate.com
> Subject: [External] Re: Allstate Claim:0627894751
>
> I'm not Mrs. BROOKS!
>
> MY DEMAND LETTER is not negotiable! It's all the damages that your precious
> Adjusters acknowledged were to be covered.
>
> Your Allstate Agents all represented that all these damages were to be
> covered under my Policy for Full Replacement Cost Coverage.
>
> I have full recordings of all conversations from all your representatives
> and Adjusters, Including the rude and very inappropriate messages from your
> last Adjuster that tried to totally reverse all that was damaged and is
> covered under My Policy!
>
> Your continued Intentional Fraud, and Deceptive Trade Practices, and Breach
> of Contracts, and Willful Intention to cause me bodily harm, and undue
> stress and anxiety of a Disabled Elder. With Allstate not properly covering
> the proper abatement of all microbial growth and total damages to my home.
>
> I will Seek All Remedies Under The Law Including you and Allstate's Fraud,
> Breach of Contract and Deceptive Trade Practices, with Treble Damages and
> Punitive Damages and All Remedies Under The Law, Including Attorneys Fees
> and Court Costs.
>
> You have been all Proper Notices Under The Law!
>
> You have 10 Days from this Day to Deliver Allstate's Proper Payment Under
> The Law! You have All the Receipts that I have Paid for Replacement of my
> Roof that exceeded what your Adjusters tried to pay! You have All My other
> Paid Receipts for my Damaged Exterior that you have not properly paid for!
> You have all the other Photos and Evidence from me and your First Appraiser
> that came and verified all these damages with me and my Property Engineer
> who showed him all the Hail Storm Damage.
>
> All the Evidence is in and proves The Intentional Fraud and Deceptive Trade
> Practices and Breach of Contract that Allstate has comitted in all my
> claims.
>
> All this Evidence and Documentation will be forwarded to my Governor and
> The Department of Insurance and Attorney General. I have had every
> Contractor and other Insureds with Allstate all confirm that Allstate has
> comitted these Bad Faith and other above Acts with their Insurance
> Practices. I will be seeking all these Remedies and you and Allstate will
> be responsible for these steps to be taken for my proper remedy.
>
> You have 10 Days to Deliver me my Full Payment for my Hail Damage Claim and
> 20 Days to Get me all my Damages and Losses under my First Claim.
>
> Respectfully submitted,
>
> Lisa Jackson
> 2818 Barrel Oak St
> San Antonio TX 78231
> 210-771-7701
>
> cc. Attorney's,
> Governor Abbott,
> TX Department of Insurance,
> Attorney General
>
> On Mon, Mar 27, 2023, 9:50 AM Allstate Insurance <
> allstate@service01.email-allstate.com> wrote:
>
> > Log in to review.
> >
> > Claim *0627894751*
> > [image: Allstate]
> > Ms.
> > Brooks,
> >
> > I have completed a review of this claims file and the materials you have
> > submitted. Thank you for allowing me the time to do so.
> >
> > At this time, I am unable to satisfy your demand for $354,000.00 in
> > settlement of your claim.
> >
> >
> > Respectfully,
> >
> >
> > MARK ROY
> > Allstate Vehicle and Property Insurance Company
> > Phone: (877) 224-4583 x1226878
> > Fax: (877) 292-9527
> > claims@claims.allstate.com

> > >

> > CONFIDENTIALITY/PRIVACY NOTICE: This e-mail, including any attachments,
> > may contain personal, private and confidential information intended
> solely
> > for use by the individual to whom it is addressed. If you are not the
> > intended addressee, please be aware that any dissemination, distribution
> or
> > copying of this e-mail is strictly prohibited. If you received this
> message
> > in error, please notify the sender immediately by e-mail and delete from
> > your system.

> >

> > **** Please do not delete your unique Conversation ID ****

> > **** Conversation ID: FR3873e9dc4d574e ***

> >

> > Did you find this email useful?

> >

> >

> > [image: Allstate]

> >

> > MyClaim

> >

> > | Tools & Resources

> >

> > | Allstate.com

> >

> > This email was sent to you at LISAJACKSON7117@GMAIL.COM
> > 2023 Allstate Insurance Company. All rights reserved. Privacy Statement

> >

> > | Contact Us

> >

> > Allstate Insurance Company, PO Box 661039, Dallas, TX 75266

> >

> > P_CLAIMS_EOB7B_FREEFORMTEXT_T
> > EMAIL_TO:claims@claims.allstate.com

> >

>

> Did you find this email useful?

>

>

> [image: Allstate]

>

> MyClaim

>

> | Tools & Resources

>

> | Allstate.com

>

> This email was sent to you at lisajackson7117@gmail.com
> 2023 Allstate Insurance Company. All rights reserved. Privacy Statement

>

> | Contact Us

>

> Allstate Insurance Company, PO Box 661039, Dallas, TX 75266

>

> P_CLAIMS_EOB7B_FREEFORMTEXT_T
> EMAIL_TO:claims@claims.allstate.com

>

Did you find this email useful?



Allstate.

MyClaim    |    Tools & Resources    |    Allstate.com

This email was sent to you at lisajackson7117@gmail.com
© 2023 Allstate Insurance Company. All rights reserved. Privacy Statement    |    Contact Us
Allstate Insurance Company, PO Box 661039, Dallas, TX 75266

P_CLAIMS_EOB7B_FREEFORMTEXT_T
EMAIL_TO:claims@claims.allstate.com

 **Gmail**

**Fwd: Allstate Claim:0627894751**
4 messages

Mon, Sep 4, 2023 at 11:33 PM

---------- Forwarded message ----------
From: <claims@claims.allstate.com>
Date: Wed, Jun 23, 2021, 5:01 PM
Subject: Allstate Claim:0627894751
To: <LISAJACKSON7117@gmail.com>

Hello Ms. Jackson,

I hope I was able to answer your questions during my recent handling of your claim. I shared a lot of information with you and realize it can be a lot to take in.

Feel free to contact me at 877-224-4583 ext. 1226864 if you, or your contractor, have any questions. If I m unable to answer your call, please leave a message. I will return your call no later than the end of the business day.

For your convenience, I am including the links previously sent to you. You may find them useful in providing information that may answer your questions and assist you in understanding your claim.

Catastrophe Property Claim Brochure: https://www.allstate.com/resources/Allstate/attachments/claims/Allstate-Catastrophe-brochure-309.pdf
An informative pamphlet containing a step by step explanation of the claims process, answers to the most frequently asked questions related to your claim, and our contact information.

MyAccount: http://www.allstate.com/support/overview.aspx
Create an online account to better manage your policy and the claims process 24/7. After registration, you will be able to view/update your policy, view the status of your claim, access repair information, send correspondence to your claim file in a secure environment, manage your contact preferences, and register for an electronic payment method that fits your needs, including Quick Card Pay , the fastest and easiest method to transfer claim payments to your debit card on qualifying claims.

Choosing a Contractor: https://www.allstate.com/resources/Allstate/attachments/claims/choosing-contractor.pdf
We welcome and encourage contractor involvement during any phase of the claim process. If you have not selected a contractor, this information may be helpful.

Thank you for choosing Allstate for your insurance needs!

Nicholas Beckwith
Allstate Vehicle and Property Insurance Company
Phone: (877) 224-4583 x1226864
Fax: (877) 292-9527
claims@claims.allstate.com

CONFIDENTIALITY/PRIVACY NOTICE: This e-mail, including any attachments, may contain personal, private and confidential information intended solely for use by the individual to whom it is addressed. If you are not the intended addressee, please be aware that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you received this message in error, please notify the sender immediately by e-mail and delete from your system.

**** Please do not delete your unique Conversation ID ****

*** Conversation ID: FRc3114a0cbea943 ***

📄 **JACKSON ESTIMATE.20210623170053096.0.pdf**
137K

Mon, Sep 4, 2023 at 11:36 PM

---------- Forwarded message ----------
From: **Lisa Jackson** <lisajackson7117@gmail.com>
Date: Wed, Jun 23, 2021, 5:53 PM
Subject: Re: Allstate Claim:0627894751
To: <claims@claims.allstate.com>

Dear Nick,

I forgot to remind you when you and I were reviewing your claim estimates. That, my garage has many items that are boxed up and need packed up and removed. It will all need to be placed in proper storage while all the interior work is being done. To be able to do the ceiling demolition and replace all the new sheetrock. There is blown insulation that will have to be cleared out when the demolition is complete. They will also need to replace the insulation in the attic of my garage. The ceilings will also need to be retextured and painted. The garage interior floors will need proper clean up to clear all the FiberGLASS insulation debris and all the construction debris.

Also remember that my Heavy Duty Screw Driven Garage Door opener was shorted out from the damage. We also discussed the Garage Door needs to be replaced because of all the hail damage.

We also discussed the exterior wood siding to my home both some on front at roofs edge and the back siding is all damaged from the hail. Including it destroying my paint job to my entire home and trim.

Last, we discussed the fencing all around my home has been heavily damaged from the hail and needs full replacement. It isn't stable, and has broken posts and broken fencing that needs to be totally replaced.

I will send you in more photos to support the same. I need you to be sure and add the needed waste container to take care of all this damaged materials. Including the proper pack up and move out of my garage interior value items to be placed in proper storage for the work to be done. Please make sure you include the packing back up, and moving back into my garage, all my property that will be in storage. After the garage interior and all components are completed.

Thank you for your kind assistance in this regard.

Respectfully submitted,

Lisa Jackson
2818 Barrel Oak St.
San Antonio TX 78231
210-771-7701
[Quoted text hidden]

Mon, Sep 4, 2023 at 11:40 PM

---------- Forwarded message ----------
From: **Lisa Jackson** <lisajackson7117@gmail.com>
Date: Thu, Jun 24, 2021, 12:45 PM
Subject: Re: Allstate Claim:0627894751
To: <claims@claims.allstate.com>

Dear Nick,

I just had a chance to review your estimate briefly. I immediately noticed that you did not properly cover that my Shingles on my roof are the Highest rated 35 Year Architecture Heavy Demential Shingle.

You need to correct your estimate to cover my proper replacement costs for my Shingles.

I have not finished reviewing your estimate. I felt it was way to low when you gave me your numbers.

Please make this proper higher assessment for my Best Shingles that are on my roof.  Also, your drawing of my Roof in the back Wing of my home. The roof line goes all the way to the top cap of my Roof and continues all the way back with no spacing that your drawing showed. Please make this proper adjustment to your drawing.

Thank you for your prompt attention to this matter.

Respectfully submitted,

Lisa Jackson
2818 Barrel Oak St
San Antonio TX 78231
210-771-7701
[Quoted text hidden]

Sun, Sep 10, 2023 at 7:53 PM



**National Catastrophe Team**

Allstate
You're in good hands.

P.O. Box 672041
Dallas, Texas 75267
Phone: (800) 547-8676
Fax: (877) 292-9527

| | | | |
|---|---|---|---|
| Insured: | LISA JACKSON | Home: | (210) 771-7701 |
| Property: | 2818 BARREL OAK ST | E-mail: | LISAJACKSON7117@GMAIL.COM |
| | SAN ANTONIO, TX 78231-1701 | | |
| Home: | 2818 BARREL OAK ST | | |
| | SAN ANTONIO, TX 78231-1701 | | |

| | | | |
|---|---|---|---|
| Claim Rep.: | Nicholas Beckwith | Business: | (800) 347-8517 |
| Business: | P.O. Box 672041 | E-mail: | claims@claims.allstate.com |
| | Dallas 75267 | | |

| | | | |
|---|---|---|---|
| Estimator: | Nicholas Beckwith | Business: | (800) 347-8517 |
| Business: | P.O. Box 672041 | E-mail: | claims@claims.allstate.com |
| | Dallas 75267 | | |

**Claim Number:** 0627894751          **Policy Number:** 000844909761          **Type of Loss:** Windstorm

| | | | |
|---|---|---|---|
| Date Contacted: | 6/7/2021 7:40 PM | | |
| Date of Loss: | 5/11/2021 8:00 AM | Date Received: | 5/29/2021 2:47 PM |
| Date Inspected: | 6/7/2021 4:25 PM | Date Entered: | 6/7/2021 4:49 PM |

| | |
|---|---|
| Price List: | TXSA8X_JUN21 |
| | Restoration/Service/Remodel |
| Estimate: | LISA_JACKSON2 |

Allstate is dedicated to providing you with outstanding service throughout the claim-handling process. If you have any questions regarding this estimate or if additional damage is found during the repair process, please contact us at (800) 347-8517. Please also contact us at (800) 347-8517 if there are differences or discrepancies between our estimate and the estimate provided by your repair person of choice. Please be prepared to provide us with your repair person's estimate and all information and documentation relating to any differences or discrepancies.

Thank you,

¬Nicholas Beckwith

# Your guide to reading your adjuster summary.*

Insured: John Smith
Property: 1234 Oak Street
Anytown, Anystate 12345

Home: (123) 123-4567
Business: (123) 123-4567

**(A)** Claim Number: 1234567890     Policy Number: 000000123456789     Type of Loss: Wind Damage

### Roof

**(B)** Main Home

1588.42 Surface Area     15.88 Number of Squares
173.41 Total Perimeter Length     65.71 Total Ridge Length

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 1. Remove 3 tab-25 yr. – composition shingle roofing – incl. felt | 15.88SQ | 53.97 | 857.04 | 0/25 yrs | Avg. | | (0.00) | 857.04 |
| 2. 3 tab-25 yr.-comp. shingle roofing – w/out felt | 18.33SQ | 219.11 | 4,016.29 | 2/25 yrs | Avg. | 8% | (165.16) | 3,851.13 |
| 3. Roofing felt-15 lb. | 15.88SQ | 32.88 | 522.13 | 2/20 yrs | Abv. Avg. | 10% | (15.98) | 506.15 |
| **Total: Roof** | | | **5,395.46** | | | | **181.14** | **5,214.32** |

Column markers: **(C)** UNIT **(D)** RCV **(H)** AGE/LIFE **(G)** COND **(F)** DEPREC. **(E)** ACV

### Bedroom

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 4. R&R ½" drywall-hung, taped, floated, ready for paint | 685.47SF | 3.25 | 2,248.34 | 2/150 yrs | Avg. | 1.33% | (7.04) | 2,241.30 |
| 5. Seal/prime then paint the walls and ceiling (2 coats) | 685.47SF | .90 | 616.12 | 2/15 yrs | Avg. | 13.33% | (13.71) | 603.21 |
| 6. Haul debris-per pickup truck load-including dump fees | 1.00 EA | 147.92 | 147.92 | 0/NA | Avg. | NA | (0.00) | 147.92 |
| **Total: Bedroom** | | | **3,013.18** | | | | **20.75** | **2,992.43** |

**(I)** **(J)**

### Contents

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 7. Queen Serta Perfect Sleeper Regal Suite Double Sided Plush Mattress US Mattress-4/9/2018 Orig. Desc.- Queen Serta Perfect Sleeper Suite | 1.00 EA | 799.00 | 799.00 | 2/20 | Abv. Avg. | 6% | (47.94) | 751.06 |
| **Total: Contents** | | | **799.00** | | | | **47.94** | **751.06** |

**(K)** Summary for Dwelling
Summary for All Items

| | |
|---|---|
| Line Item Total | 8,408.64 |
| Material Sales Tax | 199.85 |
| General Contractor Overhead | 860.85 |
| General Contractor Profit | 860.85 |
| **Replacement Cost Value** | **$10,330.19** |
| Less Depreciation | (201.89) |
| **Actual Cash Value** | **$10,128.30** |
| Less Deductible | (500.00) |
| **Net Claim** | **$9,628.30** |
| Total Recoverable Depreciation | 201.89 |
| **Net Claim if Depreciation is Recovered** | **$9,830.19** |

**(L)** **(M)** **(N)** **(O)**

Summary for Contents
Summary for All Items

| | |
|---|---|
| Line Item Total | 799.00 |
| Material Sales Tax | 55.93 |
| **Replacement Cost Value** | **$854.93** |
| Less Depreciation | (47.94) |
| **Actual Cash Value** | **$806.99** |
| **Net Claim** | **$806.99** |
| Total Recoverable Depreciation | 47.94 |
| **Net Claim if Depreciation is Recovered** | **$854.93** |

**(P)** **(Q)**

© Xactware

**A.** CLAIM NUMBER
The claim number assigned to your loss.

**B.** DAMAGE LOCATION
The area that has been damaged.

**C.** UNIT COST
This amount reflects the cost of an item.

**D.** REPLACEMENT COST VALUE
Cost to repair or replace covered property damages.

**E.** ACTUAL CASH VALUE
This amount reflects the Replacement Cost Value less the amount of any Depreciation.

**F.** DEPRECIATION
This amount reflects any deductions from Replacement Cost Value to account for the decrease in the property's value due to various factors including, but not limited to, age, life expectancy, wear and tear (condition), and functional or economic obsolescence. Depreciation may apply to both Structure and Contents items. Your estimate was completed based on the information you provided regarding the age and condition of the depreciated items.

**G.** CONDITION
The category or state of an item with regard to its appearance, quality, or working order. Condition options are new, above average, average and below average.

**H.** AGE
This represents the age and average life expectancy of the particular line item at the time of loss.

**I.** REPAIR OR REPLACE ACTIONS
Describes the repairs and/or replacement materials and actions.

**J.** DAMAGE LOCATION TOTALS
Total before adding any applicable taxes and/or depreciation.

**K.** SUMMARY OF INVOLVED COVERAGE
The involved policy coverage for the damaged area.

**L.** CONTRACTORS OVERHEAD AND PROFIT
When appropriate, general contractors overhead and profit may be included to account for the services of a general contractor

**M.** TOTAL WITH TAX
The total estimate with any applicable tax and/or overhead and profit.

**N.** DEDUCTIBLE APPLIED
Reflects the applicable policy deductible applied.

**O.** RECOVERABLE DEPRECIATION
Total amount of depreciation that is recoverable. Depending on your policy language, you may be able to recover your depreciation upon your repair or replacement of the depreciated items.

**P.** SALES TAX
Based upon where the loss occurred, the sales tax laws may vary by state regarding the application of sales tax to materials and labor.

**Q.** NET CLAIM FOR INVOLVED COVERAGE
The total replacement cost less recoverable and non-recoverable depreciation and any applicable deductible equals the amount of the settlement for the involved coverage.

**LF** = Linear Feet     **SQ** = 100 Square Feet     **SF** = Square Feet     **SY** = Square Yard     **EA** = Each

*This is a sample guide to your adjuster summary
©2018 Allstate Insurance Company. allstate.com  09/2018



**National Catastrophe Team**

P.O. Box 672041
Dallas, Texas 75267
Phone: (800) 547-8676
Fax:  (877) 292-9527

**LISA_JACKSON2**

**Exterior**

**Roof**



## Dwelling

| | | | |
|---|---|---|---|
| 3620.00 | Surface Area | 36.20 | Number of Squares |
| 316.65 | Total Perimeter Length | 126.38 | Total Ridge Length |

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 9. Remove Laminated - comp. shingle rfg. - w/ felt | 36.20 SQ | 64.24 | 2,325.49 | 10/30 yrs | Avg. | NA | (0.00) | 2,325.49 |
| 10. Replace Roofing felt - 15 lb. | 36.20 SQ | 30.08 | 1,088.90 | 10/20 yrs | Avg. | 50% | (544.45) | 544.45 |
| 11. Replace Laminated - comp. shingle rfg. - w/out felt | 39.33 SQ | 218.40 | 8,589.67 | 10/30 yrs | Avg. | 33.33% | (2,863.22) | 5,726.45 |

Auto Calculated Waste: 8.6%, 3.13SQ
Options:  Valleys: Open, Include eave starter course: Yes, Include rake starter course: No, Exposure: 5 5/8",
Bundle Rounding: 0.9%, 0.32SQ - (included in waste calculation above)
This line item includes an allowance of $101.83 per square, which reflects current market values in your area. Market prices were verified by Material Supply Warehouse (MSW). While you or your contractor are under no obligation to use this supplier, MSW allows you or your contractor of choice to have materials delivered to your home for installation. For more information on MSW, please visit www.materialsupplywarehouse.com, or contact them at info@materialsupplywarehouse.com, or 888-508-5009.

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 25. Replace Ridge cap - composition shingles | 126.38 LF | 3.90 | 492.88 | 0/25 yrs | Avg. | 0% | (0.00) | 492.88 |

This line item includes an allowance of $81.69 per square, which reflects current market values in your area. Market prices were verified by Material Supply Warehouse (MSW). While you or your contractor are under no obligation to use this supplier, MSW allows you or your contractor of choice to have materials delivered to your home for installation. For more information on MSW, please visit www.materialsupplywarehouse.com, or contact them at info@materialsupplywarehouse.com, or 888-508-5009.

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 12. Replace Continuous ridge vent - shingle-over style | 106.38 LF | 8.51 | 905.29 | 10/35 yrs | Avg. | 28.57% | (258.65) | 646.64 |
| 13. Replace Digital satellite system - Detach & reset | 1.00 EA | 32.15 | 32.15 | 10/NA | Avg. | 0% | (0.00) | 32.15 |
| 14. Replace Exhaust cap - through roof - 6" to 8" | 1.00 EA | 82.31 | 82.31 | 10/35 yrs | Avg. | 28.57% | (23.52) | 58.79 |
| 4. Replace Roof vent - turbine type | 3.00 EA | 113.20 | 339.60 | 10/35 yrs | Below Avg. | 40% | (135.84) | 203.76 |
| *Hail damaged* | | | | | | | | |
| 15. Replace Flashing - pipe jack | 8.00 EA | 43.93 | 351.44 | 10/35 yrs | Avg. | 28.57% | (100.41) | 251.03 |
| 5. R&R Tarp - all-purpose poly - per sq ft (labor and material) | 6.00 SF | 1.02 | 6.12 | 10/NA | Avg. | 0% | (0.00) | 6.12 |
| *Allowance to tarp area of wind damaged shingle* | | | | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Totals:  Dwelling** | | | **14,213.85** | | | | **3,926.09** | **10,287.76** |
| **Total:  Roof** | | | **14,213.85** | | | | **3,926.09** | **10,287.76** |
| **Total:  Exterior** | | | **14,213.85** | | | | **3,926.09** | **10,287.76** |

## Debris Removal



**National Catastrophe Team**

P.O. Box 672041
Dallas, Texas 75267
Phone: (800) 547-8676
Fax: (877) 292-9527

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 6. Haul debris - per pickup truck load - including dump fees | 0.25 EA | 152.88 | 38.22 | 0/NA | Avg. | NA | (0.00) | 38.22 |
| **Totals: Debris Removal** | | | **38.22** | | | | **0.00** | **38.22** |

## Other Structures

### Fence

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 19. Stain - wood fence/gate | 120.00 SF | 0.74 | 88.80 | 0/15 yrs | Avg. | 0% | (0.00) | 88.80 |
| **Totals: Fence** | | | **88.80** | | | | **0.00** | **88.80** |
| **Total: Other Structures** | | | **88.80** | | | | **0.00** | **88.80** |

## Interior

### Main Level



### Garage                                                                 Height: 8'

| 670.67 SF Walls | 437.36 SF Ceiling |
|---|---|
| 1108.03 SF Walls & Ceiling | 437.36 SF Floor |
| 48.60 SY Flooring | 83.83 LF Floor Perimeter |
| 83.83 LF Ceil. Perimeter | |

| DESCRIPTION | QUANTITY | UNIT | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 22. R&R Acoustic ceiling (popcorn) texture | 437.36 SF | 1.55 | 677.90 | 5/150 yrs | Avg. | 3.33% | (16.77) | 661.13 |
| 23. R&R 1/2" - drywall per LF - up to 2' tall | 32.00 SF | 12.60 | 403.20 | 5/150 yrs | Avg. | 3.33% | (11.30) | 391.90 |
| **Totals: Garage** | | | **1,081.10** | | | | **28.07** | **1,053.03** |
| **Total: Main Level** | | | **1,081.10** | | | | **28.07** | **1,053.03** |
| **Total: Interior** | | | **1,081.10** | | | | **28.07** | **1,053.03** |
| **Line Item Totals: LISA_JACKSON2** | | | **15,421.97** | | | | **3,954.16** | **11,467.81** |

[%] - Indicates that depreciate by percent was used for this item

[M] - Indicates that the depreciation percentage was limited by the maximum allowable depreciation for this item



**National Catastrophe Team**

P.O. Box 672041
Dallas, Texas 75267
Phone: (800) 547-8676
Fax:  (877) 292-9527

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 670.67 | SF Walls | 437.36 | SF Ceiling | 1,108.03 | SF Walls and Ceiling |
| 437.36 | SF Floor | 48.60 | SY Flooring | 83.83 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 83.83 | LF Ceil. Perimeter |
| | | | | | |
| 437.36 | Floor Area | 465.75 | Total Area | 670.67 | Interior Wall Area |
| 1,581.69 | Exterior Wall Area | 86.50 | Exterior Perimeter of Walls | | |
| | | | | | |
| 3,620.00 | Surface Area | 36.20 | Number of Squares | 316.65 | Total Perimeter Length |
| 126.38 | Total Ridge Length | 0.00 | Total Hip Length | | |



**National Catastrophe Team**

P.O. Box 672041
Dallas, Texas 75267
Phone: (800) 547-8676
Fax:  (877) 292-9527

**Summary for**
**AA-Dwelling**
**Summary for All Items**

| | |
|---|---:|
| Line Item Total | 15,421.97 |
| Material Sales Tax | 434.55 |
| **Replacement Cost Value** | **$15,856.52** |
| Less Depreciation | (4,095.33) |
| **Actual Cash Value** | **$11,761.19** |
| Less Deductible | (2,438.00) |
| **Net Claim** | **$9,323.19** |
| Total Recoverable Depreciation | 4,095.33 |
| **Net Claim if Depreciation is Recovered** | **$13,418.52** |

_____
Nicholas Beckwith

This document includes a damage estimate for your property based on Replacement Cost Value (RCV) and Actual Cash Value (ACV). The ACV estimate reflects the RCV less the amount of any depreciation.  Depreciation is the decrease in value of an item due to the item's condition, which takes into consideration age, life expectancy, usage, type of item, and market factors.  As your adjuster has explained, depending on your policy, you may be able to recover your depreciation upon your repair or replacement of the covered damages.

During the claim process, we asked for your assistance in establishing the age and condition of your damaged items. If you have any questions regarding the age and condition applied to your property, or any other questions regarding this estimate, please contact your adjuster.

Specialized skill, licensing or certification may be needed of any contractor(s) that you retain, for instance, to identify the presence and nature of any potential contaminants, toxins, pollutants, or other hazards that may be encountered during the course of the work, or to utilize appropriate work practices and procedures during the course of the work. Check with your local or State public health or environmental agency regarding potential hazards, including contractor qualifications and other requirements. For your safety, it is prudent to avoid areas where damaged structures, materials or unknown substances may be present, and to not disturb such structures, material, or unknown substances until your contractors have inspected the work site.

The suggestions above are provided only for your consideration. They in no way supplement, alter or modify your existing coverage.  Your insurance policy is the legal contract that contains the terms and limitations of your coverage.

If you have any concerns about the grade of flooring on your estimate, you may take advantage of a free service that will provide



**National Catastrophe Team**

P.O. Box 672041
Dallas, Texas 75267
Phone: (800) 547-8676
Fax:  (877) 292-9527

you with a more specific analysis. To use this option, please keep a 12" x 12" sample of your damaged flooring, and notify your Allstate adjuster that you would like the additional analysis.

 Gmail

**Fwd: Allstate Claim:0627894751 Fraud Wrong Policy by Allstate**
1 message

Sun, Sep 10, 2023 at 8:36 PM

---------- Forwarded message ---------
From: <claims@claims.allstate.com>
Date: Sun, Apr 9, 2023, 10:54 AM
Subject: Allstate Claim:0627894751
To: <LISAJACKSON7117@gmail.com>

Ms. Jackson,

A certified copy of your policy is attached.

Respectfully,

MARK ROY
Allstate Vehicle and Property Insurance Company
Phone: (877) 224-4583 x1226878
Fax: (877) 292-9527
claims@claims.allstate.com

CONFIDENTIALITY/PRIVACY NOTICE: This e-mail, including any attachments, may contain personal, private and confidential information intended solely for use by the individual to whom it is addressed. If you are not the intended addressee, please be aware that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you received this message in error, please notify the sender immediately by e-mail and delete from your system.

**** Please do not delete your unique Conversation ID ****

*** Conversation ID: FR8c395934ff7c42 ***

---

📄 **Coverage_04-06-2023-04-49-37-7295345.20230409105442017.0.pdf**
2052K



Claim# _0627894751_____

**To Whom It May Concern:**

I, _Shubhankar Halkare_, employee of Allstate Insurance Company Irving, Texas, do certify that the enclosed is a copy of policy and or declaration page for the above claim number, showing the coverages that were on the policy at the time of loss of _05/11/2021_____.

_Shubhankar Halkare_
_____
Claim Support

State of Texas, County of Dallas

On this ___6th_____ day of ___April_____ 2023, before me personally appeared _Shubhankar Halkare_____ to me known to be the person who executed the foregoing instrument and acknowledged that he/she executed the same as a free act and deed.

CATHY ANNE GRONDIN
Notary Public - State of Florida
Commission # HH 105189
My Comm. Expires Mar 16, 2025
Bonded through National Notary Assn.

_____
Notary Public

Confidential Information



*M & J Family Ins*
*14855 Blanco Rd 412*
*San Antono TX 78216-7731*

Information as of April 21, 2020
Policyholder(s)                    Page **1** of 3
**Lisa  Jackson**
<u>Policy number</u>
**844 909 761**

Your Allstate agency is
**M & J Family Ins**
(210) 493-3434
MEGANFIELDER@allstate.com

LISA JACKSON
2818 BARREL OAK ST
SAN ANTONIO TX 78231-1701

# Help Protect Your Most Personal Asset—Your Identity

Thank you for choosing Allstate Vehicle and Property Insurance Company—we're delighted to have you with us!

We're pleased to once again offer you the chance to continue your House & Home policy for another twelve months. With your policy about to renew, now is the perfect time for you to determine whether the coverage you have is suited to the risks you face today.

## Have You Considered Our Identity Theft Expenses Coverage?
That's why we'd like you to know about our affordable Identity Theft Expenses Coverage option. It's designed to help reimburse you for covered expenses and the hassles of restoring your good name if your identity is stolen with this increasingly common type of theft.

Identity theft is a relatively new but growing crime that can lead to refused loans, lost job opportunities, and even arrest for crimes never committed. Now you can purchase our optional coverage to help restore your identity if you become a victim of this crime.

## $30 a Year—A Small Price Now Can Help with Higher Costs Later
For just $30 a year and no deductible, we'll reimburse you for covered expenses you incur to help restore your identity, up to a coverage limit of $25,000. While some products out there today may provide less reimbursement and leave you to deal with creditors, banks, and government agencies on your own, Allstate goes a step further. We may also refer you to an identity theft restoration services company that can help you sort out the effects of an identity theft* with creditors and government agencies.

## Do You Have the Protection You Need?

*(continued)*



Policy number:          **844 909 761**                                                        Page **2** of 3
Policy effective date:    June 5, 2020

As you review your Declarations Page, consider whether you'd like to update your policy to include Identity Theft Expenses Coverage. To add this coverage, or to make any changes to your policy, feel free to call us at (210) 493-3434.

For more detailed information about Identity Theft Expenses Coverage, please refer to the enclosed "Identity Theft Expenses Coverage—Coverage for Identity Theft Victims" information at the back of this mailing.

## We Appreciate Your Business

Thank you again for choosing Allstate to help protect you today and prepare you for the future. We're glad you're with us.

*Referrals, if any, are solely at the discretion of Allstate. Identity Theft Expenses Coverage is subject to qualifications, availability and policy terms. Please read the policy endorsement carefully.*

Sincerely,

Julie Parsons
President, Allstate Vehicle and Property Insurance Company

RP646

Policy number: **844 909 761**
Policy effective date: June 5, 2020



# Your Insurance Coverage Checklist

We're happy to have you as an Allstate customer! This checklist outlines what's in this package and provides answers to some basic questions, as well as any "next steps" you may need to take.

☐ **What's in this package?**
See the guide below for the documents that are included. ***Next steps:*** review your *Policy Declarations* to confirm you have the coverages, coverage limits, premiums and savings that you requested and expected. Read any *Endorsements* or *Important Notices* to learn about new policy changes, topics of special interest, as well as required communications. Keep all of these documents with your other important insurance papers.

☐ **Am I getting all the discounts I should?**
Confirm with your Allstate Agent that you're benefiting from all the discounts you're eligible to receive.

☐ **What about my bill?**
Unless you've already paid your premium in full, we'll send your bill separately. ***Next steps:*** please pay the minimum amount by the due date listed on it.

You can also pay your bill online at allstate.com or by calling 1-800-ALLSTATE (1-800-255-7828). Para español, llamar al 1-800-979-4285. If you're enrolled in the Allstate® Easy Pay Plan, we'll send you a statement detailing your payment withdrawal schedule.

☐ **What if I have questions?**
You can either contact your Allstate Agent or call us 24/7 at 1-800-ALLSTATE (1-800-255-7828) – para español, llamar al 1-800-979-4285 – with questions about your coverage, or to update your coverages, limits, or deductibles. Or visit us online at allstate.com.

# A guide to your renewal package



**Policy Declarations***
The Policy Declarations lists policy details, such as your property details and coverages.



**Important Notices**
We use these notices to call attention to particularly important coverages, policy changes and discounts.

**Insurance Made Simple**
Insurance seem complicated? Our online guides explain coverage terms and features:
www.allstate.com/madesimple
Espanol.allstate.com/facildeentender

***\* To make it easier to see where you may have gaps in your protection, we've highlighted any coverages you do not have in the Coverage Detail section in the enclosed Policy Declarations.***



Policy number: **844 909 761**
Policy effective date: June 5, 2020

Page **1** of 1



# IMPORTANT NOTICE

To obtain information or make a complaint:

You may call Allstate's toll-free telephone number for information or to make a complaint at:

**1-800-ALLSTATE® (1-800-255-7828)**

You may also write to Allstate at:

Allstate Insurance Company
PO Box 660598
Dallas, TX 75266-0598

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights, or complaints at:

**1-800-252-3439**

You may write the Texas Department of Insurance:

P.O. Box 149104
Austin, TX 78714-9104
FAX: (512) 490-1007

Web: www.tdi.texas.gov

E-mail: ConsumerProtection@tdi.texas.gov

## INSURANCE WEBSITE NOTICE
To obtain price and policy form comparisons and other information relating to residential property insurance and personal automobile insurance, you may visit the Texas Department of Insurance/Office of Public Insurance Counsel website:

**www.helpinsure.com**

## PREMIUM OR CLAIM DISPUTES:
Should you have a dispute concerning your premium or about a claim, you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

## ATTACH THIS NOTICE TO YOUR POLICY:
This notice is for information only and does not become a part or condition of the attached document.

# AVISO IMPORTANTE

Para obtener información o para presentar una queja:

Usted puede llamar al número de teléfono gratuito de Allstate para obtener información o para presentar una queja al:

**1-800-ALLSTATE® (1-800-255-7828)**

Usted también puede escribir a Allstate:

Allstate Insurance Company
PO Box 660598
Dallas, TX 75266-0598

Usted puede comunicarse con el Departamento de Seguros de Texas para obtener información sobre compañías, coberturas, derechos, o quejas al:

**1-800-252-3439**

Usted puede escribir al Departamento de Seguros de Texas a:

P.O. Box 149104
Austin, TX 78714-9104
FAX: (512) 490-1007

Sitio web: www.tdi.texas.gov

E-mail: ConsumerProtection@tdi.texas.gov

## AVISO DEL SITIO WEB DE SEGUROS
Para obtener formas para la comparación de precios y pólizas y para obtener otra información sobre el seguro de propiedad residencial y de seguro de automóvil personal, visite el sitio web del Departamento de Seguros de Texas/Oficina del Asesor Público de Seguros:

**www.helpinsure.com**

## DISPUTAS POR PRIMAS DE SEGUROS O RECLAMACIONES:
Si tiene una disputa relacionada con su prima de seguro o con una reclamación, usted debe comunicarse con el agente o la compañía primero. Si la disputa no es resuelta, usted puede comunicarse con el Departamento de Seguros de Texas.

## ADJUNTE ESTE AVISO A SU PÓLIZA:
Este aviso es solamente para propósitos informativos y no se convierte en parte o en condición del documento adjunto.

**X67186-4**



064 070 060
20042IT0034S4
1\0O0O0T\0034S40s4TX0O020042\02\8S30O5S5\0030080247T\00

# Renewal House & Home Policy Declarations

Your policy effective date is June 5, 2020



Page **1** of 3

## Total Premium for the Policy Period

Information as of April 21, 2020

| | |
|---|---|
| Premium for property insured | $1,679.98 |
| Recoupment Fee Volunteer Rural Fire Department Assistance Program | 1.54 |
| Recoupment Fee FAIR Plan Assessment 1 | $3.36 |
| **If you pay in installments*** | **$1,684.88** |
| **If you pay in full** | **$1,584.86** |

*Your bill will be mailed separately. Before making a payment, please refer to your latest bill, which includes payment options and installment fee information. If you do not pay in full, you will be charged an installment fee(s).*

## Discounts (included in your total premium)

| | | | |
|---|---|---|---|
| Protective Device | $13.96 | Multiple Policy | $343.58 |
| Claim Free | $194.71 | Allstate Easy Pay Plan | $71.84 |
| Early Signing | $13.82 | Loyalty | $71.84 |
| Responsible Payment | $211.34 | Welcome | $71.84 |
| **Total discount savings** | | | **$992.93** |

## Insured property details*

Please review and verify the information regarding your insured property. Please refer to the Important Notice (X73182) for additional coverage information. Contact us if you have any changes.

**Location of property insured:** 2818 Barrel Oak St, San Antonio, TX 78231-1701

**Dwelling Style:**
Built in 1979; 1 family; 2157 sq. ft.; 1 story

**Foundation:**
Slab at grade, 100%

**Attached structures:**
One 2-car attached garage          One small open porch

**Interior details:**
One builders grade kitchen          One single fireplace
Two builders grade full baths

**Exterior wall type:**
100% brick on frame

**Interior wall partition:**
100% drywall

## Summary

Named Insured(s)
**Lisa Jackson**

Mailing address
**2818 Barrel Oak St**
**San Antonio TX 78231-1701**

Policy number
**844 909 761**

Your policy provided by
**Allstate Vehicle and Property Insurance Company**

Policy period
Beginning **June 5, 2020** through **June 5, 2021** at 12:01 a.m. standard time

Your Allstate agency is
**M & J Family Ins**
14855 Blanco Rd 412
San Antonio TX 78216-7731
(210) 493-3434
MEGANFIELDER@allstate.com

**Some or all of the information on your Policy Declarations is used in the rating of your policy or it could affect your eligibility for certain coverages. Please notify us immediately if you believe that any information on your Policy Declarations is incorrect. We will make corrections once you have notified us, and any resulting rate adjustments, will be made only for the current policy period or for future policy periods. Please also notify us immediately if you believe any coverages are not listed or are inaccurately listed.**

*(continued)*



Renewal House & Home Policy Declarations
Policy number: **844 909 761**
Policy effective date:    June 5, 2020

## Insured property details* (continued)

**Heating and cooling:**
Gas hot air heating , 100%          Central air - same ducts, 100%

**Additional details:**
Standard wood sash with glass, 100%    Interior wall height - 8 ft, 100%
Two exterior wood doors

**Fire protection details:**
Fire department subscription - no     3 miles to fire department

**Roof surface material type:**
Composition
• 100% asphalt / fiberglass shingle

**Roof details:**
Predominant roof type: Composition    Age of roof - 8 years
Roof geometry - Gable

## Mortgagee - None

## Additional Interested Party - None

*This is a partial list of property details. If the interior of your property includes custom construction, finishes, buildup, specialties or systems, please contact your Allstate representative for a complete description of additional property details.*

# Coverage detail for the property insured

| Coverage | Limits of Liability | Applicable Deductible(s) |
|---|---|---|
| Dwelling Protection | $243,822 | • $2,438 Windstorm and Hail<br>• $2,438 All other perils |
| Other Structures Protection | $24,383 | • $2,438 Windstorm and Hail<br>• $2,438 All other perils |
| Personal Property Protection | $146,294 | • $2,438 Windstorm and Hail<br>• $2,438 All other perils |
| Additional Living Expense | Up to 24 months not to exceed $97,529 | |
| Family Liability Protection | $100,000 each occurrence | |
| Guest Medical Protection | $1,000 each person | |
| Foundation Water Damage | $5,000 | |
| Building Codes | **Not purchased*** | |
| Building Structure Reimbursement Extended Limits | **Not purchased*** | |
| Roof Surfaces Extended Coverage | Included | |
| Water Back-Up | $5,000 | • $500 Water Back-Up |
| Extended Coverage on Jewelry, Watches and Furs | $20,000 each occurrence<br>$3,000 per item | • $2,438 Windstorm and Hail<br>• $2,438 All other perils |
| Residence Glass | Included | |

Renewal House & Home Policy Declarations
Policy number: **844 909 761**
Policy effective date:     June 5, 2020

Page **3** of 3



▶ *Other Coverages Not Purchased:*

- Additional Fire Department Charges*
- Building Materials Theft*
- Country Endorsement*
- Dwelling in the Course of Construction*
- Electronic Data Recovery*
- Extended Coverage on Cameras*
- Extended Coverage on Musical Instruments*
- Extended Coverage on Sports Equipment*
- Fair Rental Income*
- Golf Cart*
- Green Improvement*
- Home Day Care*
- Identity Theft Expenses*
- Increased Coverage on Business Property*
- Increased Coverage on Theft of Silverware*
- Loss Assessments*
- Secondary Residence*
- Yard and Garden*

*\* This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.*

## Scheduled Personal Property Coverage

*Your policy does not include Scheduled Personal Property Coverage. This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.*

## Your policy documents

Your House & Home policy consists of the Policy Declarations, any Policy Declarations Addendum, and the following documents. Please keep them together.

- AVPIC House & Home Policy – AVP91
- Windstorm and Hail Deductible Endorsement – AVP82
- Water Back–Up Endorsement – AVP98-1
- Roof Surfaces Extended Coverage Endorsement – AVP144-1
- Residence Glass Coverage – AVP99
- Texas Amendatory Endorsement – AVP348
- Texas Amendatory Endorsement – AVP345

## Important payment and other information

Here is some additional, helpful information related to your coverage and paying your bill:

▶ Coverage A - Dwelling Protection Limit includes an approximate increase of $4,605 due to the Property Insurance Adjustment provision.  Coverage B - Other Structures Protection and Coverage C - Personal Property Protection adjusted accordingly.

▶ Please note: This is not a request for payment.  Your bill will be mailed separately.

▶ If, however, you would like to make a payment by credit card (Visa/MasterCard/Discover) or Check-By-Phone, please call 1-800-357-5092.

**Allstate Vehicle and Property Insurance Company's** Secretary and President have signed this policy with legal authority at Northbrook, Illinois.

*Julie Parsons*

Julie Parsons
President

*Susan L Lees*

Susan L. Lees
Secretary

TX0707ORBD 11/18



## Important notices

Policy number: **844 909 761**
Policy effective date: June 5, 2020

# Your Estimated Home Replacement Cost

Allstate has determined that the estimated cost to replace your home is: <u>$243,822.</u>

We based your estimated cost on information provided by you and selected data that was available to us, which is described in the "Insured property details" section of your Declarations Page. Please review all the information in this section to ensure the accuracy of the information used to determine the estimated replacement cost of your home.

The enclosed Declarations Page shows the limit of liability applicable to Dwelling Protection–Coverage A of your homeowners insurance policy. The estimated replacement cost of your home is the minimum amount for which we will insure your home.

The decision regarding the limit applicable to your Dwelling Protection–Coverage A is your decision to make, as long as, at a minimum, your limit equals the estimated replacement cost as determined by Allstate and does not exceed maximum coverage limitations established by Allstate.

It is important to keep in mind that your Coverage A limits reflect a replacement cost that is only an estimate based on data that was available to us when we made this estimate (this information is described in the "Insured property details" section of your Declarations Page). The actual amount it will cost to replace your home cannot be known until after a covered total loss has occurred. Please keep in mind that we do not guarantee the adequacy of the estimate to cover any future loss(es).

## How Is the Replacement Cost Estimated?

Many factors can affect the cost to replace your home, including its age, size, and type of construction. For example, the replacement cost uses construction data, such as labor and materials, that are available to us when we made this estimate. This estimate is also based on characteristics of the home, which include information that you provided to us. You might have chosen to insure your home for a higher amount than the estimated replacement cost shown above.

## Note to Customers Renewing Their Policy

The estimated replacement cost for your home may have changed since the last time we communicated this information to you. This is because, at renewal, Allstate uses the home characteristics that you have provided to us to recalculate and update the estimated replacement cost. Using updated labor and material rates for your zip code, Allstate takes the home characteristics you have provided and determines the updated estimated replacement cost. The information about your

home's characteristics is provided in the "Insured property details" section of your Declarations Page.

If the information about your home shown in your Declarations Page requires any change or if you have any questions or concerns about the information contained in this Important Notice, please contact your Allstate representative, or call us at 1-800-ALLSTATE.

## Additional Information About Dwelling Protection Limits

Your policy includes a feature called "Property Insurance Adjustment" (PIA). PIA reflects changes in construction costs in your area that may have occurred during the policy period.

We would like you to know that your policy's PIA recently indicated that construction costs in your area have increased. Based on this information, we have automatically increased your Dwelling Protection-Coverage A limits.

However, it is ultimately your responsibility to consider whether the changes we have made are sufficient for your insurance needs. It is important for you to understand that these are only estimates and the new limits of your policy may not provide sufficient coverage in the event of a loss. For example, if you have done any remodeling to your home which has not been updated in our records, your home's replacement cost may be higher than our current records indicate. In that case, you may want to increase your limits to reflect such changes. Conversely, there is a possibility that your new limits may provide coverage in excess of the actual replacement cost of your home. For example, if you originally decided to insure your home at an amount that exceeded the estimated replacement cost, you may want to call your Allstate representative to discuss the current value of your home and the possibility of lowering your limits.

If you have any questions about PIA, or your policy in general, please contact your Allstate representative.

**X73182**

# Information Regarding Flood Damage Coverage

Texas law requires that we provide you with this notice regarding flood damage coverage.

Please read this notice carefully. In addition, it is important to read all of your property policy documents to confirm the coverage your coverage your policy provides.

Important notices
Policy number: 844 909 761
Policy effective date: June 5, 2020

Page **2** of 4



## NOTICE

- **Flood Insurance: You may also need to consider the purchase of flood insurance. Your insurance policy does not include coverage for damage resulting from a flood even if hurricane winds and rain caused the flood to occur. Without separate flood insurance coverage, you may have uncovered losses caused by a flood. Please discuss the need to purchase separate flood insurance coverage with your insurance agent or insurance company, or visit www.floodsmart.gov.**

If you have any questions about this notice or your policy coverage, you can contact your Allstate Agent or representative, call 1-800 ALLSTATE® (1-800-255-7828), or visit www.allstate.com. We're here to help!

XC7124

## Please Check Your Policy Coverage Limits

When we first issued your Allstate policy, you selected specific coverages and coverage limits to protect your property. However, your property's value may have changed since that time. We'd like to remind you that it is your responsibility to carefully review your coverages and coverage limits at each policy renewal and make sure they provide you with adequate coverage.

Please take a few minutes to review your policy. If you have any questions about your insurance coverage, or if you wish to change your policy limits, please contact your Allstate representative.

X73175

## Identity Theft Expenses Coverage— Coverage for Identity Theft Victims

While modern technology has made our lives easier, it has also made it easier for thieves to commit identity theft.

Thieves begin by gaining access to personal information such as your Social Security Number, date of birth and driver's license number. They then use this information to set up fake accounts, open loans, rent housing, secure employment or even obtain medical care—all without you even knowing.

As this crime grows increasingly common, consumers need options for dealing with the costs and hassles related to identity theft—that's why we're offering Identity Theft Expenses Coverage.

### For Just $30 per Year, You Can Get Help to Restore Your Good Name

Now Allstate has a product that can help you if your identity is stolen. You can add this optional coverage to your property policy for just a few dollars a month—a small price to pay for peace of mind—especially when you consider that while other insurance companies typically require a deductible for similar protection, with Allstate there is no deductible.

### Allstate Takes Identity Theft Expenses Coverage a Step Further

If you purchase this coverage, we'll reimburse you for covered expenses you incur to restore your identity up to a $25,000 coverage limit. That's more than most companies offer for this type of coverage. This coverage includes reimbursement for:

- **Attorneys fees** (subject to applicable coverage limits)—in case you need to hire an attorney to defend you if lawsuits are brought against you by merchants or collection agencies, if you need help to remove criminal or civil judgments wrongly entered against you, or to challenge information contained in your credit report.

- **Lost wage recovery** (up to $250/day with a $5,000 cap)—this will help cover wages or salary you may lose if you need to take time off work to complete affidavits or meet with law enforcement agencies, financial institutions, credit grantors, credit reporting agencies or attorneys.

- **Loan reapplication fees**—this covers your expenses if you need to reapply for loans denied you solely because the lender received incorrect information due to identity theft.

- **Other expenses**—covers other expenses involved in restoring your identity, such as mailing costs, notary expenses and long-distance phone calls.

### You Can Get Help If You Become a Victim

If you become a victim of identity theft, you probably won't know all that is involved in restoring your name. There are many issues you would need help with, including:

- Understanding your rights as an identity theft victim.



Important notices                                                          Page **3** of 4
Policy number: | 844 909 761 |
Policy effective date: June 5, 2020

- Filling out paperwork, including police reports.
- Issuing a Fraud Alert to the three major credit bureaus, as well as Social Security Administration, Federal Trade Commission, and U.S. Postal Service.
- Obtaining copies of your credit bureau reports.
- Working with the three major credit bureaus to restore the accuracy of your credit history.
- Reviewing your credit history to verify if fraud includes items such as public records (liens, judgments, bankruptcies); credit accounts; or errors with addresses/ prior employment.
- Issuing a fraud alert to affected financial institutions and credit card companies.
- Tracing Social Security Numbers and notifying and working with the Department of Motor Vehicles, collection agencies for creditors, and law enforcement personnel.

This may seem overwhelming, but our Identity Theft Expenses Coverage can help. With it, if you decide to hire a firm to help you address identity theft issues such as these, you will have up to $2,000 available to pay for their services. In addition, we may refer you to a firm that specializes in addressing the effects of identity theft.* In either case, if you have this coverage you'll have peace of mind knowing you can get help to restore your identity.

### Are You in Good Hands®?

With Allstate you're getting more than great products and service. You get a team of people who know insurance and give you the freedom to manage your insurance your way. To sign up for Identity Theft Expenses Coverage, or for more information, just call your Allstate representative or log on to allstate.com.

*\* Referrals, if any, are solely at the discretion of Allstate. Identity Theft Expenses Coverage is subject to policy terms. Please read the policy endorsements carefully.*
**X71831-1**

## Additional Protection for Your Most Valuable Possessions

Property insurance covers many belongings, but some items may require higher coverage limits than those in a standard property policy.

Scheduled Personal Property (SPP) coverage gives you additional protection against loss or damage to your valuables. It's protection not typically provided with standard property coverage. SPP benefits typically include:

- No deductibles to meet
- Coverage for lost or damaged items
- Coverage for valuables kept in a storage location outside your home

### Items That May Need the Extra Protection

SPP coverage provides protection for an array of valuable personal property. Here are some of the items you can protect by purchasing SPP coverage through Allstate:

- Jewelry (including wedding rings and precious or semi-precious stones)
- Furs
- Cameras (digital, still, movie, video and related equipment)
- Silverware and antiques (including furniture)
- Musical instruments
- Collections (stamps, coins, music)
- Fine art works (including paintings, etchings, vases and sculptures)
- Manuscripts or books
- Home-office equipment (laptop, computer, audio/visual)
- Sports equipment (such as golf clubs)

### Affordable Protection for Your Valuables

The cost of SPP coverage varies, but the value of your property is the best way to determine how much coverage you need. The rates are generally a small percentage of the total value of the items you're insuring. This means that your valuables are being protected for only a fraction of the cost.

### Regularly Review Your SPP Coverage

Even if you currently have SPP coverage, it's a good idea to review it annually. It's possible that the value of your property has changed or that you've purchased new items that have not been added to your coverage.

To learn more about SPP coverage, or if you have any questions about your insurance policy in general, contact your Allstate representative, or visit us at allstate.com.
**X73169**

## What You Should Know About Flood Insurance

Most homeowners, renters and commercial insurance policies do not provide coverage for flood damage. In fact, protection

Important notices
Policy number: **844 909 761**
Policy effective date: June 5, 2020

Page **4** of 4



against floods is generally available only through a separate policy.

That's why Allstate is a participant in the National Flood Insurance Program (NFIP) and offers standard flood insurance policies.* A flood insurance policy can help complete the insurance protection for your property and help protect your financial well-being.

## You May Have More Risk from Flood Than You Think

Approximately 90 percent of all disasters in the U.S. are flood related. While you may think that it couldn't happen to you, over 25 percent of all flood losses occur in low- to moderate-risk areas.

What's more, flood damage is often accompanied by other damage, such as wind and hail (which is typically covered under a property policy). So if you purchase your NFIP coverage through Allstate, you would have the convenience and peace of mind that comes with working with just one claim adjuster and one agent, instead of two or more for a flood claim.

## Flood Coverage Is Affordable

The federal government sets the rates for flood insurance, so there's typically no difference in rates from policy to policy. You can switch to an NFIP flood insurance policy administered by Allstate for the same amount of premium you may be paying elsewhere. If you choose Allstate, you can have the quality service you've come to expect from us.

For more information about flood insurance, or if you have any questions about your policy in general, please contact your Allstate representative or visit us at allstate.com.

* Allstate provides the standard flood insurance policy under the terms of the National Flood Insurance Act of 1968 and its amendments, and Title 44 of the Code of Federal Regulations. The standard flood insurance policy is written by Allstate for the National Flood Insurance Program which is administered by the Federal Insurance Administration, part of the Federal Emergency Management Agency.

*Subject to availability and qualifications. Other terms, conditions and exclusions may apply.*

**X73168**

## How We Compensate Our Agencies

The company listed below uses local agencies to assist customers with their insurance decision-making process by providing customers with information and high quality service. These agencies provide numerous services to customers on the company's behalf. Agencies are paid a commission by the company for selling and servicing the company's insurance policies and may be eligible to receive additional compensation and rewards based on performance.

Allstate Vehicle and Property Insurance Company

**X72006-1**

## Add the Enhanced Package to Your Policy and Save Even More

Consider adding the Enhanced Package to your House & Home policy for even greater value.

The Enhanced Package gives you all of these benefits:

- **Claim RateGuard®**—Allows you to keep your Claim-Free Discount (if you qualify for the discount) *and* protects your rate from going up just because you file a claim.

- **Claim-Free Bonus**—Gives you up to a 5% premium credit each year you go without a claim.

- **Deductible Reward**—You may qualify for an immediate $100 off a qualified deductible when you add the Enhanced Package. Then you'll get an additional $100 each designated twelve month period you don't have a chargeable claim—up to $500 total.

If you'd like to add the Enhanced Package to your House & Home policy or have any questions about these features, please contact your Allstate representative. All Enhanced Package features are subject to policy terms and conditions.

**X73736**



064 070 060
2004211003454
110000011003454064TX00020044210218530055510070080247I100

# Privacy Statement

Policy number: 844 909 761
Policy effective date: June 5, 2020

Page **1** of 2



Thank you for choosing Allstate. We value you, respect your privacy and work hard to protect your personal information.

This statement is provided on behalf of Allstate Insurance Company and the affiliates ("Allstate") listed at the end of this notice. We would like to explain how we collect, use and share the information we obtain about you in the course of doing business.

## Our Privacy Assurance

- We do not sell your personal or medical information to anyone.
- We do not share your information with non-affiliate companies that would use it to contact you about their own products and services, unless permitted pursuant to a joint marketing agreement.
- We require persons or organizations that represent or assist us in servicing your policy and claims to keep your information confidential.
- We require our employees to protect your personal information and keep it confidential.

As you can see, protecting your personal information is important to us. In addition to the practices described above, we use a variety of physical, technical and administrative security measures that help to safeguard your information. For Social Security Numbers (SSN), this includes restricting access to our employees, agents and others who use your SSN only as permitted by law: to comply with the law, to provide you with products and services, and to handle your claims. Also, our employees' and agents' access to and use of your SSN are limited by the law, our policies and standards, and our written agreements.

Our privacy practices continue to apply to your information even if you cease to be an Allstate customer.

## What Personal Information Do We Have and Where Do We Get It

We gather personal information from you and from outside sources for business purposes. Some examples of the information we collect from you may include your name, phone number, home and e-mail addresses, driver's license number, Social Security Number, marital status, family member information and healthcare information. Also, we maintain records that include, but are not limited to, policy coverages, premiums, and payment history. We also collect information from outside sources including, but not limited to, insurance support organizations that assemble or collect information about individuals for the purpose of providing to insurance companies. This information may include, but is not limited to,

your driving record, claims history, medical information and credit information.

In addition, Allstate and its business partners gather information through Internet activity, which may include, for example, your operating system, links you used to visit allstate.com, web pages you viewed while visiting our site or applications, Internet Protocol (IP) addresses, and cookies. We use cookies, analytics and other technologies to help:

- Evaluate our marketing campaigns
- Analyze how customers use our website and applications
- Develop new services
- Know how many visitors have seen or clicked on our ads

Also, our business partners assist us with monitoring information including, but not limited to, IP addresses, domain names and browser data, which can help us to better understand how visitors use allstate.com.

## How We Use and Share Your Personal Information

In the course of normal business activities, we use and share your personal information. We may provide your information to persons or organizations within and outside of Allstate. This would be done as required or permitted by law. For example, we may do this to:

- Fulfill a transaction you requested or service your policy
- Market our products
- Handle your claim
- Prevent fraud
- Comply with requests from regulatory and law enforcement authorities
- Participate in insurance support organizations

The persons or organizations with whom we may share your personal information may include, among others:

- Your agent, broker or Allstate-affiliated companies
- Companies that perform services, such as marketing, credit card processing, and performing communication services on our behalf
- Business partners that assist us with tracking how visitors use allstate.com
- Other financial institutions with whom we have a joint marketing agreement
- Other insurance companies that play a role in an insurance transaction with you
- Independent claims adjusters
- A business or businesses that conduct actuarial or research studies
- Those who request information pursuant to a subpoena or court order
- Repair shops and recommended claims vendors

## The Internet and Your Information Security



Privacy Statement

Policy number: 844 909 761

Policy effective date: June 5, 2020

We use cookies, analytics and other technologies to help us provide users with better service and a more customized web experience. Additionally, our business partners use tracking services, analytics and other technologies to monitor visits to allstate.com. The website may also use Web beacons (also called "clear GIFs" or "pixel tags") in conjunction with cookies. If you prefer, you can choose to not accept cookies by changing the settings on your web browser. Also, if you would like to learn about how we gather and protect your information over the Internet, please see our online privacy statement located at the bottom of the allstate.com homepage.

To learn more, the allstate.com Privacy Statement provides information relating to your use of the website. This includes, for example, information regarding:

1) How we collect information such as IP address (the number assigned to your computer when you use the Internet), browser and platform types, domain names, access times, referral data, and your activity while using our site;
2) Who should use our website;
3) The security of information over the Internet; and
4) Links and co-branded sites.

## How You Can Review and Correct Your Personal Information

You can request to review your personal information contained in our records at any time. To do this, please send a letter to the address below requesting to see your information for the previous two years. If you believe that our information is incomplete or inaccurate, you can request that we correct it. Please note we may not be able to provide information relating to investigations, claims, litigation, and other matters. We will be happy to make corrections whenever possible.

Please send requests to:

Allstate Insurance Company Customer Privacy Inquiries
PO Box 660598
Dallas, TX 75266-0598

## Your Preference for Sharing Personal Information

We would like to share your personal information with one or more Allstate affiliates in order to make you aware of different products, services and offers they can provide. However, you can request that Allstate and its affiliate companies not share your personal information with our affiliates for marketing products and services.

To request that we not allow other Allstate affiliates to use your personal information to market their products and services, you can contact us by calling 1-800-856-2518 twenty-four hours a day, seven days a week. Please keep in mind that it may take up to four weeks to process your request.

If you previously contacted us and asked us not to allow other Allstate affiliates to use your personal information, your previous choice still applies and you do not need to contact us again. If you would like to change your previous choice please call the number above at any time.

## We Appreciate Your Business

Thank you for choosing Allstate. We understand your concerns about privacy and confidentiality, and we hope this notice has been helpful to you. We value our relationship with you and look forward to keeping you in Good Hands®.

If you have questions or would like more information, please don't hesitate to contact your Allstate agent or call the Allstate Customer Information Center at 1-800-ALLSTATE.

We reserve the right to change our Privacy practices, procedures, and terms.

Allstate Insurance Company

Allstate entities on which behalf this notice is provided and amongst which information may be shared:

The Allstate family of companies, LSA Securities, Deerbrook General Agency, Inc., Deerbrook Insurance Company, North Light Specialty Insurance Company, Northbrook Indemnity Company.

Please Note: Allstate affiliates American Heritage Life Insurance Company, Castle Key Insurance Company and Castle Key Indemnity Company participate in information sharing with the affiliates listed above, but have a separate privacy notice for their customers.

(ed. 10/2015)

**X73180v6**

064 070 060
200421T003454
110000T003454064TX0002004210218530027970080024711O0

**Policy Endorsement**

Page **1** of 1



*The following endorsement changes your policy.
Please read this document carefully and keep it with
your policy.*

## Windstorm and Hail Deductible
## Endorsement – AVP82 (2016)

Under **Section I Conditions**, Conditions 1, **"Deductible,"** the
following is added:

**Windstorm** And Hail Deductible
The windstorm and hail deductible applies in the event of
covered loss caused by **windstorm** or hail.

The **windstorm** and hail deductible amount will appear on
**your** Policy Declarations. **We** will pay only when a covered
loss to which this deductible applies exceeds the
**windstorm** and hail deductible amount. **We** will then pay
only the excess amount.

If another deductible applicable to the loss exceeds the
**windstorm** and hail deductible, the greater deductible will
be applied to the loss.

All other provisions of **your** policy apply.



**ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY**

# House & Home
# Policy

**TEXAS**  AVP91

Policy number  Policy Effective

Policy Holders



**Allstate Vehicle and Property Insurance Company**
**The Company Named in the Policy Declarations**
A Stock Company---Home Office: Northbrook, Illinois 60062



House & Home Policy

Policy number

# Table of Contents

Agreements We Make With You .................................................. 4

**General** ........................................................................................ 4
Definitions Used In This Policy ..................................................... 4
Insuring Agreement ...................................................................... 5
Conformity To State Statutes ....................................................... 5
Coverage Changes ....................................................................... 5
Policy Transfer .............................................................................. 6
Continued Coverage After Your Death ........................................ 6
Dividend Provision ....................................................................... 6
Cancellation ................................................................................. 6
Refusal To Renew ........................................................................ 6
Charge For Insufficient Funds ..................................................... 7
Misrepresentation, Fraud Or Concealment ................................ 7
What Law Will Apply .................................................................... 7
Where Lawsuits May Be Brought ................................................ 7
Action Against Us ......................................................................... 7
Arbitration .................................................................................... 8
Residential Community Property Clause ..................................... 8
Loss Reduction And Other Items ................................................. 8

**Section I—Your Property** ........................................................ 8

**Dwelling Protection–Coverage A** ........................................... 8
Property We Cover Under Coverage A ........................................ 8
Property We Do Not Cover Under Coverage A ............................ 8

**Other Structures Protection–Coverage B** ............................. 8
Property We Cover Under Coverage B ........................................ 8
Property We Do Not Cover Under Coverage B ............................ 8

**Personal Property Protection–Coverage C** ............................ 9
Property We Cover Under Coverage C ........................................ 9
Limitations On Certain Personal Property ................................... 9
Property We Do Not Cover Under Coverage C ............................ 9

Losses We Cover Under Coverages A, B and C ........................ 10
Losses We Do Not Cover Under Coverages A, B and C .......... 11

**Section I Additional Protection** ........................................... 14
Additional Living Expense .......................................................... 14
Civil, Governmental And Military Authorities ............................ 14
Debris Removal ........................................................................... 14
Emergency Removal Of Property ............................................... 14
Fire Department Charges ............................................................ 14
Temporary Repairs After A Loss ................................................ 15
Trees, Shrubs, Plants And Lawns .............................................. 15
Power Interruption ..................................................................... 15
Arson Reward ............................................................................. 15
Collapse ...................................................................................... 15

Lock Replacement ...................................................................... 16
Foundation Water Damage ........................................................ 16

**Section I Conditions** .............................................................. 16
Deductible ................................................................................... 16
Insurable Interest And Our Liability .......................................... 16
What You Must Do After A Loss ................................................ 16
Our Duties After Loss ................................................................. 17
Our Settlement Options .............................................................. 17
How We Pay For A Loss .............................................................. 17
Our Settlement Of Loss .............................................................. 19
Appraisal ..................................................................................... 19
Abandoned Property ................................................................... 19
Permission Granted To You ........................................................ 19
Our Rights To Recover Payment ................................................ 19
Our Rights To Obtain Salvage .................................................... 19
Action Against Us ....................................................................... 20
Loss To A Pair Or Set ................................................................. 20
Glass Replacement ..................................................................... 20
No Benefit To Bailee ................................................................... 20
Other Insurance .......................................................................... 20
Property Insurance Adjustment ................................................. 20
Mortgagee ................................................................................... 20
Catastrophe Claims .................................................................... 21
Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes
    Remediation As A Direct Result Of A Covered
    Water Loss ............................................................................. 21

**Section II—Family Liability And Guest
            Medical Protection** ...................................... 21

**Family Liability Protection–Coverage X** ............................. 21
Losses We Cover Under Coverage X .......................................... 21
Losses We Do Not Cover Under Coverage X ............................. 21

**Guest Medical Protection–Coverage Y** ............................... 23
Losses We Cover Under Coverage Y .......................................... 23
Losses We Do Not Cover Under Coverage Y ............................. 23

**Section II Additional Protection** .......................................... 25
Claim Expenses ........................................................................... 25
Emergency First Aid ................................................................... 25
Damage To Property Of Others .................................................. 25

**Section II Conditions** ............................................................ 25
What You Must Do After A Loss ................................................ 25
What An Injured Person Must Do—Guest Medical
    Protection–Coverage Y ......................................................... 26
Our Payment Of Loss—Guest Medical Protection–
    Coverage Y ............................................................................ 26

House & Home Policy
Policy number:



Our Limits Of Liability ................................................26
Bankruptcy...............................................................26
Our Rights To Recover Payment—Family Liability
   Protection–Coverage X ..........................................26
Action Against Us ......................................................26
Other Insurance—Family Liability Protection–
   Coverage X.............................................................26
Notice Of Settlement Of Liability Claim ....................26

**Section III—Optional Protection**............................27

**Optional Coverages**.................................................27
Building Codes–Coverage BC....................................27
Increased Coverage On Business Property–Coverage BP .....27
Fire Department Charges–Coverage F........................27
Loss Assessments–Coverage G ................................27
Extended Coverage On Jewelry, Watches And Furs–
   Coverage J.............................................................27
Increased Coverage On Theft Of Silverware–
   Coverage ST...........................................................28



## Agreements We Make With You

**We** make the following agreements with **you**:

# General

## Definitions Used In This Policy

Throughout this policy, when the following words appear in bold type, they are defined as follows:

1. **Bodily injury**—means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include diseases transmitted through sexual contact including:
   a) any venereal disease;
   b) herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to a) through e) listed above.

   In addition, **bodily injury** does not include any symptom, effect, condition, disease or illness resulting in any manner from:
   a) lead in any form;
   b) asbestos in any form;
   c) radon in any form; or
   d) oil, fuel oil, kerosene, or liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises**;

   unless such symptom, effect, condition, disease or illness results from:
   a) heat, smoke or fumes from a fire which becomes uncontrollable or escapes from its intended location; or
   b) the **sudden and accidental** discharge, dispersal, release or escape of carbon monoxide from a heating system, an appliance for heating water, or a household appliance located at the **residence premises**.

2. **Building structure**—means a structure with walls and a roof.

3. **Business**—means:
   a) any full- or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured**

**person** or relative of an **insured person** for economic gain is also a **business**.

However, the mutual exchange of home day care services is not considered a **business**;

   b) the rental or holding for rental of property by an **insured person**. Rental of **your residence premises** is not considered a **business** when:
      1) it is rented occasionally for residential purposes;
      2) a portion is rented to roomers or boarders, provided not more than two roomers or boarders reside on the **residence premises** at any one time; or
      3) a portion is rented as a private garage.

4. **Business day**—means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

5. **Dwelling**—means the single-family **building structure**, identified as the insured property on the Policy Declarations, where **you** reside and which is principally used as a private residence.

6. **Insured person(s)**—means **you** and, if a resident of **your** household:
   a) any relative; and
   b) any person under the age of 21 in **your** care.

   Under **Family Liability Protection–Coverage X** and **Guest Medical Protection–Coverage Y, "insured person"** also means:
   a) any person or organization legally responsible for loss caused by animals or watercraft covered by this policy which are owned by an **insured person**. **We** do not cover any person or organization using or having custody of animals or watercraft in any **business**, or without permission of the owner.
   b) with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an **insured person**.

7. **Insured premises**—means:
   a) the **residence premises**; and
   b) under **Section II** only:
      1) the part of any other premises, other structures and grounds used by **you** as a residence. This includes premises, structures and grounds **you** acquire for **your** use as a private residence while this policy is in effect;

House & Home Policy
Policy number:



2) any part of a premises not owned by an **insured person** but where an **insured person** is temporarily living;
3) cemetery plots or burial vaults owned by an **insured person**;
4) land owned by or rented to an **insured person** where a single-family **dwelling** is being built as that person's residence;
5) any premises used by an **insured person** in connection with the **residence premises**; and
6) any part of a premises occasionally rented to an **insured person** for other than **business** purposes.

8. **Occurrence**—means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

9. **Property damage**—means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

10. **Residence employee**—means an employee of an **insured person** while performing duties arising out of and in the course of employment in connection with the maintenance or use of **your residence premises**. This includes similar duties performed elsewhere for an **insured person**, not in connection with the **business** of an **insured person**.

11. **Residence premises**—means the **dwelling**, other structures and land located at the address stated on the Policy Declarations.

12. **Roof surface**—means the roof surface material type (slate, composition, wood, tile, metal, all other roof surface material types) of a **building structure** or other structure covered under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B** and all other roofing components, including, but not limited to:
    a) flashing, caps, vents, drip edges, and ice shields;
    b) sheeting, felt and membranes;
    c) modified bitumen, bitumen, rubber, built-up and sprayed polyurethane foam roofing;
    d) foam inserts and elastomeric coating;
    e) finials, eave and gable trim and snow guards;
    f) battens, counter battens, bird stops, gravel stops; and

    g) coatings, adhesives, adherents and other finishing materials for roof surface materials and all other roofing components.

13. **Sudden and accidental**—means damage which occurs abruptly and is unexpected and/or unintended from the standpoint of **you**.

14. **We**, **us**, or **our**—means the company named on the Policy Declarations.

15. **Windstorm**—means wind with or without precipitation.

16. **You** or **your**—means the person listed under Named Insured(s) on the Policy Declarations as the insured and that person's resident spouse.

## Insuring Agreement

In reliance on the information **you** have given **us**, **we** agree to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises**.

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises**, applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period. The Policy Period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

This policy imposes joint obligations on the Named Insured(s) listed on the Policy Declarations and on that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**.

## Conformity To State Statutes

When the policy provisions conflict with the statutes of the state in which the **residence premises** is located, the provisions are amended to conform to such statutes.

## Coverage Changes

When **we** broaden coverage during the policy period without charge, **you** have the new features if **you** have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.



The coverage provided and the premium for the policy are based on information **you** have given **us**. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, or if this information is incorrect or incomplete, **we** may adjust **your** coverage and premium accordingly during the policy period.

Any calculation of **your** premium or changes in **your** coverage will be made using the rules, rates and forms on file, if required, for **our** use in **your** state. The rates in effect at the beginning of **your** current policy period will be used to calculate any change in **your** premium.

## Policy Transfer
**You** may not transfer this policy to another person without **our** written consent.

## Continued Coverage After Your Death
If **you** die, coverage will continue until the end of the current policy period for:
1. **your** legal representative while acting as such, but only with respect to the **residence premises** and property covered under this policy on the date of **your** death.

2. an **insured person**, and any person having proper temporary custody of **your** property until a legal representative is appointed and qualified.

## Dividend Provision
To the extent and upon the conditions fixed and determined from time to time by **our** Board of Directors in accordance with the provisions of the Texas Insurance Code of 1951, as amended, **you** shall be entitled to participate in a distribution of **our** surplus.

## Cancellation
1. **You** may cancel this policy at any time by notifying **us** of the date cancellation is to take effect. **We** will send **you** any refund due when the policy is returned to **us**.

2. If this policy has been in effect for less than 60 days and is not a renewal **we** may cancel this policy if:
   a) **we** identify a condition that:
      1) creates an increased risk of hazard;
      2) was not disclosed in the application for insurance coverage; and
      3) is not the subject of a prior claim; or
   b) before the effective date of the policy, **we** have not accepted a copy of a required inspection report that:

1) was completed by an inspector licensed by the Texas Real Estate Commission or who is otherwise authorized to perform inspections; and
2) is dated not earlier than the 90th day before the effective date of the policy.

An inspection report is deemed accepted, unless **we** reject it before the 11th day after the date the inspection report is received by **us**.

3. **We** may cancel this policy at any time for the following reasons:
   a) **you** do not pay the premium or any portion of the premium when due.
   b) the Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.
   c) **you** submit a fraudulent claim.
   d) there is an increase in the hazard covered by this policy that is within **your** control and that would produce an increase in the premium rate of this policy.

4. The effective date of cancellation cannot be before the 10th day after **we** mail the notice if **we** cancel for any of the reasons in item 3 above or the 30th day after **we** mail the notice if **we** cancel for any other reason. **Our** notice of cancellation must state the reason for cancellation.

5. If **we** cancel, **our** notice to **you** will state that if the refund is not included with the notice, it will be provided on demand.

6. **We** may not cancel this policy solely because **you** are an elected official

## Refusal To Renew
1. **We** may not refuse to renew this policy because of claims for losses resulting from natural causes.

2. **We** may not refuse to renew this policy solely because **you** are an elected officer.

3. **We** may refuse to renew this policy if **you** have filed three or more claims under the policy in any three year period that do not result from natural causes.

If **you** have filed two claims in a period of less than three years, **we** may notify **you** in writing, that if **you** file a third

House & Home Policy
Policy number:



claim during the three year period, **we** may refuse to renew this policy by providing **you** proper notice of **our** refusal to renew as provided in 4 below. If **we** do not notify **you** after the second claim, **we** may not refuse to renew this policy because of losses.

A claim does not include a claim that is filed but is not paid or payable under this policy.

4.  If **we** refuse to renew this policy, **we** must deliver to **you**, or mail to **you** at **your** mailing address shown on the Policy Declarations and any mortgagee named on the Policy Declarations, written notice of **our** refusal to renew not later than the 30th day before the date on which this policy expires. Proof of mailing will be sufficient proof of notice. If **we** fail to give **you** proper notice of **our** decision not to renew, **you** may require **us** to renew the policy.

## Charge For Insufficient Funds
If at any time, **your** payment of any premium amount due is made by check, electronic transaction or other remittance which is not honored because of insufficient funds or closed account, **you** will be charged a fee.

## Misrepresentation, Fraud Or Concealment
**We** may void this policy if it was obtained by misrepresentation, fraud or concealment of material facts. If **we** determine that this policy is void, all premiums paid will be returned to **you** since there has been no coverage under this policy.

**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.

## What Law Will Apply
This policy is issued in accordance with the laws of the state in which the **residence premises** is located and covers property or risks principally located in that state. Subject to the following paragraph, the laws of the state in which the **residence premises** is located shall govern any and all claims or disputes in any way related to this policy.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy, happens outside the state in which the **residence premises** is located, claims or disputes regarding that covered loss to property, or other covered **occurrence**, may be governed by the laws of the jurisdiction in which that covered loss to property or other

covered **occurrence** happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

## Where Lawsuits May Be Brought
Subject to the following two paragraphs, any and all lawsuits in any way related to this policy, shall be brought, heard and decided only in a state or federal court located in the state in which the **residence premises** is located. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located in the state in which the **residence premises** is located, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy, happens outside the state in which the **residence premises** is located, lawsuits regarding that covered loss to property, or other covered **occurrence**, may also be brought in the judicial district where that covered loss to property or other covered **occurrence** happened.

Nothing in this provision, **Where Lawsuits May Be Brought**, shall impair any party's right to remove a state court lawsuit to a federal court.

## Action Against Us
No one may bring an action against **us** unless there has been full compliance with all policy terms.

Any action against **us** to which neither the **Action Against Us** provision located in **Section I Conditions** nor the **Action Against Us** provision located in **Section II Conditions** applies must be commenced within two years and one day of the date the cause of action first accrues.

If an action is brought asserting claims relating to the existence or amount of coverage, or the amount of loss for which coverage is sought, under different coverages of this policy, the claims relating to each coverage shall be treated as if they were separate actions for the purpose of the time limit to commence action.

## Arbitration
After a loss or occurrence, any coverage claim or dispute in any way related to this policy, by an **insured person** against **us** or **us** against an **insured person**, may be resolved by



arbitration only upon mutual consent of the parties. Arbitration pursuant to this provision shall be subject to the following:

1. no arbitrator shall have the authority to award punitive damages or attorney's fees;

2. neither of the parties shall be entitled to arbitrate any claims or disputes in a representative capacity or as a member of a class; and

3. no arbitrator shall have the authority, without the mutual consent of the parties, to consolidate claims or disputes in arbitration.

## Residential Community Property Clause

This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy, until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

## Loss Reduction And Other Items

From time to time and in **our** sole discretion, **we** may provide **you**, or allow others to provide **you**, with:

1. items, memberships, special offers, merchandise, points, services, classes, seminars or other things of value designed to help **you** or other persons insured under this policy manage the risks **you** or they face, including, but not limited to, loss reduction or safety-related items; or

2. items, memberships, special offers, merchandise, points, services, classes, seminars or things of any other type that **we** think may be of value to **you** or someone else insured under this policy.

    These items, memberships, special offers, merchandise, points, services, classes, seminars or other things of value may be provided in any form, including, but not limited to, redemption codes, coupons, vouchers and gift cards.

# Section I—Your Property

## Dwelling Protection–Coverage A

### Property We Cover Under Coverage A:

1. **Your dwelling**, including attached structures. Structures connected to **your dwelling** by only a fence, utility line, or similar connection are not considered attached structures.

2. Construction materials and supplies at the **residence premises** for use in connection with **your dwelling**.

3. Wall-to-wall carpeting fastened to **your dwelling**.

### Property We Do Not Cover Under Coverage A:

1. Any structure, including fences, or other property covered under **Other Structures Protection–Coverage B**.

2. Land.

3. Satellite dish antennas and their systems, whether or not attached to **your dwelling**.

# Other Structures Protection–Coverage B

### Property We Cover Under Coverage B:

1. Structures at the address shown on the Policy Declarations separated from **your dwelling** by clear space.

2. Structures at the address shown on the Policy Declarations connected to **your dwelling** by only a fence, utility line, or similar connection.

3. Construction materials and supplies at the **residence premises** for use in connection with structures other than **your dwelling**.

4. Wall-to-wall carpeting fastened to **building structures**, other than **your dwelling**, at the address shown on the Policy Declarations.

### Property We Do Not Cover Under Coverage B:

1. Structures used in whole or in part for **business** purposes.

2. Any structure or other property covered under **Dwelling Protection–Coverage A**.

House & Home Policy
Policy number:



3. Land.

4. Construction materials and supplies at the **residence premises** for use in connection with the **dwelling**.

5. Satellite dish antennas and their systems, whether or not attached to **building structures**.

## Personal Property Protection–Coverage C

### Property We Cover Under Coverage C:

1. Personal property owned or used by an **insured person** anywhere in the world. When personal property is located away from the **residence premises**, coverage is limited to 10% of **Personal Property Protection–Coverage C**.

2. At **your** option, personal property owned by a guest or **residence employee** while the property is in a residence **you** are occupying.

### Limitations On Certain Personal Property:

Limitations apply to the following groups of personal property. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under **Personal Property Protection–Coverage C**. The total amount of coverage for each group in any one loss is as follows:

1. $   200 — Property used or intended for use in a **business** while the property is away from the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

2. $   500 — Theft of any recording or storage media while such property is away from the **residence premises**, whether or not it is used with electronic data processing equipment or in a **business**. Recording or storage media includes, but is not limited to:
   a) tapes;
   b) CDs, DVDs and other discs;
   c) records;
   d) disks;
   e) reels;
   f) cassettes;
   g) cartridges; or
   h) programs.

3. $ 1,000 — Property used or intended for use in a **business**, including property held as samples or for sale or delivery after sale, while the property is on the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

4. $ 1,000 — Trading cards, subject to a maximum amount of $250 per card.

5. $ 1,000 — Watercraft, including their attached or unattached trailers, furnishings, equipment, parts, and motors.

6. $ 1,000 — Trailers not used with watercraft.

7. $ 1,500 — Motorized land vehicle parts, equipment or accessories not attached to or located in or upon any motorized land vehicle.

8. $ 2,000 — Theft of firearms, their related equipment, and accessories.

9. $ 2,500 — Theft of goldware, silverware, pewterware and platinumware.

10. $ 5,000 — Theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, pewter other than pewterware, platinum other than platinumware, and furs, including any item containing fur which represents its principal value, subject to a maximum amount of $1,000 per item.

11. $10,000 — Theft of tools and their accessories.

12. $10,000 — Motorized land vehicles used solely for the service of the **insured premises** and not licensed for use on public roads. This does not include motorized land vehicles designed for assisting the disabled and not licensed for use on public roads.

### Property We Do Not Cover Under Coverage C:

1. Personal property specifically described and insured by this or any other insurance.

2. Animals.



3.  Motorized land vehicles, including, but not limited to, any land vehicle powered or assisted by a motor or engine. **We** do not cover any motorized land vehicle parts, equipment or accessories attached to or located in or upon any motorized land vehicle. **We** do cover motorized land vehicles designed for assisting the disabled, or used solely for the service of the **insured premises**, and not licensed for use on public roads.

4.  Aircraft and aircraft parts. This does not include model or hobby craft not designed to carry people or cargo.

5.  Property of roomers, boarders or tenants not related to **you**.

6.  Property located away from the **residence premises** and rented or held for rental to others.

7.  Satellite dish antennas and their systems.

8.  Money, bullion, bank notes, coins and other numismatic property, scrip, stored value cards, and smart cards.

9.  Accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, checks, cashier's checks, traveler's checks, passports, securities, tickets, and stamps, including philatelic property.

10. Manuscripts, including documents stored on electronic media.

## Losses We Cover Under Coverages A, B and C:

**We** will cover **sudden and accidental** direct physical loss to the property described in **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B or Personal Property Protection–Coverage C** caused by the following, except as limited or excluded in this policy:

1.  Fire or lightning.

2.  **Windstorm** or hail.

    **We** do not cover:
    a)  loss to covered property inside a **building structure**, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall;
    b)  loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed **building structure**. However, **we** do cover canoes and rowboats on the **residence premises**.

3.  Explosion.

4.  Riot or civil commotion, including pillage and looting during, and at the site of, the riot or civil commotion.

5.  Aircraft, including self-propelled missiles and spacecraft.

6.  Vehicles.

7.  Smoke.

8.  Vandalism and malicious mischief.

    **We** do not cover vandalism or malicious mischief if **your dwelling** has been vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

9.  Falling objects.

    **We** do not cover loss to personal property inside a **building structure** unless the falling object first damages the exterior walls or roof of the **building structure**.

10. Weight of ice, snow or sleet which causes damage to:
    a)  a **building structure** or other structure covered under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**; or
    b)  property covered under **Personal Property Protection–Coverage C** in a **building structure**, but only if the **building structure** is damaged due to the weight of ice, snow or sleet.

11. Artificially generated electrical current to electronics, electrical appliances, fixtures and wiring.

12. Bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system or an appliance for heating water.

13. Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protective sprinkler system, or from a household appliance due to accidental discharge or overflow. However, **we** do not cover loss, including ensuing loss or the cost of tearing out and replacing any part of **your dwelling**, caused by the discharge or overflow of water or steam from within a plumbing, heating or air conditioning system, household appliance or fire protective sprinkler system

House & Home Policy
Policy number:



where the source of the discharge or overflow is either below the surface of the ground or within or below the slab or foundation of the **dwelling** except as specifically provided in **Section I**, **Additional Protection**, under item 12, **Foundation Water Damage**.

**We** do not cover loss to the system or appliance from which the water or steam escapes, or loss from water which backs up through sewers or drains or overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

14. Freezing of a plumbing, heating or air conditioning system, an automatic fire protective sprinkler system or a household appliance.

**We** do not cover loss at the **residence premises** under items 12, 13, and 14, immediately above, which is caused by freezing while the **building structure** is vacant, unoccupied or under construction, or when freezing results from a lack of utility services at the **residence premises** to which item A.10 in **Losses We Do Not Cover Under Coverages A, B and C** applies, unless **you** have used reasonable care to maintain heat in the **building structure**. If the **building structure** is not equipped with an automatic fire protective sprinkler system, **you** may elect to shut off the water supply and drain the water from the systems and appliances instead of maintaining heat in the **building structure**.

15. Theft, or attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred. Any theft must be promptly reported to the police.

**We** do not cover:
a)  theft or attempted theft committed by an **insured person**;
b)  theft in or from the **residence premises** while under construction or of materials and supplies for use in construction, until the **dwelling** is completed and occupied;
c)  theft of any property while at any other residence owned, rented to or occupied by an **insured person** unless the **insured person** is temporarily residing there;
d)  theft of trailers, campers, watercraft, including furnishings, equipment and outboard motors, away from the **residence premises**; or

e)  theft from that part of the **residence premises** rented by **you** to other than an **insured person**.

16. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any **building structure** on the **residence premises**. This does not include damage to the glass.

## Losses We Do Not Cover Under Coverages A, B and C:

A.  Under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** of this policy, **we** do not cover any loss which consists of, is caused by, or would not have occurred but for, one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of: a) the cause or source of the excluded event, peril or condition; b) any other causes contributing concurrently or in any sequence with the excluded event, peril or condition to produce the loss; or c) whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

1.  Flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2.  Water or any other substance that backs up through sewers or drains.

3.  Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4.  Water or any other substance on or below the surface of the ground. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

**We** do cover **sudden and accidental** direct physical loss caused by fire or explosion resulting from items 1 through 4 listed above.

5.  Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole,



erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

**We** do cover **sudden and accidental** direct physical loss caused by fire or explosion resulting from earth movement.

6. Actions taken by civil, governmental or military authorities:
   a) to enforce any building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, placement or demolition of any **building structure**, other structure or land at the **residence premises**; or
   b) requesting, demanding or ordering that an **insured person** test for, monitor, clean up, remove, contain, treat, detoxify, decontaminate, or neutralize, or in any way respond to or assess the effects of, any loss or potential loss at the **residence premises**.

   However, **we** will cover **sudden and accidental** direct physical loss caused by actions of civil, governmental or military authority to prevent the spread of fire.

7. Nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss which consists of, is caused by, or would not have occurred but for, the nuclear hazard is not considered loss by fire, explosion or smoke.

8. a) War, whether declared or undeclared;
   b) warlike acts;
   c) invasion;
   d) insurrection;
   e) rebellion;
   f) revolution;
   g) civil war;
   h) usurped power;
   i) destruction for a military purpose; or
   j) action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

9. Vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic

solids, waste materials, or other irritants, contaminants or pollutants.

However, **we** will not apply this exclusion to **sudden and accidental** direct physical loss which consists of, is caused by, or would not have occurred but for:
a) a fire or an explosion at **your residence premises**;
b) smoke or soot resulting from food preparation at **your residence premises**;
c) the malfunction of a heating or air conditioning system or a household appliance at **your residence premises**;
d) smoke, soot or fumes originating away from **your residence premises**, provided the smoke, soot or fumes:
   1) were not from industrial, governmental or military operations, agricultural smudging, or the manufacturing of any controlled substance; and
   2) did not result from nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these;
e) spray, overspray, spatter, or spillage, by a person located on the ground at the **residence premises** or in or upon a structure **we** cover at the **residence premises**, of lawfully possessed, commercially available supplies manufactured or produced for use in food preparation, personal hygiene, or for cleaning or maintaining a residential property or personal property;
f) spillage or release at **your residence premises** of gas or oil, in any form, used to prepare foods at **your residence premises**, or to heat the **dwelling** or other **building structures** at **your residence premises**, when such spillage or release results in a fire or an explosion at **your residence premises**; or
g) fuel, oil or other fluids necessary to operate a motorized land vehicle if, at the time of the loss, such fuel, oil or other fluids are being used solely for the purpose of operating a motorized land vehicle and the loss results from a collision, at the **residence premises**, of the motorized land vehicle with property **we** cover under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**.

10. Lack of utility services at the **residence premises**, meaning loss or interruption of, lack or loss of access

House & Home Policy

Policy number:



to, or unavailability of, one or more utility services for the **residence premises**, including, but not limited to, electric, natural gas or other fuels, water, sanitation, sewer, cable or communication services, unless the lack of utility services results solely from a **sudden and accidental** direct physical loss to property located at the **residence premises** caused by an event, peril or condition not excluded by this policy.

When the lack of utility services results in freezing of:
a) plumbing, automatic fire protective sprinkler system, heating or air conditioning systems; or
b) household appliances;

or when the lack of utility services results in discharge, leakage or overflow from within a) or b) above caused by freezing, **we** do cover **sudden and accidental** direct physical loss caused by the freezing if **you** used reasonable care to maintain heat in the **building structure**. If the **building structure** is not equipped with an automatic fire protective sprinkler system, **you** may elect to shut off the water supply and drain the water from the systems and appliances instead of maintaining heat in the **building structure**.

11. Inability of an **insured person** to use, access or retain personal property **we** cover under **Personal Property Protection–Coverage C** due to an actual, impending or expected lack, impassability or unavailability of any reasonable means of ingress to or egress from the **residence premises** or any other location where the property is located, including, but not limited to, roads, highways, causeways, sidewalks, paths, rails, bridges, tunnels or waterways.

For purposes of this exclusion, a particular means of ingress or egress will be considered impassable or unavailable if:
a) it cannot be safely traveled due to physical damage or destruction of that means of ingress or egress; or
b) it cannot be traveled due to actions by others, including, but not limited to, civil, governmental or military authorities which prohibit or restrict travel using that means of ingress or egress.

12. Weather Conditions that contribute in any way with an event, peril or condition excluded under **Losses**

**We Do Not Cover Under Coverages A, B and C** to produce a loss.

B. Under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** of this policy, **we** do not cover any loss consisting of or caused by mold, fungus, wet rot, dry rot or other microbes. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or other microbes.

This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or other microbes arises from any other cause of loss, including, but not limited to, a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I Conditions**, **Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**.

C. When loss is not excluded under paragraph A or paragraph B of **Losses We Do Not Cover Under Coverages A, B and C**, and there are two or more causes of loss to the covered property, **we** do not cover the loss if the predominant cause(s) of loss is (are) excluded under paragraph D, immediately below.

D. Under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** of this policy, **we** do not cover any loss consisting of or caused by one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.
1. The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

2. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
a) may be reasonably expected to result from such acts; or
b) is the intended result of such acts.

This exclusion will not apply to an innocent spouse or **insured person** who did not contribute to such



loss or to the interest of an innocent spouse or **insured person** in the damaged property.

This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime.

3. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
   a) planning, zoning, development, surveying, siting;
   b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
   c) materials used in repair, construction, renovation or remodeling; or
   d) maintenance;

of property whether on or off the **residence premises** by any person or organization.

# Section I Additional Protection

1. **Additional Living Expense**
   **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** makes **your residence premises** uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**.

   Payment for additional living expense as a result of a covered loss under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** will be limited to the least of the following:
   a) the time period required to repair or replace the property **we** cover, using due diligence and dispatch;
   b) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere; or
   c) 12 months.

   These periods of time are not limited by the termination of this policy.

In no event shall **our** payment for additional living expenses exceed the Limit Of Liability shown on **your** Policy Declarations for Additional Living Expense.

**We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

2. **Civil, Governmental And Military Authorities**
   **We** will pay the reasonable and necessary increase in living expenses up to $150 per day, for up to two weeks should civil, governmental or military authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by an event, peril or condition **we** insure against under **Dwelling Protection–Coverage A, Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C**. However, payments for increase in living expenses due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**.

   The two-week period of time referenced above is not limited by the termination of this policy.

   No deductible applies to this protection.

3. **Debris Removal**
   **We** will pay reasonable expenses **you** incur to remove debris of covered property damaged by a loss **we** cover. If the loss to the covered property and the cost of debris removal are more than the Limit Of Liability shown on the Policy Declarations for the covered property, **we** will pay up to an additional 5% of that limit for debris removal.

4. **Emergency Removal Of Property**
   **We** will pay for **sudden and accidental** direct physical loss to covered property from any cause while removed from a premises because of danger from a loss **we** cover. Protection is limited to a 30-day period from date of removal. This protection does not increase the limit of liability that applies to the covered property.

5. **Fire Department Charges**
   **We** will pay up to $500 for service charges made by fire departments called to protect **your** property from a loss **we** cover at the **residence premises**.

House & Home Policy
Policy number:



No deductible applies to this protection.

6. **Temporary Repairs After A Loss**
**We** will reimburse **you** up to $5,000 for the reasonable and necessary cost **you** incur for temporary repairs to protect covered property from further imminent covered loss following a loss **we** cover. This coverage does not increase the limit of liability applying to the property being repaired.

7. **Trees, Shrubs, Plants And Lawns**
**We** will pay up to 5% of the Limit Of Liability shown on the Policy Declarations under **Dwelling Protection–Coverage A** for loss to trees, shrubs, plants and lawns at the address of the **residence premises**. **We** will not pay more than $500 for any one tree, shrub, or plant, including expenses incurred for removing debris. This coverage applies only to **sudden and accidental** direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the **residence premises**, vandalism or malicious mischief, theft, or collapse of a **building structure** or any part of a **building structure**.

**We** will pay up to $500 for reasonable expenses **you** incur for the removal of debris of trees at the address of the **residence premises** for **sudden and accidental** direct physical loss caused by **windstorm**, hail, or weight of ice, snow or sleet. The fallen tree must have caused damage to property covered under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**.

**We** do not cover trees, shrubs, plants, or lawns grown for **business** purposes.

This coverage does not increase the **Dwelling Protection–Coverage A** limit of liability.

8. **Power Interruption**
**We** will pay up to $500 for loss to the contents of freezers and refrigerated units on the **residence premises** caused by the interruption of power which occurs off the **residence premises**. If a power interruption is known to an **insured person**, all reasonable means must be used to protect the contents of freezers and refrigerated units.

This coverage does not increase the limit of liability applying to the damaged property.

9. **Arson Reward**
**We** will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under **Section I** of this policy. The $5,000 limit applies regardless of the number of persons providing information.

10. **Collapse**
**We** will cover at the **residence premises**:
a) the entire collapse of a covered **building structure**;
b) the entire collapse of part of a covered **building structure**; and
c) direct physical loss to covered property caused by a) or b) above.

For coverage to apply, the collapse of a **building structure** specified in a) or b) above must be a **sudden and accidental** direct physical loss caused by one or more of the following:
a) a loss **we** cover under **Section I, Losses We Cover Under Coverages A, B and C**;
b) weight of persons, animals, equipment or contents;
c) weight of rain, snow or ice which collects on a roof;
d) defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

Collapse, as referenced herein, means the covered **building structure** or part of the covered **building structure** has actually fallen down or fallen into pieces unexpectedly and instantaneously. It does not include settling, cracking, shrinking, bulging, expansion, sagging, or bowing. Furthermore, collapse does not include or mean substantial structural impairment or imminent collapse.

Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, fuel oil tank, septic tank, cistern or similar system, foundation, retaining wall, bulkhead, pier, wharf or dock is not included, unless the loss is a direct result of the collapse of a **building structure** or part of a **building structure** that is a **sudden and accidental** direct physical loss caused by one or more of the following:
a) a loss **we** cover under **Section I, Losses We Cover Under Coverages A, B and C**;
b) weight of persons, animals, equipment or contents;
c) weight of rain, snow or ice which collects on a roof; or



d) defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

This coverage does not increase the limit of liability applying to the covered property.

11. **Lock Replacement**
When a key to a lock is stolen as part of a covered theft loss, **we** will pay, under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**, as applicable, up to $500 for the reasonable expenses **you** incur to replace or re-key exterior door locks at the **residence premises** with locks or cylinders of like kind and quality.

This coverage does not increase the limit of liability that applies to the covered property.

12. **Foundation Water Damage**
In the event of the **sudden and accidental** discharge or overflow of water or steam from within a plumbing, heating or air conditioning system, household appliance, fire protection or sprinkler system where the source of the discharge or overflow is located within or below the slab or foundation of the **dwelling**, **we** will pay up to the amount shown on the Policy Declarations for:
a) tearing out and replacing any part of the **dwelling** necessary to access, repair or replace that part of such system, and
b) loss to property covered under **Dwelling Protection– Coverage A** and **Personal Property Protection– Coverage C** that results from the **sudden and accidental** escape of water or steam from within a plumbing, heating or air conditioning system, household appliance, fire protection or sprinkler system located within the slab or foundation of the **dwelling**.

This coverage does not include damage to the system from which the water or steam escaped.

## Section I Conditions

1. **Deductible**
**We** will pay when a covered loss exceeds the applicable deductible shown on the Policy Declarations. **We** will then pay only the excess amount, unless **we** have indicated otherwise in this policy.

2. **Insurable Interest And Our Liability**
In the event of a covered loss, **we** will not pay for more than an **insured person's** insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

**Section 862.053 Policy A Liquidated Demand.** A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property.

3. **What You Must Do After A Loss**
In the event of a loss to any property that may be covered by this policy, **you** must:
a) promptly give **us** or **our** agent notice. Report any theft to the police as soon as possible.
b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.
c) separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.
d) give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.
e) produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.
f) as often as **we** reasonably require:
1) show **us** the damaged property. **We** have a right to reasonable and safe opportunities to view and inspect the loss as often as necessary, unimpeded by actions of **you** or others, including, but not limited to, civil, governmental or military authorities, that prevent **us** from viewing and inspecting the loss. **We** may require **you** to accompany **us** when **we** conduct these activities.
2) at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.
3) produce representatives, employees, members of the **insured person's** household or others to

House & Home Policy
Policy number:



the extent it is within the **insured person's** power to do so; and

g) within 91 days after the loss, give **us** a signed, sworn proof of the loss. This statement must include the following information:

1) the date, time, location and cause of loss;
2) the interest **insured persons** and others have in the property, including any encumbrances;
3) the actual cash value and amount of loss for each item damaged, destroyed or stolen;
4) any other insurance that may cover the loss;
5) any changes in title, use, occupancy or possession of the property that have occurred during the policy period; and
6) at **our** request, the specifications of any damaged **building structure** or other structure.

**We** have no duty to provide coverage under this section if **you**, an **insured person**, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to **us**.

4. **Our Duties After Loss**

a) Within 15 days after **we** receive **your** written notice of claim, **we** must:

1) acknowledge receipt of the claim. If **our** acknowledgement of the claim is not in writing, **we** will keep a record of the date, method and content of **our** acknowledgment;
2) begin any investigation of the claim; and
3) specify the information **you** must provide in accordance with **Section I**, **Conditions** item 3 "What You Must Do After A Loss."

We may request more information, if during the investigation of the claim such additional information is necessary.

b) After **we** receive the information **we** request, **we** must notify **you** in writing whether the claim will be paid or has been denied or whether more information is needed:

1) within 15 **business days**; or
2) within 30 days if **we** have reason to believe the loss resulted from arson.

c) If **we** do not approve payment of **your** claim or require more time for processing **your** claim, **we** must:

1) give the reasons for denying **your** claim; or

2) give the reasons **we** require more time to process **your** claim. But, **we** must either approve or deny **your** claim within 45 days after requesting more time.

5. **Our Settlement Options**

In the event of a covered loss, **we** have the option to:

a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or

b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5, "How We Pay For A Loss."

Within 30 days after **we** receive **your** signed, sworn proof of loss, **we** will notify **you** of the option or options **we** intend to exercise.

6. **How We Pay For A Loss**

Under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** and **Personal Property Protection–Coverage C**, payment for covered loss will be by one or more of the following methods:

a) Special Payment. At **our** option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:

1) the whole amount of loss for property covered under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B**, without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building Structure Reimbursement provision; or

2) the whole amount of loss for property covered under **Personal Property Protection–Coverage C**, without deduction for depreciation, is less than $2,500, **your** Policy Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

b) Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the Limit Of Liability shown on the Policy Declarations for the coverage that applies to the



damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

**You** may make claim for additional payment as described in paragraph c) and paragraph d) below if applicable, if **you** repair or replace the damaged, destroyed or stolen covered property within 365 days after the loss unless **you** request in writing that this time limit be extended for an additional 180 days.

c)  Building Structure Reimbursement. Under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 365 days after the loss unless **you** request in writing that this time limit be extended for an additional 180 days.

This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss. This additional payment shall not include any amounts which may be paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**, and shall not be payable for any losses excluded in **Section I— Your Property**, under **Losses We Do Not Cover Under Coverages A, B, And C,** paragraph B.

Building Structure Reimbursement will not exceed the smallest of the following amounts:
1)  the replacement cost of the part(s) of the **building structure(s)** for equivalent construction for similar use on the same **residence premises**;
2)  the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for similar use on the same **residence premises**; or
3)  the Limit Of Liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**, regardless of the number of **building structures**

and structures other than **building structures** involved in the loss.

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:
1)  property covered under **Personal Property Protection–Coverage C**;
2)  property covered under **Other Structures Protection–Coverage B** that is not a **building structure**;
3)  wall-to-wall carpeting, fences, awnings and outdoor antennas, whether or not fastened to a **building structure**;
4)  **roof surface(s)** when the loss is caused by **windstorm** or hail; or
5)  land.

Payment under a), b) or c) above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, relocation or demolition of **building structures** or other structures.

d)  Personal Property Reimbursement. Under **Personal Property Protection–Coverage C**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 365 days of the loss.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:

House & Home Policy
Policy number:



1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;
2) the cost of repair or restoration; or
3) the Limit Of Liability shown on the Policy Declarations for **Personal Property Protection– Coverage C**, or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

Personal Property Reimbursement will not apply to:
1) property insured under **Dwelling Protection– Coverage A** and **Other Structures Protection– Coverage B**, except wall-to-wall carpeting;
2) antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced;
3) articles whose age or history contribute substantially to their value. This includes, but is not limited to, memorabilia, souvenirs and collector's items;
4) property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss; or
5) motorized land vehicles used solely for the service of the **insured premises** and not licensed for use on public roads. This does not include motorized land vehicles designed for assisting the disabled and not licensed for use on public roads.

7. **Our Settlement Of Loss**
**We** will settle any covered loss with **you** unless some other person or entity is named in the policy. **We** will settle within 5 **business days** after the amount of loss is finally determined. This amount may be determined by an agreement between **you** and **us**, an appraisal award or a court judgment.

If **we** notify **you** that **we** will pay **your** claim, or part of **your** claim, **we** must pay within 5 **business days** after **we** notify **you**. If payment of **your** claim or part of **your** claim requires the performance of an act by **you**, **we** must pay within 5 **business days** after the date **you** perform the act.

8. **Appraisal**
If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and to **us**, the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss.

Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

9. **Abandoned Property**
**We** are not obligated to accept any property or responsibility for any property abandoned by an **insured person**.

10. **Permission Granted To You**
a) The **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy. A **building structure** under construction is not considered vacant.
b) **You** may make alterations, additions or repairs, and **you** may complete structures under construction.

11. **Our Rights To Recover Payment**
When **we** pay for any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them. **You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

12. **Our Rights To Obtain Salvage**
**We** have the option to take all or any part of the damaged or destroyed covered property upon



replacement by **us** or payment of the agreed or appraised value.

**We** will notify **you** of **our** intent to exercise this option within 30 days after **we** receive **your** signed, sworn proof of loss. If no signed, sworn proof of loss is requested by **us**, **we** will notify **you** of **our** intent to exercise this option within 60 days after the date **you** report the loss to **us**.

When **we** settle any loss caused by theft or disappearance, **we** have the right to obtain all or part of any property which may be recovered. An **insured person** must protect this right and inform **us** of any property recovered. **We** will inform **you** of **our** intent to exercise this right within 10 days of **your** notice of recovery to **us**.

13. **Action Against Us**
No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which **Section I Conditions** applies, unless:
a) there has been full compliance with all policy terms; and
b) the action is commenced within two years and one day from the date the cause of action first accrues.

14. **Loss To A Pair Or Set**
If there is a covered loss to a pair or set, **we** may:
a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or
b) pay the difference between the actual cash value of the pair or set before and after the loss.

15. **Glass Replacement**
Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

16. **No Benefit To Bailee**
This insurance will not benefit any person or organization that may be caring for or handling **your** property for a fee.

17. **Other Insurance**
If both this insurance and other insurance apply to a loss, **we** will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

18. **Property Insurance Adjustment**
At each policy renewal, **we** may increase the Limit Of Liability shown on the Policy Declarations for **Dwelling Protection–Coverage A** to reflect the minimum amount of insurance coverage **we** are willing to issue for the succeeding policy period under **Dwelling Protection–Coverage A** for **your** dwelling and other property **we** cover under **Dwelling Protection–Coverage A**.

Any adjustment in the limit of liability for **Dwelling Protection–Coverage A** will result in an adjustment in the limit of liability for **Other Structures Protection–Coverage B** and **Personal Property Protection–Coverage C** in accordance with **our** manual of Rules and Rates.

Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by **us** at the time a change in limits is made.

**We** will not reduce the Limit Of Liability shown on the Policy Declarations without **your** consent. **You** agree that it is **your** responsibility to ensure that each of the Limits Of Liability shown on the Policy Declarations are appropriate for **your** insurance needs. If **you** want to increase or decrease any of the Limits Of Liability shown on the Policy Declarations, **you** must contact **us** to request such a change.

19. **Mortgagee**
A covered loss will be payable to the mortgagee(s) named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

**We** will:
a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
b) give the mortgagee at least 10 days notice if **we** cancel this policy.

The mortgagee will:
a) furnish proof of loss within 91 days after notice of the loss if an **insured person** fails to do so;

House & Home Policy
Policy number:



b) pay upon demand any premium due if an **insured person** fails to do so;

c) notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;

d) give **us** the mortgagee's right of recovery against any party liable for loss; and

e) after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

If property covered under **Dwelling Protection-Coverage A** is foreclosed upon under a deed of trust, the mortgagee of that property may cancel this policy at any time by notifying **us** of the date cancellation is to take effect. **We** will send the refund, if any, to the mortgagee.

The mortgagee must credit the refund against any deficiency owed by **you** and return any amount not so credited to **you**.

This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

20. **Catastrophe Claims**
If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown under the **What You Must Do After A Loss**, **Our Duties After Loss** and **Our Settlement Of Loss** conditions is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:
a) is declared a disaster under the Texas Disaster Act of 1975; or
b) is determined to be a catastrophe by the Texas Department of Insurance.

21. **Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**
In the event of a covered water loss under **Dwelling Protection-Coverage A**, **Other Structures Protection-Coverage B** or **Personal Property Protection-Coverage C**, **we** will pay up to $5,000 for mold, fungus, wet rot or dry rot or other microbes **remediation**.

**Remediation** means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property **we** cover under **Dwelling Protection-**

**Coverage A**, **Other Structures Protection-Coverage B** or **Personal Property Protection-Coverage C** damaged by a covered water loss, including payment for any reasonable increase in living expenses necessary to maintain **your** normal standard of living if mold, fungus, wet rot or dry rot makes **your residence premises** uninhabitable. **Remediation** also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.

This Condition does not increase the limits of liability under **Dwelling Protection-Coverage A**, **Other Structures Protection-Coverage B** or **Personal Property Protection-Coverage C**.

# Section II—Family Liability And Guest Medical Protection

## Family Liability Protection–Coverage X

### Losses We Cover Under Coverage X:
Subject to the terms, conditions and limitations of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

### Losses We Do Not Cover Under Coverage X:
1. **We** do not cover **bodily injury** or **property damage** which is caused intentionally by or at the direction of an **insured person**.

   **We** will not apply this exclusion to an innocent spouse or **insured person** who did not cooperate in, or contribute to, such **bodily injury** or **property damage**.

2. **We** do not cover **bodily injury** to an **insured person** or **property damage** to property owned by an **insured person** whenever any benefit of this coverage would accrue directly or indirectly to an **insured person**.

3. **We** do not cover **bodily injury** to any person eligible to receive any benefits required to be provided, or



voluntarily provided, by an **insured person** under any workers' compensation, non-occupational disability or occupational disease law.

4.   **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

**We** will not apply this exclusion to **bodily injury** to a **residence employee**.

5.   **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. **We** will not apply this exclusion to:
a)   a motor vehicle in dead storage or used exclusively on an **insured premises**;
b)   any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
c)   a motorized wheelchair;
d)   a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
e)   a golf cart owned by an **insured person** when used for golfing purposes;
f)   a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
g)   lawn or garden implements under 40 horsepower; or
h)   **bodily injury** to a **residence employee**.

6.   **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
a)   has inboard or inboard-outboard motor power of more than 50 horsepower;
b)   is a sailing vessel 26 feet or more in length;
c)   is powered by one or more outboard motors with more than 25 total horsepower;
d)   is designated as an airboat, air cushion, or similar type of watercraft; or
e)   is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

**We** will not apply this exclusion to **bodily injury** to a **residence employee**.

7.   **We** do not cover **bodily injury** or **property damage** arising out of:
a)   the negligent supervision by any **insured person** of any person; or
b)   any liability statutorily imposed on any **insured person**;

arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, hovercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8.   **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

**We** will not apply this exclusion to **bodily injury** which results from such discharge, dispersal, release or escape, if the discharge, dispersal, release or escape is **sudden and accidental**.

9.   **We** do not cover any **property damage** which results in any manner from vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

10.  **We** do not cover any liability imposed upon any **insured person** by any civil, governmental or military authority for **bodily injury** or **property damage** which results in any manner from vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

11.  **We** do not cover **bodily injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person**.

12.  **We** do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person**.

**We** will not apply this exclusion to **bodily injury** or **property damage** arising from the occasional or part-

House & Home Policy
Policy number:



time **business** activities of an **insured person** who is a student under 21 years of age who is self-employed and has no employees.

13. **We** do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

14. **We** do not cover **property damage** to property rented to, occupied or used by, or in the care of, an **insured person**. **We** will not apply this exclusion if the **property damage** is caused by fire, explosion or smoke.

15. **We** do not cover any liability an **insured person** assumes arising out of any contract or agreement.

16. **We** do not cover **bodily injury** or **property damage** caused by:
    a) war, whether declared or undeclared;
    b) warlike acts;
    c) invasion;
    d) insurrection;
    e) rebellion;
    f) revolution;
    g) civil war;
    h) usurped power;
    i) destruction for a military purpose; or
    j) action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

17. **We** do not cover **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or other microbes.

18. **We** do not cover any liability imposed upon any **insured person** by any civil, governmental or military authority for **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or other microbes.

19. **We** do not cover any loss, cost or expense arising out of any request, demand, or order that any **insured person** test for, monitor, clean up, remove, contain, treat, detoxify, decontaminate, or neutralize, or in any way respond to or assess the effects of any type of vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

20. **We** do not cover **bodily injury** or **property damage** arising out of nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. **Bodily injury** or **property damage** arising out of a nuclear hazard is not considered as arising from fire, explosion or smoke.

21. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of hovercrafts. **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

## Guest Medical Protection–Coverage Y

### Losses We Cover Under Coverage Y:

**We** will pay the reasonable expenses incurred for necessary medical, surgical, X-ray and dental services, ambulance, hospital, licensed nursing and funeral services, and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:
1. on the **insured premises** with the permission of an **insured person**; or

2. off the **insured premises**, if the **bodily injury**:
   a) arises out of a condition on the **insured premises** or immediately adjoining ways;
   b) is caused by the activities of an **insured person** or a **residence employee**;
   c) is caused by an animal owned by or in the care of an **insured person**; or
   d) is sustained by a **residence employee**.

### Losses We Do Not Cover Under Coverage Y:

1. **We** do not cover **bodily injury** which is caused intentionally by or at the direction of an **insured person**.

    **We** will not apply this exclusion to an innocent spouse or **insured person** who did not cooperate in, or contribute to, such **bodily injury**.



2. **We** do not cover **bodily injury** to any **insured person** or regular resident of the **insured premises**. **We** will not apply this exclusion to a **residence employee**.

3. **We** do not cover **bodily injury** to any person eligible to receive any benefits required to be provided, or voluntarily provided, under any workers' compensation, non-occupational disability or occupational disease law.

4. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

   **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

5. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. **We** will not apply this exclusion to:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
   c) a motorized wheelchair;
   d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
   e) a golf cart owned by an **insured person** when used for golfing purposes;
   f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
   g) lawn or garden implements under 40 horsepower; or
   h) **bodily injury** to a **residence employee**.

6. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
   a) has inboard or inboard-outboard motor power of more than 50 horsepower;
   b) is a sailing vessel 26 feet or more in length;
   c) is powered by one or more outboard motors with more than 25 total horsepower;
   d) is designated as an airboat, air cushion, or similar type of watercraft; or
   e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be

operated by a person or persons sitting, standing or kneeling on the craft.

   **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

7. **We** do not cover **bodily injury** arising out of:
   a) the negligent supervision by any **insured person** of any person; or
   b) any liability statutorily imposed on any **insured person**;

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, hovercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8. **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

   **We** will not apply this exclusion to **bodily injury** which results from such discharge, dispersal, release or escape, if the discharge, dispersal, release or escape is **sudden and accidental**.

9. **We** do not cover **bodily injury** arising out of the rendering of, or failure to render, professional services by an **insured person**.

10. **We** do not cover **bodily injury** arising out of the past or present **business** activities of an **insured person**.

    **We** will not apply this exclusion to **bodily injury** arising from the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age who is self-employed and has no employees.

11. **We** do not cover **bodily injury** to any person on the **insured premises** because of a **business** activity or professional service conducted there.

12. **We** do not cover **bodily injury** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

13. **We** do not cover **bodily injury** caused by:

House & Home Policy
Policy number:



a) war, whether declared or undeclared;
b) warlike acts;
c) invasion;
d) insurrection;
e) rebellion;
f) revolution;
g) civil war;
h) usurped power;
i) destruction for a military purpose; or
j) action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

14. **We** do not cover **bodily injury** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or other microbes.

15. **We** do not cover **bodily injury** arising out of nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. **Bodily injury** arising out of a nuclear hazard is not considered as arising from fire, explosion or smoke

16. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of hovercrafts. **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

## Section II Additional Protection

**We** will pay, in addition to the limits of liability:
1. **Claim Expenses**
   **We** will pay:
   a) all costs **we** incur in the settlement of any claim or the defense of any suit against an **insured person**;
   b) interest accruing on damages awarded until such time as **we** have paid, formally offered, or deposited in court the amount for which **we** are liable under this policy; interest will be paid only on damages which do not exceed **our** limits of liability;
   c) premiums on bonds required in any suit **we** defend; **we** will not pay bond premiums in an amount that is more than **our** limit of liability; **we** have no obligation to apply for or furnish bonds;
   d) up to $150 per day for loss of wages and salary, when **we** ask **you** to attend trials and hearings;
   e) any other reasonable expenses incurred by an **insured person** at **our** request.

2. **Emergency First Aid**
   **We** will pay reasonable expenses incurred by an **insured person** for first aid to other persons at the time of an accident involving **bodily injury** covered under this policy.

3. **Damage To Property Of Others**
   At **your** request, **we** will pay up to $1,000 each time an **insured person** causes **property damage** to someone else's property. At **our** option, **we** will pay the cost to either repair or replace the property damaged by an **insured person**, without deduction for depreciation.

   **We** will not pay for **property damage**:
   a) to property covered under **Section I** of this policy;
   b) to property intentionally damaged by an **insured person** who has attained the age of 13;
   c) to property owned by or rented to an **insured person**, any tenant of an **insured person**, or any resident in **your** household; or
   d) arising out of:
      1) past or present **business** activities;
      2) any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or
      3) the ownership or use of a motorized land vehicle, trailer, aircraft, hovercraft or watercraft.

## Section II Conditions

1. **What You Must Do After A Loss**
   In the event of **bodily injury** or **property damage**, **you** must do the following:
   a) Promptly notify **us** or **our** agent stating:
      1) **your** name and policy number;
      2) the date, the place and the circumstances of the loss;
      3) the name and address of anyone who might have a claim against an **insured person**;
      4) the names and addresses of any witnesses.
   b) Promptly send **us** any legal papers relating to the accident.
   c) At **our** request, an **insured person** will:
      1) cooperate with **us** and assist **us** in any matter concerning a claim or suit;
      2) help **us** enforce any right of recovery against any person or organization who may be liable to an **insured person**;
      3) attend any hearing or trial.



d) Under the **Damage To Property Of Others** protection, give **us** a sworn statement of the loss. This must be made within 91 days after the date of loss. Also, an **insured person** must be prepared to show **us** any damaged property under that person's control.

Any **insured person** will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

2.  **What An Injured Person Must Do—Guest Medical Protection–Coverage Y**
    If someone is injured, that person, or someone acting for that person, must do the following:
    a) Promptly give **us** written proof of the loss. If **we** request, this must be done under oath.
    b) Give **us** written authorization to obtain copies of all medical records and reports.
    c) Permit doctors **we** select to examine the injured person as often as **we** may reasonably require.

3.  **Our Payment Of Loss—Guest Medical Protection– Coverage Y**
    **We** may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by **us** or an **insured person**.

4.  **Our Limits Of Liability**
    Regardless of the number of **insured persons**, injured persons, claims, claimants or policies involved, **our** total liability under **Family Liability Protection–Coverage X** for damages resulting from one **occurrence** will not exceed the Limit Of Liability shown on the Policy Declarations. All **bodily injury** and **property damage** resulting from continuous or repeated exposure to the same general conditions is considered the result of one **occurrence**.

    **Our** total liability under **Guest Medical Protection– Coverage Y** for all medical expenses payable for **bodily injury**, to any one person, shall not exceed the "each person" Limit Of Liability shown on the Policy Declarations.

5.  **Bankruptcy**
    **We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured person**.

6.  **Our Rights To Recover Payment—Family Liability Protection–Coverage X**
    When **we** pay any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them.

7.  **Action Against Us**
    a) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, unless there has been full compliance with all policy terms.
    b) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Family Liability Protection–Coverage X**, unless the obligation of an **insured person** to pay has been finally determined either by judgment against the **insured person** after actual trial, or by written agreement of the **insured person**, injured person and **us**, and the action against **us** is commenced within two years and one day from the date the cause of action first accrues.
    c) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Guest Medical Protection–Coverage Y**, unless such action is commenced within two years and one day from the date the cause of action first accrues.
    d) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Section II Additional Protection**, unless such action is commenced within two years and one day from the date the cause of action first accrues.
    e) No one shall have any right to make **us** a party to an action to determine the liability of an **insured person**.

8.  **Other Insurance—Family Liability Protection– Coverage X**
    This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

9.  **Notice Of Settlement Of Liability Claim**
    a) **We** will notify the **insured person** in writing of any initial offer to compromise or settle a claim against the **insured person** under the liability section of this

House & Home Policy
Policy number:



policy. We will give the **insured person** notice within 10 days after the date the offer is made.

b) **We** will notify the **insured person** in writing of any settlement of a claim against the **insured person** under the liability section of this policy. **We** will give the **insured person** notice within 30 days after the date of the settlement.

# Section III—Optional Protection

## Optional Coverages

The following Optional Coverages may supplement coverages found in **Section I** or **Section II** and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms of the specific Optional Coverage.

1. **Building Codes–Coverage BC**
   **We** will pay up to the Limit Of Liability shown on the Policy Declarations for Building Codes coverage to comply with local building codes after covered loss to the **dwelling** or when repair or replacement results in increased cost due to the enforcement of any building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, placement or demolition of the **dwelling**.

2. **Increased Coverage On Business Property–Coverage BP**
   The limitation on **business** property located on the **residence premises**, under **Personal Property Protection–Coverage C**, is increased to the amount shown on the Policy Declarations. This increased coverage includes property held as samples or for sale or delivery after sale, while the property is on the **residence premises**.

3. **Fire Department Charges–Coverage F**
   The $500 limit applying to the fire department service charges under **Additional Protection** is increased to the amount shown on the Policy Declarations.

4. **Loss Assessments–Coverage G**
   If **your residence premises** includes a **building structure** which is constructed in common with one or more similar buildings, and **you** are a member of, and subject to the rules of, an association governing the areas held in common by all building owners as members of the association, the **insured premises** means the **building structure** occupied exclusively by **your** household as a

private residence, including the grounds, related structures and private approaches to them.

**We** will pay **your** share of any special assessments charged against all building owners by the association up to the Limit Of Liability shown on the Policy Declarations, when the assessment is made as a result of:

a) **sudden and accidental** direct physical loss to the property held in common by all building owners caused by a loss **we** cover under **Section I** of this policy; or

b) **bodily injury** or **property damage** covered under **Section II** of this policy.

Any reduction or elimination of payments for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

**We** will pay only when the assessment levied against the **insured person**, as a result of any one loss, for **bodily injury** or **property damage** exceeds $500 and then only for the amount of such excess. This coverage is not subject to any deductible applying to **Section I** of this policy.

In the event of an assessment, this coverage is subject to all the exclusions applicable to **Sections I** and **II** of this policy and the **Section I** and **II Conditions**, except as otherwise noted.

This coverage is excess over any insurance collectible under any policy or policies covering the association of building owners.

5. **Extended Coverage On Jewelry, Watches And Furs–Coverage J**
   **Personal Property Protection–Coverage C** is extended to pay for **sudden and accidental** direct physical loss to the following property, subject to the provisions in this coverage:

a) jewelry, watches, gems, precious and semi-precious stones, gold, platinum; and

b) furs, including any item containing fur which represents its principal value.

The total amount of coverage and per item limit is shown on the Policy Declarations. This amount is not in addition to the amount of insurance applying to **Personal Property Protection–Coverage C**. However, in no event



will coverage be less than would have applied in the absence of **Coverage J**.

The following exclusions contained in **Losses We Do Not Cover Under Coverages A, B and C** apply to the coverage afforded under this **Coverage J**: items A.7, A.8, D.1 and D.3. In addition, **we** do not cover any loss consisting of or caused by one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.
a)   wear and tear;
b)   gradual deterioration;
c)   inherent vice; or
d)   insects or vermin.

Any deductible shown on the Policy Declarations applicable to **Personal Property Protection–Coverage C**, also applies to a loss under this coverage.

6.   **Increased Coverage On Theft Of Silverware– Coverage ST**
The $2,500 limitation on theft of goldware, silverware, pewterware and platinumware under **Personal Property Protection–Coverage C** is increased to the amount shown on the Policy Declarations.

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Water Back-Up Endorsement – AVP98-1

For an additional premium and when **your** Policy Declarations indicates that **Water Back-Up** applies, the following coverage is added:

**Water Back-Up–Coverage WB**
**We** will cover **sudden and accidental** direct physical loss to property **we** cover under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** and **Personal Property Protection–Coverage C** caused by water or any other substances within **your dwelling** or other **building structures** on the **residence premises** which:
a) backs up through sewers or drains located within the **residence premises**; or
b) overflows from a sump pump, sump pump well or other system located within the **residence premises** designed for the removal of subsurface water which is drained from a foundation area of a structure.

The limit of liability for **Water Back-Up–Coverage WB** is shown on **your** Policy Declarations. This is the total amount for any one loss available under **Water Back-Up–Coverage WB** including amounts paid or payable under **Water Back-Up–Coverage WB Additional Protection**. Once this limit of liability for **Water Back-Up–Coverage WB** is exhausted, no further amounts will be available.

The insurance provided by **Water Back-Up–Coverage WB** shall be excess over any other insurance that also applies to a loss covered under this coverage.

This coverage does not apply if the loss occurs or is in progress within the first ten days that the Water Back-Up Endorsement is initially bound except if the Water Back-Up Endorsement is bound at the original inception of **your** policy.

If **you** increase the limit and/or lower the deductible for **your** existing Water Back-Up Endorsement, **your** coverage will be limited to the prior limit and/or deductible for the first ten days after the new limit and/or deductible is bound to **your** policy.

The deductible for **Water Back-Up–Coverage WB** will be shown on **your** Policy Declarations. The deductible for **Water Back-Up–Coverage WB** will apply to a loss covered under **Water Back-Up–Coverage WB**.

For the purposes of this endorsement only, **Section I Additional Protection** is replaced with the following:

- **Water Back-Up–Coverage WB Additional Protection**
  The coverage afforded under **Water Back-Up–Coverage WB Additional Protection** does not increase the limit of **Water Back-Up–Coverage WB**.

- **Additional Living Expense**
  **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss covered under **Water Back-Up–Coverage WB** makes **your residence premises** uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Water Loss Covered Under Water Back-Up–Coverage WB**.

  Payment for additional living expense as a result of a direct physical loss covered under **Water Back-Up–Coverage WB** will be limited to the least of the following:
  a) the time period required to repair or replace the property **we** cover, using due diligence and dispatch;
  b) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere; or
  c) 12 months.

  These periods of time are not limited by the termination of this policy.

  **We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

- **Debris Removal**
  **We** will pay reasonable expenses **you** incur to remove debris of covered property damaged by a loss **we** cover under **Water Back-Up–Coverage WB**.

- **Temporary Repairs After A Loss**
  **We** will reimburse **you** for the reasonable and necessary cost **you** incur for temporary repairs to protect covered property from further imminent covered loss following a loss **we** cover under **Water Back-Up–Coverage WB**. This coverage does not increase the limit of liability applying to the property being repaired.

Policy endorsement



In **Section I Conditions**, under item 19, **Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**, the following provision is added:

> **Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Water Loss Covered Under Water Back-Up-Coverage WB**
> In the event of a water loss covered under **Water Back-Up-Coverage WB**, **we** will pay up to $5,000 for mold, fungus, wet rot or dry rot **remediation**.
>
> **Remediation** means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property **we** cover under **Dwelling Protection-Coverage A**, **Other Structures Protection-Coverage B** or **Personal Property Protection-Coverage C** damaged by a water loss covered under **Water Back-Up-Coverage WB**, including payment for any reasonable increase in living expenses necessary to maintain **your** normal standard of living if mold, fungus, wet rot or dry rot makes **your residence premises** uninhabitable. **Remediation** also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.
>
> Payments under **Section I Conditions**, **Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Water Loss Covered Under Water Back-Up-Coverage WB** will not reduce amounts paid or payable under **Water Back-Up-Coverage WB**.

All other policy terms and conditions apply.

**Policy Endorsement**

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Residence Glass Coverage – AVP99

**We** will pay for **sudden and accidental** direct physical loss to residence glass caused by breakage of or by chemicals applied to such glass if permanently attached to the **dwelling** or other **building structures** located at the **residence premises**. **We** will also pay for storm windows and doors located at the **residence premises** which are not permanently attached. **Our** payment will include the cost of making temporary repairs, damage to encasing frames and removing or replacing obstructions because of a covered loss to glass.

**Limit Of Liability For Residence Glass Coverage**
**We** will pay up to $100 resulting from any one loss for the items listed in a) through i) below:
a)  multiple plate insulating units;
b)  radiant heating panels;
c)  conservatory or greenhouse glass;
d)  chandeliers or light fixtures;
e)  jalousies, louvers or shutter;
f)  Venetian type doors or windows;
g)  stained or leaded glass; or
h)  glass bricks, shingles or other structural glass; or
i)  any pane or plate of glass not described in a) through h) above.

Under **Residence Glass Coverage**, **we** do not cover any loss which consists of, is caused by, or would not have occurred but for, one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of: a) the cause or source of the excluded event, peril or condition; b) any other causes contributing concurrently or in any sequence with the excluded event, peril or condition to produce the loss; or c) whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

- Nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss which consists of, is caused by, or would not have occurred but for, the nuclear hazard is not considered loss by fire, explosion or smoke.

- a)  War, whether declared or undeclared;
  b)  warlike acts;
  c)  invasion;
  d)  insurrection;
  e)  rebellion;
  f)  revolution;
  g)  civil war;
  h)  usurped power;
  i)  destruction for a military purpose; or
  j)  action taken by civil, government or military authority to hinder or defend against an actual or impending enemy act.

**Applicable Policy Provisions**
In addition to the provisions specific to this coverage form, the following policy parts apply:
1.  Under the **General** section:
    a)  **Definitions Used In This Policy**
    b)  **Coverage Changes**
    c)  **Cancellation**
    d)  **Action Against Us**
    e)  **Arbitration**

2.  Under **Section I Conditions**:
    a)  **What You Must Do After A Loss**
    b)  **Our Rights To Recover Payment**
    c)  **Action Against Us**

No deductible applies to this protection.

**Policy Endorsement**



*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Roof Surfaces Extended Coverage Endorsement – AVP144-1

In **Section I Conditions**, item 6, **How We Pay For A Loss**, provision c) (titled "Building Structure Reimbursement.") the sixth paragraph is replaced by the following:

Building Structure Reimbursement will not apply to:
1) property covered under **Personal Property Protection–Coverage C**;
2) property covered under **Other Structures Protection–Coverage B** that is not a **building structure**;
3) wall-to-wall carpeting, fences, awnings and outdoor antennas, whether or not fastened to a **building structure**; or
4) land.


All other policy terms and conditions apply.

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Texas Amendatory Endorsement – AVP345

In **Section I Conditions**, the following changes are made:

A.   Item 3, **What You Must Do After A Loss**, is replaced by the following:

   3.   **What You Must Do After A Loss**
   In the event of a loss to any property that may be covered by this policy, **you** must:
   a)   promptly give **us** or **our** agent notice. Report any theft to the police as soon as possible.
   b)   protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.
   c)   separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.
   d)   give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.
   e)   produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.
   f)   as often as **we** reasonably require:
      1)   show **us** the damaged property. **We** have a right to reasonable and safe opportunities to view and inspect the loss as often as necessary, unimpeded by actions of **you** or others, including, but not limited to, civil, governmental or military authorities, that prevent **us** from viewing and inspecting the loss. **We** may require **you** to accompany **us** when **we** conduct these activities.
      2)   at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.

   3)   produce representatives, employees, members of the **insured person's** household or others to the extent it is within the **insured person's** power to do so; and
   g)   Upon **our** request, send to us your signed sworn proof of loss within 91 days of the date of **our** request. This statement must include the following information:
      1)   the date, time, location and cause of loss;
      2)   the interest **insured persons** and others have in the property, including any encumbrances;
      3)   any other insurance that may cover the loss;
      4)   any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
      5)   at **our** request, the specifications of any damaged **building structure** or other structure;
      6)   the estimated or actual cost to repair or replace the property stolen or damaged by the loss with materials of like kind and quality;
      7)   the amount **you** have actually spent to repair or replace the property stolen or damaged by the loss; and
      8)   in the event that **you** give **us** a signed proof of loss, and after submitting that to **us**, **you** determine that you want to include a claim for additional damage or loss, **you** must submit to **us** a supplemental proof of loss which identifies the amount of the additional loss for each item damaged or stolen.

   **We** have no duty to provide coverage under this section if **you**, an **insured person**, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to **us**.

B.   Item 8, **Appraisal**, is replaced by the following:

   8.   **Appraisal**
   If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party shall select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire then an umpire will be appointed in the following manner:

Policy endorsement



a) **You** or **we** will request the American Arbitration Association (AAA) to select an umpire at:

American Arbitration Association
Case Filing Services
Attn: Allstate Texas Appraisal
1101 Laurel Oak Road Ste 100
Voorhees, New Jersey 08043
Email: casefiling@adr.org
(with subject matter as "Allstate Texas Appraisal")

b) Only if AAA advises **you** and **us** in writing that it cannot appoint an umpire may **we** then jointly request a judge of a district court in the judicial district where the **residence premises** is located to select an umpire. A judge of a district court does not include a commissioner or a judge of a county court at law, or a justice court, a municipal court, a probate court, or of a commissioner's court.

The appraisers shall then determine the amount of the loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and **us**, the amount agreed upon shall be the amount of the loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of the loss. Each party will pay the appraiser it chooses, and equally bear expense for the umpire and all other appraisal expenses.

If the appraisal process is initiated, the appraisal award shall be binding on **you** and **us** concerning the amount of the loss. **We** reserve the right to deny the appraisal award in part or in its entirety based upon the lack of coverage under the policy or failure to satisfy policy terms.

C. Item 13, **Action Against Us**, is replaced by the following:

13. **Action Against Us**
No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which **Section I Conditions** applies, unless:
a) there has been full compliance with all policy terms; and

b) the action is commenced within two years and one day from the date the cause of action first accrues; and
c) in the event that **you** and **we** fail to agree on the amount of loss claimed by **you**, unless **you** have previously provided to **us** a signed sworn proof of loss, it is a condition under this **Action Against Us** provision that no later than 91 days prior to commencing any action against **us** that **we** receive from **you** a signed sworn proof of loss, which contains, to the best of **your** knowledge and belief, the following information:
   1) the date, time, location and cause of loss;
   2) the interest **insured persons** and others have in the property, including any encumbrances;
   3) any other insurance that may cover the loss;
   4) any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
   5) at **our** request, the specifications of any damaged **building structure** or other structure;
   6) the estimated or actual cost to repair or replace the property stolen or damaged by the loss with materials of like kind and quality;
   7) the amount you have actually spent to repair or replace the property stolen or damaged by the loss; and
   8) in the event that **you** give **us** a signed proof of loss, and after submitting that to **us**, **you** determine that **you** want to include a claim for additional damage or loss, **you** must submit to **us** a supplemental proof of loss which identifies the amount of the additional loss for each item damaged or stolen.
d) If after **we** receive **your** proof of loss as described in paragraph c) above, **you** and **we** are still not able to agree on the amount of loss, then either party may make a written demand for an appraisal, as described in **Section I Conditions, Appraisal**. If this demand for appraisal is made before an action is filed against us in a court of competent jurisdiction, then the appraisal must occur before a suit can be filed against **us**. If the demand for appraisal is made after an action has been filed against us in a court of competent jurisdiction, then the parties agree to ask the court to abate the further proceeding of that action until the appraisal is completed and a

determination of the amount of loss is made as described in **Section I Conditions, Appraisal**.

To initiate the appraisal process either party must provide written notice of the dispute to the other party and make a written demand for appraisal of the amount of loss.

The time limit stated in item 13. b) shall be suspended from the date of the first written demand for appraisal until the date of the appraisal award.

D.   Item 19, **Mortgagee**, is replaced by the following:

19.   **Mortgagee**
A covered loss will be payable to the mortgagee(s) named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

**We** will:
a)   protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
b)   give the mortgagee at least 10 days notice if **we** cancel the policy.

The mortgagee will:
a)   furnish proof of loss, upon our request, within 91 days after notice of the loss, if an **insured person** fails to do so;
b)   pay upon demand any premium due if an **insured person** fails to do so;
c)   notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;
d)   give **us** the mortgagees right of recovery against any party liable for loss; and
e)   after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

If property covered under **Dwelling Protection– Coverage A** is foreclosed upon under a deed of trust, the mortgagee of that property may cancel this policy at any time by notifying **us** of the date cancellation is to take effect. **We** will send the refund, if any, to the mortgagee.

The mortgagee must credit the refund against any deficiency owed by **you** and return any amount not credited to **you**.

This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

All other policy terms and conditions apply.

**Policy Endorsement**



*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Texas Amendatory Endorsement – AVP348

I.   In **Section I—Your Property**, under **Property We Cover Under Coverage C**, item 1 is replaced by the following:

1.   Personal property owned or used by an **insured person** anywhere in the world. When personal property is located away from the **residence premises**, coverage is limited to 10% of **Personal Property Protection–Coverage C**.

     This limitation does not apply to personal property:
     a)   in a newly acquired principal residence for the 30 days immediately after **you** begin to move property there; or
     b)   in use at a temporary residence when a direct physical loss **we** cover makes **your residence premises** uninhabitable.

II.  In **Section I—Additional Protection**, **Additional Living Expense** is replaced by the following:

1.   **Additional Living Expense**
     **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** makes **your residence premises** uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions**, **Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**.

     Payment for additional living expense as a result of a covered loss under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** will be limited to the least of the following:
     a)   the time period required to repair or replace the property **we** cover, using due diligence and dispatch;

     b)   if **you** permanently relocate, the shortest time for **your** household to settle elsewhere; or
     c)   24 months.

     These periods of time are not limited by the termination of this policy.

     In no event shall **our** payment for additional living expenses exceed the Limit Of Liability shown on **your** Policy Declarations for Additional Living Expense.

     **We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

     No deductible applies to this protection.

All other policy terms and conditions apply.

 Gmail

**Fwd: Allstate Claim:0627894751 Proof of not receiving proper payment.**
1 message

Sun, Sep 10, 2023 at 5:59 PM

---------- Forwarded message ----------
From: <claims@claims.allstate.com>
Date: Mon, Feb 28, 2022, 5:35 PM
Subject: Allstate Claim:0627894751
To: <LISAJACKSON7117@gmail.com>

Good afternoon,

Thank you for letting me assist you during your claims process. Attached is an estimate from your recent supplement and I have issued payment based on the damages we can see at this time by Check as your debit card was declined. We can continue our supplement process in which we would need supporting photos from your contractor showing additional damages that we missed to claims@claims.allstate.com with your claim number in the subject line. Our supplement team will be in contact for handling once your claim opens up as a supplement.

I hope I was able to answer your questions during my recent handling of your claim. I shared a lot of information with you and realize it can be a lot to take in. Feel free to contact myself or Allstate is you need anything.

For your convenience, I am including the links previously sent to you. You may find them useful in providing information that may answer your questions and assist you in understanding your claim.

Catastrophe Property Claim Brochure: https://www.allstate.com/resources/Allstate/attachments/claims/Allstate-Catastrophe-brochure-309.pdf
An informative pamphlet containing a step by step explanation of the claims process, answers to the most frequently asked questions related to your claim, and our contact information.

MyAccount: http://www.allstate.com/support/overview.aspx
Create an online account to better manage your policy and the claims process 24/7. After registration, you will be able to view/update your policy, view the status of your claim, access repair information, send correspondence to your claim file in a secure environment, manage your contact preferences, and register for an electronic payment method that fits your needs, including Quick Card Pay , the fastest and easiest method to transfer claim payments to your debit card on qualifying claims.

Thank you for choosing Allstate for your insurance needs!

Kimberly Brooks
Allstate Vehicle and Property Insurance Company
Phone: (877) 224-4583 x1226834
Fax: (877) 292-9527
claims@claims.allstate.com

CONFIDENTIALITY/PRIVACY NOTICE: This e-mail, including any attachments, may contain personal, private and confidential information intended solely for use by the individual to whom it is addressed. If you are not the intended addressee, please be aware that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you received this message in error, please notify the sender immediately by e-mail and delete from your system.

**** Please do not delete your unique Conversation ID ****

*** Conversation ID: FR6630314e29ad40 ***

📄 **LISA_JACKSON6_Payment Tracker - Worksheet.20220228173504777.0.pdf**
34K



## National Catastrophe Team

P.O. Box 672041
Dallas, Texas 75267
Phone: (800) 547-8676
Fax:  (877) 292-9527

| | | | | |
|---|---|---|---|---|
| Insured: | LISA JACKSON | | Home: | (210) 771-7701 |
| Property: | 2818 BARREL OAK ST | | E-mail: | LISAJACKSON7117@GMAIL. |
| | SAN ANTONIO, TX 78231-1701 | | | COM |
| Home: | 2818 BARREL OAK ST | | | |
| | SAN ANTONIO, TX 78231-1701 | | | |

| | | | | |
|---|---|---|---|---|
| Claim Rep.: | Kimberly Brooks | | Business: | (800) 347-8517 |
| Business: | P.O Box 672041 | | E-mail: | claims@claims.allstate.com |
| | Dallas , TX 75267 | | | |

| | | | | |
|---|---|---|---|---|
| Estimator: | Kimberly Brooks | | | |
| Business: | P.O Box 672041 | | Business: | (800) 347-8517 |
| | Dallas , TX 75267 | | E-mail: | claims@claims.allstate.com |

**Claim Number:** 0627894751          **Policy Number:** 000844909761          **Type of Loss:** Windstorm

| | | | |
|---|---|---|---|
| Date Contacted: | 6/7/2021 7:40 PM | | |
| Date of Loss: | 5/11/2021 8:00 AM | Date Received: | 5/29/2021 2:47 PM |
| Date Inspected: | 6/7/2021 4:25 PM | Date Entered: | 6/7/2021 4:49 PM |
| Date Est. Completed: | 11/2/2021 5:53 PM | | |

| | |
|---|---|
| Price List: | TXSA8X_OCT21 |
| | Restoration/Service/Remodel |
| Estimate: | LISA_JACKSON6 |

Allstate is dedicated to providing you with outstanding service throughout the claim-handling process. If you have any questions regarding this estimate or if additional damage is found during the repair process, please contact us at (800) 347-8517. Please also contact us at (800) 347-8517 if there are differences or discrepancies between our estimate and the estimate provided by your repair person of choice. Please be prepared to provide us with your repair person's estimate and all information and documentation relating to any differences or discrepancies.

Thank you,

¬Kimberly Brooks



**National Catastrophe Team**

P.O. Box 672041
Dallas, Texas 75267
Phone: (800) 547-8676
Fax:  (877) 292-9527

# Payment Worksheet for AA-Dwelling

| | | | | | |
|---|---|---|---|---|---|
| **Insured:** | **LISA JACKSON** | **Home:** | **(210) 771-7701** | **Claim Number:** | **0627894751** |
| **Property:** | **2818 BARREL OAK ST** | | | **Policy Number:** | **000844909761** |
| | **SAN ANTONIO, TX 78231-1701** | | | | |

| | | |
|---|---|---|
| **Type of Loss:** | **Windstorm** | |
| **Date of Loss:** | **5/11/2021** | |

**Actual Cash Value Benefits:**

| | |
|---|---|
| Estimate Total............................................. | $19,912.20 |
| Taxes............................................................ | $652.61 |
| Replacement Cost........................................ | $20,564.81 |
| Less Recoverable Depreciation................... | -$4,910.83 |
| Actual Cash Value (ACV) Subtotal............ | $15,653.98 |
| Less Deductible............................................ | -$2,438.00 |
| Less Advance Payments.............................. | -$0.00 |
| Less ACV Payments Made........................... | -$11,410.03 |
| Estimated Remaining ACV Benefits.......... | $1,805.95 |

**Replacement Cost (RC) Benefits:**

| | |
|---|---|
| Estimated Total RC Benefits..................... | $4,910.83 |
| Less Deferred Payments Made.................. | -$0.00 |
| Less Deferred Payments Pending.............. | -$3,371.14 |
| Estimated Remaining RC Benefits............ | $471.74 |

**Summary of Payments:**

| | |
|---|---|
| Outstanding ACV Settlement.................... | $1,805.95 |
| Deferred Payments Pending..................... | $3,371.14 |
| Less Overpayment...................................... | -$0.00 |
| Total Payments Pending............................ | $5,177.09 |

**Claim Summary Payments:**

| | |
|---|---|
| Loss of Use................................................ | $0.00 |
| Coverage..................................................... | $11,410.03 |
| Total........................................................... | $11,410.03 |



**Allstate**
You're in good hands.

# National Catastrophe Team

P.O. Box 672041
Dallas, Texas 75267
Phone: (800) 547-8676
Fax:  (877) 292-9527

| Supp | Description | Qty | Estimate Amount | Taxes | Replacement Cost Total | Less Recoverable Depreciation | Actual Cash Value | Actual Replacement Cost w/Tax | RC Benefits Paid | Estimated Remaining | Pending Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Exterior - Roof - Dwelling** | | | | | | | | | | | |
| 2 | 1. Remove Laminated - High grade - comp. shingle rfg. - w/ felt | 36.20 SQ | $2,316.80 | $0.00 | $2,316.80 | -$0.00 | $2,316.80 | $2,316.80 | $0.00 | $0.00 | $0.00 |
| 2 | 2. Replace Roofing felt - 15 lb. | 36.20 SQ | $1,098.31 | $18.93 | $1,117.24 | -$558.63 | $558.61 | $1,035.63 | $0.00 | $0.00 | $477.02 |
| 2 | 17. Replace Laminated - High grd - comp. shingle rfg. - w/out felt | 41.00 SQ | $10,610.80 | $468.31 | $11,079.11 | -$2,769.78 | $8,309.33 | $10,239.67 | $0.00 | $0.00 | $1,930.34 |

Auto Calculated Waste: 13.3%, 4.80SQ
Options:  Valleys: Woven (full laced), Include eave starter course: Yes, Include rake starter course: No, Exposure: 5 5/8",
Bundle Rounding: 0.9%, 0.33SQ - (included in waste calculation above)

This line item includes an allowance of $104.08 per square, which reflects current market values in your area. Market prices were verified by Material Supply Warehouse (MSW). While you or your contractor are under no obligation to use this supplier, MSW allows you or your contractor of choice to have materials delivered to your home for installation. For more information on MSW, please visit www.materialsupplywarehouse.com, or contact them at info@materialsupplywarehouse.com, or 888-508-5009.

| Supp | Description | Qty | Estimate Amount | Taxes | Replacement Cost Total | Less Recoverable Depreciation | Actual Cash Value | Actual Replacement Cost w/Tax | Paid | Estimated Remaining | Pending Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 18. Replace Ridge cap - Standard profile - composition shingles | 126.38 LF | $664.76 | $25.86 | $690.62 | -$230.21 | $460.41 | $656.99 | $0.00 | $0.00 | $196.58 |

This line item includes an allowance of $83.49 per square, which reflects current market values in your area. Market prices were verified by Material Supply Warehouse (MSW). While you or your contractor are under no obligation to use this supplier, MSW allows you or your contractor of choice to have materials delivered to your home for installation. For more information on MSW, please visit www.materialsupplywarehouse.com, or contact them at info@materialsupplywarehouse.com, or 888-508-5009.

| Supp | Description | Qty | Estimate Amount | Taxes | Replacement Cost Total | Less Recoverable Depreciation | Actual Cash Value | Actual Replacement Cost w/Tax | Paid | Estimated Remaining | Pending Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 5. Replace Continuous ridge vent - shingle-over style | 106.38 LF | $908.49 | $30.72 | $939.21 | -$268.35 | $670.86 | $900.00 | $0.00 | $0.00 | $229.14 |
| 0 | 6. Replace Digital satellite system - Detach & reset | 1.00 EA | $32.15 | $0.00 | $32.15 | -$0.00 | $32.15 | $32.15 | $0.00 | $0.00 | $0.00 |
| 2 | 7. Replace Exhaust cap - through roof - 6" to 8" | 1.00 EA | $82.51 | $2.82 | $85.33 | -$24.38 | $60.95 | $81.77 | $0.00 | $0.00 | $20.82 |
| 2 | 8. Replace Roof vent - turbine type | 3.00 EA | $340.77 | $16.16 | $356.93 | -$142.77 | $214.16 | $336.07 | $0.00 | $0.00 | $121.91 |
| | *Hail damaged* | | | | | | | | | | |
| 2 | 9. Replace Flashing - pipe jack | 8.00 EA | $352.48 | $9.15 | $361.63 | -$103.32 | $258.31 | $346.54 | $0.00 | $0.00 | $88.23 |
| 2 | 10a. Remove Tarp - all-purpose poly - per sq ft (labor and material) | 24.00 SF | $1.68 | $0.00 | $1.68 | -$0.00 | $1.68 | $1.68 | $0.00 | $0.00 | $0.00 |
| 2 | 10b. Replace Tarp - all-purpose poly - per sq ft (labor and material) | 24.00 SF | $23.28 | $0.57 | $23.85 | -$0.00 | $23.85 | $23.85 | $0.00 | $0.00 | $0.00 |
| | *Allowance to tarp area of wind damaged shingle* | | | | | | | | | | |
| 2 | 37a. Remove Valley metal | 66.22 LF | $35.76 | $0.00 | $35.76 | -$0.00 | $35.76 | $58.98 | $0.00 | $0.00 | $0.00 |
| 2 | 37b. Replace Valley metal | 66.22 LF | $356.93 | $11.09 | $368.02 | -$105.15 | $262.87 | $581.65 | $0.00 | $0.00 | $105.15 |
| | Pictures provided of existing | | | | | | | | | | |
| 2 | 38a. Remove Drip edge | 316.65 LF | $95.00 | $0.00 | $95.00 | -$0.00 | $95.00 | $95.00 | $0.00 | $0.00 | $0.00 |
| 2 | 38b. Replace Drip edge | 316.65 LF | $801.12 | $26.65 | $827.77 | -$236.50 | $591.27 | $793.22 | $0.00 | $0.00 | $201.95 |



## National Catastrophe Team

P.O. Box 672041
Dallas, Texas 75267
Phone: (800) 547-8516
Fax:  (877) 292-9527

| Supp | Description | Qty | Estimate Amount | Taxes | Replacement Cost Total | Less Recoverable Depreciation | Actual Cash Value | Actual Replacement Cost w/Tax | RC Benefits Paid | RC Benefits Estimated Remaining | Pending Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | pictures provided of existing | | | | | | | | | | |
| **Subtotals** | | | **$17720.84** | **$610.26** | **$18331.10** | **-$4439.09** | **$13892.01** | **$17500.00** | **$0.00** | **$0.00** | **$3371.14** |
| | **Exterior  -  Left Elevation** | | | | | | | | | | |
| 2 | 39a. Remove Window screen, 1 - 9 SF | 1.00 EA | $3.40 | $0.00 | $3.40 | -$0.00 | $3.40 | | $0.00 | $0.00 | $0.00 |
| 2 | 39b. Replace Window screen, 1 - 9 SF | 1.00 EA | $35.43 | $2.59 | $38.02 | -$12.67 | $25.35 | | $0.00 | $12.67 | $0.00 |
| **Subtotals** | | | **$38.83** | **$2.59** | **$41.42** | **-$12.67** | **$28.75** | **$0.00** | **$0.00** | **$12.67** | **$0.00** |
| | **Exterior  -  Rear Elevation** | | | | | | | | | | |
| 2 | 28a. Remove Patio door screen, 48" wide | 1.00 EA | $4.54 | $0.00 | $4.54 | -$0.00 | $4.54 | | $0.00 | $0.00 | $0.00 |
| 2 | 28b. Replace Patio door screen, 48" wide | 1.00 EA | $88.60 | $6.97 | $95.57 | -$19.11 | $76.46 | | $0.00 | $19.11 | $0.00 |
| **Subtotals** | | | **$93.14** | **$6.97** | **$100.11** | **-$19.11** | **$81.00** | **$0.00** | **$0.00** | **$19.11** | **$0.00** |
| | **Exterior  -  Right Elevation** | | | | | | | | | | |
| 2 | 40a. Remove Window screen, 1 - 9 SF | 1.00 EA | $3.40 | $0.00 | $3.40 | -$0.00 | $3.40 | | $0.00 | $0.00 | $0.00 |
| 2 | 40b. Replace Window screen, 1 - 9 SF | 1.00 EA | $35.43 | $2.59 | $38.02 | -$12.67 | $25.35 | | $0.00 | $12.67 | $0.00 |
| **Subtotals** | | | **$38.83** | **$2.59** | **$41.42** | **-$12.67** | **$28.75** | **$0.00** | **$0.00** | **$12.67** | **$0.00** |
| | **Debris Removal** | | | | | | | | | | |
| ~~2~~ | ~~11. Remove Haul debris - per pickup truck load - including dump fees~~ | ~~0.50 EA~~ | ~~$76.65~~ | ~~$0.00~~ | ~~$76.65~~ | ~~-$0.00~~ | ~~$76.65~~ | | ~~$0.00~~ | ~~$0.00~~ | ~~$0.00~~ |
| **Subtotals** | | | **$0.00** | **$0.00** | **$0.00** | **-$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** |
| | **Other Structures  -  Fence** | | | | | | | | | | |
| ~~2~~ | ~~12. Replace Stain - wood fence/gate~~ | ~~240.00 SF~~ | ~~$218.40~~ | ~~$4.75~~ | ~~$223.15~~ | ~~-$0.00~~ | ~~$223.15~~ | | ~~$0.00~~ | ~~$0.00~~ | ~~$0.00~~ |
| **Subtotals** | | | **$0.00** | **$0.00** | **$0.00** | **-$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** |
| | **Interior  -  Main Level  -  Garage** | | | | | | | | | | |
| 2 | 42. Mask wall - plastic, paper, tape (per LF) | 12.00 LF | $18.60 | $0.26 | $18.86 | -$0.00 | $18.86 | | $0.00 | $0.00 | $0.00 |
| 2 | 43. Floor protection - plastic and tape - 10 mil | 437.36 SF | $139.96 | $3.97 | $143.93 | -$0.00 | $143.93 | | $0.00 | $0.00 | $0.00 |
| 1 | 16. Contents - move out then reset - Extra large room | 1.00 EA | $152.61 | $0.00 | $152.61 | -$0.00 | $152.61 | | $0.00 | $0.00 | $0.00 |



## National Catastrophe Team

P.O. Box 672041
Dallas, Texas 75267
Phone: (800) 547-8676
Fax:  (877) 292-9527

| Supp | Description | Qty | Estimate Amount | Taxes | Replacement Cost Total | Less Recoverable Depreciation | Actual Cash Value | Actual Replacement Cost w/Tax | RC Benefits Paid | Estimated Remaining | Pending Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 15a. Remove 1/2" drywall - hung, taped, ready for texture | 32.00 SF | $12.16 | $0.00 | $12.16 | -$0.00 | $12.16 | | $0.00 | $0.00 | $0.00 |
| 2 | 15b. Replace 1/2" drywall - hung, taped, ready for texture | 32.00 SF | $73.92 | $1.29 | $75.21 | -$0.00 | $75.21 | | $0.00 | $0.00 | $0.00 |
| 2 | 19. Seal the surface area w/PVA primer - one coat | 32.00 SF | $20.16 | $0.16 | $20.32 | -$0.00 | $20.32 | | $0.00 | $0.00 | $0.00 |
| 2 | 14a. Remove Acoustic ceiling (popcorn) texture | 437.36 SF | $179.32 | $0.00 | $179.32 | -$0.00 | $179.32 | | $0.00 | $0.00 | $0.00 |
| 2 | 14b. Replace Acoustic ceiling (popcorn) texture | 437.36 SF | $516.08 | $2.16 | $518.24 | -$34.55 | $483.69 | | $0.00 | $34.55 | $0.00 |
| 2 | 46. Replace Electrical (Bid Item) | 1.00 EA | $59.00 | $0.00 | $59.00 | -$0.00 | $59.00 | | $0.00 | $0.00 | $0.00 |
| | allowed for Electrician to diagnose lighting issues. | | | | | | | | | | |
| 2 | 44a. Remove Overhead (garage) door opener | 1.00 EA | $20.02 | $0.00 | $20.02 | -$0.00 | $20.02 | | $0.00 | $0.00 | $0.00 |
| 2 | 44b. Replace Overhead (garage) door opener | 1.00 EA | $375.70 | $19.64 | $395.34 | -$355.81 | $39.53 | | $0.00 | $355.81 | $0.00 |
| | Tech reports states water damaged. | | | | | | | | | | |
| 2 | 47a. Remove Light fixture | 1.00 EA | $7.51 | $0.00 | $7.51 | -$0.00 | $7.51 | | $0.00 | $0.00 | $0.00 |
| 2 | 47b. Replace Light fixture | 1.00 EA | $71.14 | $2.72 | $73.86 | -$36.93 | $36.93 | | $0.00 | $36.93 | $0.00 |
| | Tech reports states water damaged. | | | | | | | | | | |
| **Subtotals** | | | **$1646.18** | **$30.20** | **$1676.38** | **-$427.29** | **$1249.09** | **$0.00** | **$0.00** | **$427.29** | **$0.00** |
| **Labor Minimums Applied** | | | | | | | | | | | |
| 2 | 30. Window labor minimum | 1.00 EA | $169.27 | $0.00 | $169.27 | -$0.00 | $169.27 | | $0.00 | $0.00 | $0.00 |
| 2 | 48. Electrical labor minimum | 1.00 EA | $205.11 | $0.00 | $205.11 | -$0.00 | $205.11 | | $0.00 | $0.00 | $0.00 |
| **Subtotals** | | | **$374.38** | **$0.00** | **$374.38** | **-$0.00** | **$374.38** | **$0.00** | **$0.00** | **$0.00** | **$0.00** |
| **Totals** | | | **$19,912.20** | **$652.61** | **$20,564.81** | **-$4,910.83** | **$15,653.98** | **$17,500.00** | **$0.00** | **$471.74** | **$3,371.14** |



**National Catastrophe Team**

P.O. Box 672041
Dallas, Texas 75267
Phone: (800) 547-8676
Fax:  (877) 292-9527

# Payment Worksheet for BB-Other Structures

| | | | | | |
|---|---|---|---|---|---|
| **Insured:** | **LISA JACKSON** | **Home:** | **(210) 771-7701** | **Claim Number:** | **0627894751** |
| **Property:** | **2818 BARREL OAK ST** | | | **Policy Number:** | **000844909761** |
| | **SAN ANTONIO, TX 78231-1701** | | | | |

| | | | | | |
|---|---|---|---|---|---|
| **Type of Loss:** | **Windstorm** |
| **Date of Loss:** | **5/11/2021** |

**Actual Cash Value Benefits:**

| | |
|---|---|
| Estimate Total............................................ | $3,537.88 |
| Taxes........................................................... | $123.59 |
| Replacement Cost....................................... | $3,661.47 |
| Less Non-Recoverable Depreciation.......... | -$1,077.20 |
| Actual Cash Value (ACV) Subtotal........... | $2,584.27 |
| Less Advance Payments............................. | -$0.00 |
| Less ACV Payments Made......................... | $0.00 |
| Estimated Remaining ACV Benefits......... | $2,584.27 |

**Replacement Cost (RC) Benefits:**

| | |
|---|---|
| Estimated Total RC Benefits..................... | $0.00 |
| Less Deferred Payments Made................... | -$0.00 |
| Less Deferred Payments Pending.............. | -$0.00 |
| Estimated Remaining RC Benefits............ | $0.00 |

**Summary of Payments:**

| | |
|---|---|
| Outstanding ACV Settlement..................... | $2,584.27 |
| Deferred Payments Pending....................... | $0.00 |
| Less Overpayment...................................... | -$0.00 |
| Total Payments Pending............................. | $2,584.27 |

**Claim Summary Payments:**

| | |
|---|---|
| Loss of Use................................................ | $0.00 |
| Coverage.................................................... | $0.00 |
| Total........................................................... | $0.00 |



**National Catastrophe Team**

P.O. Box 672041
Dallas, Texas 75267
Phone: (800) 547-8676
Fax:  (877) 292-9527

| Supp | Description | Qty | Estimate Amount | Taxes | Replacement Cost Total | Less Non-Recoverable Depreciation | Actual Cash Value | Actual Replacement Cost w/Tax |
|---|---|---|---|---|---|---|---|---|
| **Debris Removal** | | | | | | | | |
| 2 | 41. Tandem axle dump trailer - per load - including dump fees | 1.00 EA | $258.15 | $0.00 | $258.15 | -$0.00 | $258.15 | |
| | Allowance for removal of fencing 72 LF | | | | | | | |
| | **Subtotals** | | **$258.15** | **$0.00** | **$258.15** | **-$0.00** | **$258.15** | **$0.00** |
| **Other Structures  -  Fence** | | | | | | | | |
| 2 | 13a. Remove Wood fence 5'- 6' high - treated | 72.00 LF | $405.36 | $0.00 | $405.36 | -$0.00 | $405.36 | |
| 2 | 13b. Replace Wood fence 5'- 6' high - treated | 72.00 LF | $1,815.84 | $91.06 | $1,906.90 | -$794.54 | $1,112.36 | |
| | corrected to correct length of corner to corner run | | | | | | | |
| 2 | 32. Replace Wood fence 5' - 6' high - Detach & reset - per 8' section | 1.00 EA | $60.61 | $0.18 | $60.79 | -$0.00 | $60.79 | |
| | Rear run of fence | | | | | | | |
| 2 | 34. Clean with pressure/chemical spray | 480.00 SF | $168.00 | $14.29 | $182.29 | -$0.00 | $182.29 | |
| 2 | 33. Stain - wood fence/gate | 912.00 SF | $829.92 | $18.06 | $847.98 | -$282.66 | $565.32 | |
| | **Subtotals** | | **$3,279.73** | **$123.59** | **$3,403.32** | **-$1,077.20** | **$2,326.12** | **$0.00** |
| **Totals** | | | **$3,537.88** | **$123.59** | **$3,661.47** | **-$1,077.20** | **$2,584.27** | **$0.00** |

 **Gmail**

**Fwd: Allstate Claim:0627894751**
1 message

Mon, Sep 4, 2023 at 9:09 PM

---------- Forwarded message ----------
From: **Lisa Jackson** <lisajackson7117@gmail.com>
Date: Tue, Feb 22, 2022, 10:18 AM
Subject: Re: Allstate Claim:0627894751
To: <claims@claims.allstate.com>

Hello Kimberly,

In response to your email today.  Please Note, I am getting you all the Proper Replacement Cost Estimates for my Roof Leaks that Are Not a part of my First Claim.

Further, I will be sending you,  the proper photos of all the exterior damage, to All Sides of my Top Grade Cedar Fencing and Posts. It all has to be replaced and properly Stained on Both Sides and Caps to the tops.

You will be receiving the Electricians Technical Report showing that my Heavy Duty SCREW Driven Garage Door Opener and Electrical outlet, are shorted out from the Roof Leak from The Hail Storm and Heavy Rains.

You also will be receiving all the Photos of my Master Bedroom and bathroom and Living Room and Kitchen Breakfast Room and Utility Room leaks. The interior ceiling Light Fixture also has major Leaks, from the Hail Damage and Heavy Rains.

The Electricians Report will show the Light Fixture and wiring will have to be replaced and repaired to prevent any further damage.

I am getting these reports to be sent to me soon.

Make Sure you Do Not Close Out My Claim, before all these Costs at Full Replacement Price Values are properly Covered.

Plus, the Costs for a  Professional Licensed and Bonded Packers and Movers. They will need to pack up all my interior belongings and valuable Antiques and Piano. They will need to move them all, and place them into a Properly Air Conditioned Storage. Then, after the interior repairs are completed.
The Movers will need to pick up all my Belongings, and Furniture and Antiques and Piano. They will need to replace them all, to their original places in my home.

I respectfully request you and I Discuss and Agree to Line by Line Items of all the Proper Full Replacement Costs for all this Claim.

Last, all the Professionals have all Found, that all my Exterior Paint and Wood Siding and Trim were heavily damaged from this Hail Storm. Further, they all confirmed that my Gas Grill, and all my Cedar Fencing, On All Sides, have Major Hail Damaged and Must Be Replaced Under My Allstate Insurance Policy! They also confirm the Hail Damage to my Patio Furniture and Window Screens. You have all these Photos that I have Sent You that covers all the above items that are Heavily Damaged from this Hail Storm Claim.

I will need to Approve all these Line by Line Items before I will Accept Full Payment.

Last, you have Already Acknowledged my Roof Replacement Cost of the $17,500. I do need that part of my Claim to be Paid Now. Leaving the Rest of My Hail Damage Claim to Remain Open, until Full Proper Replacement Costs Payments are Made.

I appreciate your prompt attention to this matter.

Respectfully submitted,
Lisa Jackson
2818 Barrel Oak St
San Antonio TX 78231
210-771-7701

cc: Attorneys

On Mon, Feb 21, 2022, 6:39 PM Allstate Insurance <allstate@service01.email-allstate.com> wrote:
    Ms. Jackson,
    I am emailing you to update you on the status of your claim. The claim is currently under review and I should be able to call you on 2/22/22 ready to close.

    Thank you for choosing Allstate.

    Kimberly Brooks
    Allstate Vehicle and Property Insurance Company
    Phone: (877) 224-4583 x1226834
    Fax: (877) 292-9527
    claims@claims.allstate.com

    CONFIDENTIALITY/PRIVACY NOTICE: This e-mail, including any attachments, may contain personal, private and confidential information intended solely for use by the individual to whom it is addressed. If you are not the intended addressee, please be aware that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you received this message in error, please notify the sender immediately by e-mail and delete from your system.

    **** Please do not delete your unique Conversation ID ****

    *** Conversation ID: FR0324058a258944 ***

    P_CLAIMS_EOB7B_FREEFORMTEXT_T

    claims_TX-caims@claims.allstate.com

 Gmail

**Fwd: Allstate HAIL Damage Claim:0627894751**
1 message

Mon, Sep 4, 2023 at 6:59 PM

--------- Forwarded message ---------
From: **Lisa Jackson** <lisajackson7117@gmail.com>
Date: Wed, Mar 16, 2022, 4:44 PM
Subject: Re: Allstate HAIL Damage Claim:0627894751
To: <claims@claims.allstate.com>

Hello Kimberly,

I received your letter in which you have continued to not properly handle my Claim as a Hail Damage Claim! I have continued to inform you and Nick Beckwith that, you and he, have improperly processed my Claim.

My Claim is a Heavy Hail Damage Claim to my Roof and exterior of my home. It caused Roof leaks throughout my home. The Heavy Hail caused extensive damage to my Siding and caused leaks around the Kitchen/Breakfast area picture window and ledge. It caused ceiling damage to my Formal Dining Room and Master Bedroom and Bathroom and around the window in my bathroom down the wall. The Hail caused water damage to my Kitchen/Breakfast ceilings and in the Utility Room Ceilings. The water filled the light fixture in my Utility Room and needs to be replaced, according to the Electricians Technical Report submitted to you.

Further, the Garage Ceiling was heavily damaged from the Hail Storm. It caused the ceiling to fall in. It shorted out The Heavy Duty SCREW Driven Garage Door Opener Mother Board.

You have those Technical Reports and Estimates from the Licensed Electrician and Licensed Technical Report for the Shorted out Mother Board of the Garage Door Opener.

All the Contents in all these rooms need to be packed up and placed into storage, for this work to be done.

You will need to place me in a One Story Home with fenced in yard for my puppy. While all this work gets done. I'm a disabled elder and cannot pack and move anything myself.

I have the Highest Rated Contractors getting me their current estimates for all this work to be done.

Further, my Exterior Hail Damaged wood siding that Hail hit so hard it made big holes open. Including the Hail Damaged Paint and Trim all are to be properly covered under this Claim. Including and not limited to all my Exterior Cedar Fencing that has Major Hail Damage on all Four (4) Sides including the Gate. All are to be covered under my Policy. Nick Beckwith realizes he had to adjust my Claim to cover the Complete Replacement of my entire Cedar Fencing including the restraining of the fencing on both sides.

My Policy also covers all the exterior screens and patio furniture and gas grill that were all Damaged by this Heavy Hail Storm.

I will be sending you the current estimates for all these as soon as possible.

I have sent you all the proper pictures of my entire Hail Damage to all the above aforementioned items.

I do expect all these above items to be covered under my Policy. Your letter you sent proves my point! They are all to be properly covered at Full Replacement Cost Coverage under my Policy under The Hail Damage Claim.

You have been given all the Proper Notices under The Deceptive Trade Practices Act. Your letter supports my Rights Under The Deceptive Trade Practices Act, that you have continued to Not Properly Cover My Hail Damage Claim.

Allstate has been Deceptive in Not Properly Reporting this as A Hail Damage Claim. My home sustained Heavy Hail Damage and Heavy Rains under this Claim.

If you don't properly Amend your mishandling of my Claim. I will seek my Full damages Under The Deceptive Trade Practices Act to cover my Attorneys Fees and Court Costs and for Treble Damages under The Law.

Respectfully submitted,

Lisa Jackson
2818 Barrel Oak St
San Antonio TX. 78231
210-771-7701

cc: Attorneys

PS: I have not retained my Attorneys for this claim.

On Mon, Mar 14, 2022, 10:58 AM Allstate Insurance <allstate@service01.email.allstate.com> wrote:
   Hello Lisa Jackson,

This is Kimberly Brooks from Allstate. We recently worked with you on your claim and wanted to check in on your claim experience and see if you have any questions or concerns. Please contact us at your earliest convenience by replying to this message (be sure to keep the claim number in the subject line). If you prefer, you may contact us by phone at (800) 347-8517 and select option 2. If I'm not available, one of my teammates will be happy to assist you.

Thank you for being an Allstate customer for 2 years.

Kimberly Brooks
Allstate Vehicle and Property Insurance Company
Phone: (877) 224-4563 x120934
Fax: (877) 252-9527
claims@claims.allstate.com

CONFIDENTIALITY/PRIVACY NOTICE: This e-mail, including any attachments, may contain personal, private and confidential information intended solely for use by the individual to whom it is addressed. If you are not the intended addressee, please be aware that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you received this message in error, please notify the sender immediately by e-mail and delete from your system.

**** Please do not delete your unique Conversation ID ****

*** Conversation ID: FR4847980dd004e ***

P_CLAIMS_EOB7B_FREEFORMTEXT_T

 **Gmail**

**Fwd: Claim No 0627894751 Attn Nick Beckwith**
1 message

Mon, Sep 4, 2023 at 11:47 PM

Here is more proof of my Destroyed Cedar Fencing from all the heavy hail storm and heavy wind blown rains.
Nick Beckwith said he was approving my entire Fencing to be replaced. Then he tried to come back with sanding it and restraining it. I gave him many pictures that showed all the broken cedar fencing with splits and breaks all around and across the top. Nick later said he approved my Bid that I got for the Replacement Cost of $23,000.

---------- Forwarded message ---------
From: **Lisa Jackson** <lisajackson7117@gmail.com>
Date: Sun, Jul 11, 2021, 9:09 PM
Subject: Claim No 0627894751 Attn Nick Beckwith
To: <claims@claims.allstate.com>

Dear Nick,

Attached is another photo of my Hail Damaged fence that is broken in many places and split in almost every post. It all will need to be replaced for Replacement Cost Coverage.  I will get you an Estimate for the Cost to replace.

Thank you so very much for your kind help.  I still will send you more pictures of my Garage Door that is badly damaged from the Hail Storm.

Nick, the Hail also badly damaged my Gas Grill. I will send you pictures of this damage from the hail Storm.

Thank you for your kind assistance in this regard.

Sincerely,

Lisa Jackson
2818 Barrel Oak St.
San Antonio TX 78231
210-771-7701

Attached photo

---


**20210624_183011.jpg**
6895K



**Fwd: CLAIM NO 0627894751 Fwd: LISA JACKSON SIDING AND PAINT JOB**
1 message

Mon, Sep 4, 2023 at 10:30 PM

---------- Forwarded message ----------
From: **Lisa Jackson** <lisajackson7117@gmail.com>
Date: Fri, Feb 4, 2022, 3:40 PM
Subject: CLAIM NO 0627894751 Fwd: LISA JACKSON SIDING AND PAINT JOB
To: <claims@claims.allstate.com>

Dear Kimberly Brooks,

Attached herewith is the Final Paid Invoice for the Needed Proper Repairs and Replacement of my Exterior Hail Damage to my homes Wood Siding and wood trim and Paint Job that was badly damaged from this Hail Storm.

Please send me the Full Replacement Cost Coverage for this and all my other Exterior Cedar Fencing and my Hail Damaged Gas Grill and Cover and Damaged Patio Furniture.

I have submitted all the photos along with Samsons Photos he submitted to prove the Same Heavy Hail Damages that Nicholas Beckwith failed to properly reimburse all these items back to me For The Full Replacement Cost Coverage.

I appreciate your kind attention to this matter.
I expect the Full and Proper payment for all these damages to be Paid to me this Next Week.

The photos and the Itel Report all verified the same.

Respectfully submitted,

Lisa Jackson
2818 Barrel Oak St.
San Antonio TX 78231
210-771-7701
---------- Forwarded message ----------
From: **Lisa Jackson** <lisajackson7117@gmail.com>
Date: Sun, Jan 30, 2022, 10:30 PM
Subject: Re: LISA JACKSON SIDING AND PAINT JOB
To: Orlando Ventura <venturaorlando444@gmail.com>

Thank you. This is perfect. God bless you.
Have a good night.

On Sun, Jan 30, 2022, 3:29 PM Orlando Ventura <venturaorlando444@gmail.com> wrote:

---------- Forwarded message ----------
From: **Orlando Ventura** <orlandoventura14@icloud.com>
Date: Sun, 30 Jan 2022 at 15:28
Subject: LISA JACKSON SIDING AND PAINT JOB
To: <venturaorlando444@gmail.com>

 Gmail

**Fwd: Claim No 0627894751 Lisa-Jackson.pdf**
1 message

Mon, Sep 4, 2023 at 9:03 PM

---------- Forwarded message ----------
From: **Lisa Jackson** <lisajackson7117@gmail.com>
Date: Wed, Feb 23, 2022, 8:23 PM
Subject: Claim No 0627894751 Lisa-Jackson.pdf
To: <claims@claims.allstate.com>

Hello Kimberly,

Attached is the proper estimate and proof that my Heavy Duty SCREW Driven Garage Door Opener is Shorted out from The Mother Board getting wet from the Roof Leak from the Hail Storm Claim.

You now have those important reports that you requested.

Please add these costs to my Claim for Proper Replacement Cost Coverage under my Policy.

I am awaiting the Contractors Estimates for my Interior Leaks from the Hail Damaged Roof. They will be sent to you soon.

Thank you,

Lisa Jackson
2818 Barrel Oak St
San Antonio TX 78231
210-771-7701

Attachment

cc: Attorneys

---

📄 **Lisa-Jackson.pdf**
53K

# ESTIMATE



**Monty's Garage Door Services**

210 986 7592

## BILL TO

Lisa Jackson
2818 Barrel Oak St SAT 78231
210-771-7701

## ESTIMATE DATE

02/23/2022

| DESCRIPTION | AMOUNT |
|---|---|
| Water Damaged Chamberlain screw drive motor board and motor components. Motor unit is obsolete recommend replacement with equivalent Chamberlain motor 2 remotes | 385.00 |

| | | |
|---|---|---|
| | Subtotal | 385.00 |
| | 8.25% | 31.76 |
| | **TOTAL** | **$416.76 USD** |



## TERMS & CONDITIONS

* 90 day service warranty
* motor warranty through Chamberlain motor company
**Motor water damage beyond repair for safe and reliable function

 Gmail

**Fwd: Claim No 0627894751**

1 message

Mon, Sep 4, 2023 at 10:37 PM

---------- Forwarded message ----------
From: **Lisa Jackson** <lisajackson7117@gmail.com>
Date: Fri, Feb 4, 2022, 3:24 PM
Subject: Claim No 0627894751
To: <claims@claims.allstate.com>

Dear Kimberly Brooks,

Attached herewith you will find the Final Paid Invoice, for the Proper Replacement Cost of my heavily damaged Roof. I'm a Builder and had replaced my previous Roof with the All the proper components that are listed in this Final Paid Invoice.

The previous Adjuster, Nicholas Beckwith, was very bad about not properly submitting the proper Replacement Costs of my Seriously Hail Damaged Property. My Roof and Inrerior Ceilings, and Exterior Paint and Wood Siding and Trim and Cedar Fencing and Patio Furniture and Gas Grill, along with my window screens on the windows and sliding glass doors, were all Damaged from this Hail Storm.

Including interior leaks from the roof. There are leaks in the Master Bedroom on the ceilings and in the  Master Bathroom. The heavy hail damage caused leaks came down around the Bathroom window and down the wall by the shower. There are leaks in the Ceilings in my Living Room and Formal Dining Room, and Kitchen Ceiling and around the picture window and window sear Wood trim, and wall paper. The leaks caused damage to my drapes and kitchen flooring. There are ceilings leaks in the  Utility Room and at the light fixture, this gixture and my two Master Bedroom Cam Lighting Fixturea need to be replaced. The  Garage ceiling collapsed from the heavy hail and rains. My Heavy Duty, To Screw Driven Garage Door Opener was shorted out from the leaks and needs to be replaced. The light on it works but the Opener and Electric Plug got wet and will need an electrician to replace it.

Further, Nick failed to follow the Original Inspectors Report Stating all this same information. That Inspector, Samson also noted and disclosed his findings to myself and my Roofix Engineer that was present when he got on the roof and as they walked around all my property. He and  Samson took pictures of all the Hail Damaged Items listed above. Samson did find that the recent Storms, with heavy hail and rains and high winds, caused all the  serious damage to all my Property. Samson stated that all the above listed items along with all the pictures he and my Engineer took proved that my property  Sustained Major Hail Damage which is all to be properly covered by my Insurance at Full Replacement Cost Coverage.

Samson noted, as he and my Engineer walked around my property, he agreed with my Engineer. That my Roof, and all components, and  Exterior Paint and Wood Siding and Trim had Major Hail Strikes and Damaged to all and the Paint. He and my Engineer Determined that my Entire Cedar Wood Privavy Fencing had been destroyed by the Hail. He took pictures of my entire Fencing showing the Hail Strikes and major splits and damaged posts all around all sides of the entire Fencing.  I had replaced that fence just a few years prior.

Nicholas first tried to deny my claim. He failed to follow any of The First Inspectors recommendations. I had to speak to his Supervisor to get my Claim properly approved.

Nick and Allstate have been in receipt of many photos of all this Hail Damage to my All my  property.

I have submitted all the documents and photos to show the extent of the damages.

Nicholas did agree to all my Damages to all my property and Fencing and Patio Furniture and Gas Grill that are all hail damaged. He did approve my fencing all needed to be replaced and stained like my fencing has. I submitted the Replacement Costs for my Fencing. Nick said he would amend his first estimate of just trying to sand and stain only. He said he realized that can't be done to properly fix my fencing. He agreed that I would need full replacement of my entire fencing. Including All Three (3) Sides, and front facing fence and Gate on other Front Side. This is to include the staining, on both sides, off all the fencing, all around to properly preserve it properly as I have done in the past. I paid for all Three Sides and Front sides with Gate of my fencing and had replaced it two (2) times prior to this Hail Damage in this last year of 2020 2021.

Further, Nicholas didn't want to properly settle the proper costs of the Hail Damage to my Exterior of my Home Paint and Wood Siding and Trim boards that all have evidence of all the Heavy Hail Strikes.

Further, Nick failed to properly settle my interior damages from the Hail Storms and Damaging Heavy Rains and winds that caused these roof leaks.

My entire interior of my home will need to have all the furnishings packed up by a proper Moving Company. All contents need to be placed into a proper heated and air conditioned Storage Facility. I have a nice Piano, and Antiques, in my Formal Dining Room that needs this proper handling. All my furnishings in my Master bedroom and bath, Living Room, Kitchen/Breakfast, utility room, with washer and dryer, and freezer, and the Garage Contents with Freezer, All will need to be packed up and moved into storage. The proper repairs need to be done. Including ceilings textures, that will need to be scraped and retextured to match. Then all interior rooms will need to be painted in all the rooms,  to do the job properly. I can't get new paint to match existing paint. When the jobs have been completed properly. The Moving Company, will need to bring back all my furnishings in the Storage Facility. They will need to unpack and replace all my furniture, in every room and Garage of my home. moved back into my Home and they will  have to unpack and replace my furnishings to their proper places in my Home and Garage.

I am disabled and will have to be placed into Temporary Rental Home that is 1 Story, Fully furnished, with a fenced back yard and utility room for me and  for my puppy. Allstate is to properly cover all these damages under my Policy for Full Replacement Cost Coverage

I am going to forward you, my other Paid Invoice, that I had to get done to properly fix my exterior wood siding and trim and paint to my exterior of my home from the Major Hail Storm Damage.

I appreciate your prompt attention to this matter.

Respectfully submitted,

Lisa Jackson
2818 Barrel Oak St.
San Antonio TX 78231
210-771-7701

---------- Forwarded message ----------
From: **Orlando Ventura** <venturaorlando444@gmail.com>
Date: Mon, Jan 31, 2022, 7:31 PM
Subject: LISA JACKSON ROOFING INVOICE
To: <lisajackson7117@gmail.com>

I amend this invoice, thank you. .

**3 attachments**


**ms-B7HXWm.heic**
2754K


**ms-vo8SDS.heic**
4342K

**MANSORYInvoice - Copy WORD.pdf**
2586K

 Gmail

**Fwd: Claim No.0627894751 Fwd: Photos of my Roof Hail Damage to 2818 Barrel Oak St, San Antonio TX 78231**
1 message

Tue, Sep 5, 2023 at 12:13 AM

---------- Forwarded message ----------
From: **Lisa Jackson** <lisajackson7117@gmail.com>
Date: Tue, Jun 22, 2021, 4:42 PM
Subject: Fwd: Claim No.0627894751 Fwd: Photos of my Roof Hail Damage to 2818 Barrel Oak St, San Antonio TX 78231
To: <dusty@rooffixsa.com>

---------- Forwarded message ----------
From: **Lisa Jackson** <lisajackson7117@gmail.com>
Date: Tue, Jun 22, 2021, 2:42 PM
Subject: Claim No.0627894751 Fwd: Photos of my Roof Hail Damage to 2818 Barrel Oak St, San Antonio TX 78231
To: <claims@claims.allstate.com>

---------- Forwarded message ----------
From: **Lisa Jackson** <lisajackson7117@gmail.com>
Date: Tue, Jun 22, 2021, 2:14 PM
Subject: Photos of my Roof Hail Damage to 2818 Barrel Oak St, San Antonio TX 78231
To: <claims@claims.allstate.com>

Hello Candice,

Attached are some of the photos of the Hail and Storm Damage to all my roof at 2818 Barrel Oak St, San Antonio TX 78231.

My Roofing Engineer took videos of Samsons Inspection of my Roof and Exterior Wood Siding and Garage Door and all my paint job and fencing that has major hail damage to all.

Samson did submit all those photos to you. They all support all the hail and storm damage to my entire home and the interior ceiling damage to my garage.

I am certain you will find, that My Claim for all this Hail and Storm Damage, to all my home and Exterior and complete fencing. Must be approved for my Complete Replacement Cost Coverage per my Insurance Policy with Allstate Insurance.

I look forward to you getting this approved today so I can get repairs started as soon as possible.

Respectfully submitted,

Lisa Jackson
2818 Barrel Oak St
San Antonio TX 78231
210-771-7701

Attachments

---------- Forwarded message ----------
From: **Kathleen Barraza** <reply@mail.acculynx.com>
Date: Tue, Jun 22, 2021, 12:37 PM
Subject: Roof Fix
To: <lisajackson7117@gmail.com>



Roof Fix, LLC
San Antonio, TX

Good Afternoon,

Attached are the photos taken at the initial roof inspection. If you need anything else, please let us know. Thank you!

Kathleen Barraza | First Impressions
kathleen@rooffixsa.com | 210.454.2400
Office Hours Mon – Fri 8:30AM – 5:00 PM

Reply directly to this email to respond.

You can view the whole email thread here

Roof Fix, LLC | 830 Northeast Interstate 410 Loop Ste 216 | San Antonio, TX 78209

**23 attachments**

**img_0379.jpg.jpg**
774K


**img_0377.jpg.jpg**
844K


**img_0378.jpg.jpg**
803K


**img_0149.heic.heic**
873K


**img_0145.heic.heic**
963K


**img_0369.jpg.jpg**
795K


**img_0385.jpg.jpg**
889K


**img_0373.jpg.jpg**
692K


**img_0382.jpg.jpg**
877K


**img_0380.jpg.jpg**
1247K


**img_0370.jpg.jpg**
796K


**img_0281.jpg.jpg**
790K


**img_0381.jpg.jpg**
876K


**img_0144.heic.heic**
928K

**img_0282.jpg.jpg**
849K

**img_0383.jpg.jpg**
991K

**img_0372.jpg.jpg**
923K

**img_0147.heic.heic**
886K

**img_0374.jpg.jpg**
781K

**img_0148.heic.heic**
937K


**img_0146.heic.heic**
948K


**img_0143.heic.heic**
862K


**img_0384.jpg.jpg**
997K

M Gmail

**Fwd: Allstate Vehicle and Property Insurance Company Claim: 000627894751 Itel Report for Roof**

1 message

Mon, Sep 11, 2023 at 4:27 PM

---------- Forwarded message ----------
From: <claims@claims.allstate.com>
Date: Tue, Feb 1, 2022, 7:26 AM
Subject: Allstate Vehicle and Property Insurance Company Claim: 000627894751
To: <LISAJACKSON67117@gmail.com>

Ms. Jackson,

Good morning! My name is Kimberly Brooks, I am the adjuster assigned to your claim now. I will be helping you going forward. I have attached the ITEL report to this email. The invoice has been received by Allstate. Allstate will be paying for the ITEL report. If you have any questions please reach out to me at the number and extension below.

Thank you for choosing Allstate!

KIMBERLY BROOKS
Allstate Vehicle and Property Insurance Company
Phone: (877) 224-4583 ext. 1208834
Fax: (877) 252-9527
claims@claims.allstate.com

CONFIDENTIALITY/PRIVACY NOTICE: This e-mail, including any attachments, may contain personal, private and confidential information intended solely for use by the individual to whom it is addressed. If you are not the intended addressee, please be aware that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you received this message in error, please notify the sender immediately by e-mail and delete from your system.

**** Please do not delete your unique Conversation ID ****

*** Conversation ID: PIfdcbc1ee8d20a49 ***

---

📄 9886861-E02A-497A-B286-1A4E2DD9F6D1-20220131552749626-1-RRS8129993-0131202200241540-pdf_0xb1.20220130232754974.0.pdf
1010K

# ASPHALT ROOFING EVALUATION
## CONTROL #: RRS8129993

**Attn:** ITEL Reports  
**Co:** Allstate  
**CLAIM#:** 0627894751

**From:** ITEL Laboratories, Inc.  
**Ph:** 800-890-4835  
customerexperience@itelinc.com

---

### CUSTOMER INFO

**Customer:** Allstate  **Cust. ID:** ALLS0300

**Adjuster:** Not Provided to ITEL

**Additional:**  **Vendor Job#:**  **Contact:**  **E-mail:**

**Date Invoiced:** 1/31/2022  **Date Received:** 1/28/2022

---

### LOSS INFO

**Insured Name:** Lisa Jackson  **Claim #:** 0627894751

**Loss Location:** San Antonio, TX 78231  **Area Damaged:**  **Loss Date:**

---

### ORIGINAL PRODUCT IDENTIFICATION   The original product is available; see Match 1 for supplier(s).

**Product:** Owens Corning TruDefinition Duration AR  **Type:** Architectural

**Color:** Estate Gray  **Warranty:** Lifetime  **Height:** 13.250  **Width:** 39.375

**Mat:** Fiberglass  **Specialty Granules:** None

**Manufacturer Info:** www.owenscorning.com / (800) 438-7465

**Comments:** · The product is STILL AVAILABLE. Installers should verify visual and dimensional compatibility before purchasing and installing replacement products. · The condition of the sample may affect the accuracy of the test. The sample received is not a complete shingle. For the most accurate analysis, a complete shingle is required. · The original sample has weathering and granular loss. The sample was cleaned with a mild bleach solution prior to color granule analysis.

---

### MATCHING PRODUCTS

**MATCH 1 (Original Product):** Owens Corning TruDefinition Duration AR  **Type:** Architectural

**Color:** Estate Gray  **Color Matched To: Original Color**  **Warranty:** Lifetime  **Mat:** Fiberglass

| Comparison to Submitted Sample: | Different 5 | | 4 | | Similar 3 | | | 2 | | Same 1 |
|---|---|---|---|---|---|---|---|---|---|---|
| Warranty | | | | | | | | | | |
| Physical Characteristics* | | | | | | | | | | |
| Physical Dimensions | | | | | | | | | | |
| Original Color | | | | | | | | | | |
| Current Color | | | | | | | | | | |

**Suppliers:**
· Lowe's #1579, 1 miles: 210-764-8082, SAN ANTONIO, TX, 78248
· ABC Supply #038, 8 miles: 210-826-2336, San Antonio, TX, 78217
· Spec Building Materials Corp, 4 miles: 210-342-2727, San Antonio, TX, 78213

**Manufacturer Info:**
www.owenscorning.com / (800) 438-7465

*"Physical Characteristics" considers mat composition, specialty granules, tab/cutout shapes and construction comparisons*

---

### ADDITIONAL COMMENTS  See PERSONALIZED HOMEOWNER ROOFING MATCH REPORT page for photo comparison.

· Installers should verify visual and dimensional compatibility before purchasing and installing replacement products.
· We want to hear from you! Please contact ITEL Customer Experience with any questions: itelinfo@itelinc.com or 800-890-4835.

**Insured Name:** Lisa Jackson
**Claim Number:** 0627894751
**Report #:** RRS8129993  **Date:** 1/31/2022

## Homeowner's Personalized Roofing Match Report

### Your Roofing:  Your roofing is available.

**Specifications of Your Roofing:**

**Product:** Owens Corning TruDefinition Duration AR

**Type:** Architectural

**Color:** Estate Gray

**Warranty:** Lifetime

**Mat:** Fiberglass

**Manufacturer Info:**
www.owenscorning.com / (800) 438-7465



 **Match 1: Owens Corning TruDefinition Duration AR**

**Type:** Architectural

**Color:** Estate Gray

**Color Matched To:**  Original  Color

**Warranty:** Lifetime

**Mat:** Fiberglass

**Manufacturer Info:**
www.owenscorning.com / (800) 438-7465

**Where to Buy:**

· **Lowe's #1579** - 1 miles away,
210-764-8082, SAN ANTONIO, TX, 78248
· **ABC Supply #038** - 8 miles away,
210-826-2336, San Antonio, TX, 78217
· **Spec Building Materials Corp** - 4 miles
away, 210-342-2727, San Antonio, TX,
78213

*Distributor inventory varies; specific products and colors
may need to be ordered. Some distributors will only sell
to licensed roofing contractors.*

 ## ITEL CERTIFIED MATCH

*ITEL performed a national search based on the specifications and color of your product to find the best available
match. If you have questions, contact ITEL Customer Experience: itelinfo@itelinc.com or call 800-890-ITEL
(4835).*

**IMPORTANT NOTE CONCERNING COLOR:** ITEL strives to accurately reproduce the color of the products shown above. However,
due to manufacturing variances, differences in computer monitors, printer accuracy, and variation in natural exterior lighting, actual
colors may differ from the images. Be sure to check a roofing sample or manufacturer color swatch before making a final color selection
and purchase.























































Mike Z Acota
420 Springfield
San Antonio Tx 210-415-6836

**Proposal**

| | |
|---|---|
| PROPOSAL NO. | |
| SHEET NO. | |
| DATE | 2-15-22 |

PROPOSAL SUBMITTED TO:

| NAME | Lisa Jackson | WORK TO BE PERFORMED AT: | |
|---|---|---|---|
| ADDRESS | 2818 Barrel Oak St | ADDRESS | SAME |
| | San Antonio Tx 78231 | DATE OF PLANS | |
| PHONE NO. | | ARCHITECT | |

We hereby propose to furnish the materials and perform the labor necessary for the completion of

Exterior work to be done on House Fix + Repair
All areas where siding meets each other to caulk all joints
sand and Fill in Fascial boards where is need For
Fine Finish Also To paint all Faded Fascia boards to be Painted
where is Needed clean over-spray on bricks + concrete re-
paint soffits boards Also where is need Also do some carpentry
with a running bond on Roof Top

Quote: All Labor + material including      Total estimate    $2880.00
(Any extras will be brought to owner)                     -1800.00
                                                    Bal $1,080.00

All material is guaranteed to be as specified, and the above work to be performed in accordance with the drawings and specifications submitted for above work and completed in a substantial workmanlike manner for the sum of **Two thousand eight Hundred eighty**

Dollars ($ 2880.00 ) with payments to be made as follows.

$1,800.00 down Rest as completion      Draw 2-15-22

| | | | RECEIPT | Paid | No. 00097535 |
|---|---|---|---|---|---|
| | | | DATE 03-2-22 | Mike Acosta | $1000 |
| | | | FROM Robert Sw | 2818 barrel Oak St | DOLLARS |
| | | | FOR Lisa Jackson | | |
| □ CASH | ACCT. | | | FROM 2-81-22 | TO 3-2-22 |
| □ CHECK | PAID | in full | | BY | |
| □ MONEY ORDER | DUE | | | | |
| □ CREDIT CARD | | | | | |



**Allstate**
You're in good hands.

## Total Premium for the Policy Period

| | |
|---|---|
| Premium for property insured | $1,855.48 |
| Recoupment Fee Volunteer Rural Fire Department Assistance Program | 1.26 |
| Recoupment Fee FAIR Plan Assessment 1 | $3.71 |
| **Total** | **$1,860.45** |

## Discounts (included in your total premium)

| | | | |
|---|---|---|---|
| Protective Device | $22.30 | Multiple Policy | $428.43 |
| Allstate Easy Pay Plan | $87.47 | Early Signing | $16.81 |
| Responsible Payment | $262.89 | Welcome | $205.46 |
| **Total discount savings** | | | **$1,023.36** |

## Insured property details*

Please review and verify the information regarding your insured property. Please refer to the Important Notice (X73182) for additional coverage information. Contact us if you have any changes.

Location of property insured: 2818 Barrel Oak St, San Antonio, TX 78231-1701

**Dwelling Style:**
Built in 1979; 1 family; 2157 sq. ft.; 1 story

**Foundation:**
Slab at grade, 100%

**Attached structures:**
One 2-car attached garage          One small open porch

**Interior details:**
One builders grade kitchen          One single fireplace
Two builders grade full baths

**Exterior wall type:**
100% brick on frame

**Interior wall partition:**
100% drywall

**Heating and cooling:**
Gas hot air heating , 100%          Central air - same ducts, 100%

**Additional details:**
Standard wood sash with glass, 100%          Interior wall height - 8 ft, 100%
Two exterior wood doors

**Fire protection details:**

Information as of May 17, 2019

## Summary

Named Insured(s)
**Lisa Jackson**
Mailing address
**2818 Barrel Oak St
San Antonio TX 78231-1701**

Policy number
**844 909 761**

Your policy provided by
**Allstate Vehicle and Property
Insurance Company**

Policy period
Beginning **June 7, 2019** through **June 7, 2020** at 12:01 a.m. standard time

Your Allstate agency is
**M & J Family Ins**
14855 Blanco Rd 412
San Antono TX 78216-7731
(210) 493-3434
MEGANFIELDER@allstate.com

Some or all of the information on your Policy Declarations is used in the rating of your policy or it could affect your eligibility for certain coverages. Please notify us immediately if you believe that any information on your Policy Declarations is incorrect. We will make corrections once you have notified us, and any resulting rate adjustments, will be made only for the current policy period or for future policy periods. Please also notify us immediately if you believe any coverages are not listed or are inaccurately listed.

**(continued)**

# Amended House & Home Policy Declarations

Your policy effective date is June 7, 2019



**Allstate**
You're in good hands.

Information as of May 17, 2019

## Total Premium for the Policy Period

| | |
|---|---|
| Premium for property insured | $1,855.48 |
| Recoupment Fee Volunteer Rural Fire Department Assistance Program | 1.26 |
| Recoupment Fee FAIR Plan Assessment 1 | $3.71 |
| **Total** | **$1,860.45** |

## Discounts (included in your total premium)

| | | | |
|---|---|---|---|
| Protective Device | $22.30 | Multiple Policy | $428.43 |
| Allstate Easy Pay Plan | $87.47 | Early Signing | $16.81 |
| Responsible Payment | $262.89 | Welcome | $205.46 |
| **Total discount savings** | | | **$1,023.36** |

## Insured property details*

Please review and verify the information regarding your insured property. Please refer to the Important Notice (X73182) for additional coverage information. Contact us if you have any changes.

Location of property insured: 2818 Barrel Oak St, San Antonio, TX 78231-1701

**Dwelling Style:**
Built in 1979; 1 family; 2157 sq. ft.; 1 story

**Foundation:**
Slab at grade, 100%

**Attached structures:**
One 2-car attached garage          One small open porch

**Interior details:**
One builders grade kitchen          One single fireplace
Two builders grade full baths

**Exterior wall type:**
100% brick on frame

**Interior wall partition:**
100% drywall

**Heating and cooling:**
Gas hot air heating , 100%          Central air - same ducts, 100%

**Additional details:**
Standard wood sash with glass, 100%          Interior wall height - 8 ft, 100%
Two exterior wood doors

**Fire protection details:**

## Summary

**Named Insured(s)**
Lisa Jackson
Mailing address
2818 Barrel Oak St
San Antonio TX 78231-1701

Policy number
844 909 761

Your policy provided by
**Allstate Vehicle and Property Insurance Company**

Policy period
Beginning **June 7, 2019** through **June 7, 2020** at 12:01 a.m. standard time

Your Allstate agency is
**M & J Family Ins**
14855 Blanco Rd 412
San Antono TX 78216-7731
(210) 493-3434
MEGANFIELDER@allstate.com

Some or all of the information on your Policy Declarations is used in the rating of your policy or it could affect your eligibility for certain coverages. Please notify us immediately if you believe that any information on your Policy Declarations is incorrect. We will make corrections once you have notified us, and any resulting rate adjustments, will be made only for the current policy period or for future policy periods. Please also notify us immediately if you believe any coverages are not listed or are inaccurately listed.

**(continued)**

# Amended House & Home Policy Declarations

Your policy effective date is June 7, 2019



Information as of May 17, 2019

## Total Premium for the Policy Period

| | |
|---|---|
| Premium for property insured | $1,855.48 |
| Recoupment Fee Volunteer Rural Fire Department Assistance Program | 1.26 |
| Recoupment Fee FAIR Plan Assessment 1 | $3.71 |
| **Total** | **$1,860.45** |

## Discounts (included in your total premium)

| | | | |
|---|---|---|---|
| Protective Device | $22.30 | Multiple Policy | $428.43 |
| Allstate Easy Pay Plan | $87.47 | Early Signing | $16.81 |
| Responsible Payment | $262.89 | Welcome | $205.46 |
| **Total discount savings** | | | **$1,023.36** |

## Insured property details*

Please review and verify the information regarding your insured property. Please refer to the Important Notice (X73182) for additional coverage information. Contact us if you have any changes.

Location of property insured: 2818 Barrel Oak St, San Antonio, TX 78231-1701

**Dwelling Style:**
Built in 1979; 1 family; 2157 sq. ft.; 1 story

**Foundation:**
Slab at grade, 100%

**Attached structures:**
One 2-car attached garage    One small open porch

**Interior details:**
One builders grade kitchen    One single fireplace
Two builders grade full baths

**Exterior wall type:**
100% brick on frame

**Interior wall partition:**
100% drywall

**Heating and cooling:**
Gas hot air heating , 100%    Central air - same ducts, 100%

**Additional details:**
Standard wood sash with glass, 100%    Interior wall height - 8 ft, 100%
Two exterior wood doors

**Fire protection details:**

## Summary

Named Insured(s)
**Lisa Jackson**
Mailing address
**2818 Barrel Oak St**
**San Antonio TX 78231-1701**

Policy number
844 909 761

Your policy provided by
**Allstate Vehicle and Property Insurance Company**

Policy period
Beginning **June 7, 2019** through **June 7, 2020** at 12:01 a.m. standard time

Your Allstate agency is
**M & J Family Ins**
14855 Blanco Rd 412
San Antono TX 78216-7731
(210) 493-3434
MEGANFIELDER@allstate.com

Some or all of the information on your Policy Declarations is used in the rating of your policy or it could affect your eligibility for certain coverages. Please notify us immediately if you believe that any information on your Policy Declarations is incorrect. We will make corrections once you have notified us, and any resulting rate adjustments, will be made only for the current policy period or for future policy periods. Please also notify us immediately if you believe any coverages are not listed or are inaccurately listed.

**(continued)**

Amended House & Home Policy Declarations
Policy number: **844 909 761**
Policy effective date: June 7, 2019

---

**Insured property details* (continued)**

Fire department subscription - no     3 miles to fire department

**Roof surface material type:**
Composition
• 100% asphalt / fiberglass shingle

**Roof details:**
Predominant roof type: Composition     Age of roof - 7 years
Roof geometry - Gable

---

**Mortgagee - None**

**Additional Interested Party - None**

*This is a partial list of property details. If the interior of your property includes custom construction, finishes, buildup, specialties or systems, please contact your Allstate representative for a complete description of additional property details.*

# Coverage detail for the property insured

| Coverage | Limits of Liability | Applicable Deductible(s) |
|---|---|---|
| Dwelling Protection | $350,000 | • $3,500 Windstorm and Hail<br>• $3,500 All other perils |
| Other Structures Protection | $35,000 | • $3,500 Windstorm and Hail<br>• $3,500 All other perils |
| Personal Property Protection | $210,000 | • $3,500 Windstorm and Hail<br>• $3,500 All other perils |
| Additional Living Expense | Up to 24 months not to exceed $140,000 | |
| Family Liability Protection | $100,000 each occurrence | |
| Guest Medical Protection | $1,000 each person | |
| Foundation Water Damage | $5,000 | |
| Building Codes | **Not purchased*** | |
| Building Structure Reimbursement Extended Limits | **Not purchased*** | |
| Roof Surfaces Extended Coverage | Included | |
| Water Back-Up | **Not purchased*** | |
| Residence Glass | **Not purchased*** | |

Amended House & Home Policy Declarations
Policy number: 844 909 761
Policy effective date: June 7, 2019

---

**Insured property details\* (continued)**

Fire department subscription - no     3 miles to fire department

**Roof surface material type:**
Composition
- 100% asphalt / fiberglass shingle

**Roof details:**
Predominant roof type: Composition     Age of roof - 7 years
Roof geometry - Gable

**Mortgagee - None**

**Additional Interested Party - None**

*\*This is a partial list of property details. If the interior of your property includes custom construction, finishes, buildup, specialties or systems, please contact your Allstate representative for a complete description of additional property details.*

## Coverage detail for the property insured

| Coverage | Limits of Liability | Applicable Deductible(s) |
|---|---|---|
| Dwelling Protection | $350,000 | • $3,500 Windstorm and Hail<br>• $3,500 All other perils |
| Other Structures Protection | $35,000 | • $3,500 Windstorm and Hail<br>• $3,500 All other perils |
| Personal Property Protection | $210,000 | • $3,500 Windstorm and Hail<br>• $3,500 All other perils |
| Additional Living Expense | Up to 24 months not to exceed $140,000 | |
| Family Liability Protection | $100,000 each occurrence | |
| Guest Medical Protection | $1,000 each person | |
| Foundation Water Damage | $5,000 | |
| Building Codes | **Not purchased\*** | |
| Building Structure Reimbursement Extended Limits | **Not purchased\*** | |
| Roof Surfaces Extended Coverage | Included | |
| Water Back-Up | **Not purchased\*** | |
| Residence Glass | **Not purchased\*** | |



▶ *Other Coverages Not Purchased:*

- Additional Fire Department Charges*
- Building Materials Theft*
- Country Endorsement*
- Dwelling in the Course of Construction*
- Electronic Data Recovery*
- Extended Coverage on Cameras*
- Extended Coverage on Jewelry, Watches and Furs*

- Extended Coverage on Musical Instruments*
- Extended Coverage on Sports Equipment*
- Fair Rental Income*
- Golf Cart*
- Green Improvement*
- Home Day Care*

- Identity Theft Expenses*
- Increased Coverage on Business Property*
- Increased Coverage on Theft of Silverware*
- Loss Assessments*
- Residence Glass*
- Secondary Residence*
- Yard and Garden*

*This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.*

## Scheduled Personal Property Coverage

*Your policy does not include Scheduled Personal Property Coverage. This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.*

## Your policy documents

Your House & Home policy consists of the Policy Declarations, any Policy Declarations Addendum, and the following documents. Please keep them together.

- AVPIC House & Home Policy – AVP91
- Windstorm and Hail Deductible Endorsement – AVP82
- Roof Surfaces Extended Coverage Endorsement – AVP144-1

- Enhanced Package Endorsement – AVP482
- Texas Amendatory Endorsement – AVP348
- Texas Amendatory Endorsement – AVP345

